# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHICAGO JOE'S TEA ROOM, LLC and
PERVIS CONWAY,                         )
                                       )
                Plaintiffs,            )          Case No. 07 C 2680
                                       )
        v.                             )          Judge Joan B. Gottschall
                                       )
VILLAGE OF BROADVIEW et al.            )
                                       )
                Defendants.            )

## MEMORANDUM OPINION AND ORDER

Before the court are cross-motions for summary judgment and cross-motions to strike certain portions of the parties' Rule 56.1 statements of fact. For the reasons stated below, defendants' motion to strike [38] and plaintiffs' motion to strike [45] are granted in part and denied in part; the defendants' motion for summary judgment [26] and the plaintiffs' motion for partial summary judgment [29] are granted in part and denied in part.

## I. BACKGROUND[1]

This case concerns a zoning dispute over property located in the Village of Broadview, Illinois (the "Village"); specifically, it concerns a disagreement over the constitutionality of the Village's zoning restrictions on adult use facilities.

Pervis Conway ("Conway") owns a parcel of land at 2850 Indian Joe Road in the Village, which he is under contract to sell to Chicago Joe's Tea Room, LLC ("Chicago Joe's").[2] The

---

[1] Facts are taken from the parties' Rule 56.1 statements of material facts and are undisputed unless otherwise noted. Facts specific to a particular legal claim are addressed in the relevant section below.

[2] The current state of the contract and ownership is unclear from the record. A letter between counsel for Chicago Joe's and Conway, dated April 30, 2007, indicates that the closing was set for June 30, 2007, that Chicago Joe's had deposited in excess of $100,000 in non-refundable

parcel of land is located in the Office and Industrial District (the "O/I district"), which is one of the classifications in the Village's comprehensive zoning code ("Zoning Code"). The stated purposes of the Zoning Code include:

> To promote and protect the public health, safety, morals, comfort and general welfare of the people;

> To promote the character and the stability of the residential, business and manufacturing areas within the village of Broadview and to promote the orderly and beneficial development of such areas;

> To prohibit uses, buildings or structures incompatible with the character of development or intended uses within specified zoning districts.[3]

The O/I district is a zone that provides opportunities for office and light industrial uses in an environment where setbacks and other requirements are designed to encourage quality development and minimal impact on the adjacent non-industrial uses. Certain land uses in the O/I district are, pursuant to § 10-7-4 of the Zoning Code, allowed only with prior permission of the Village board of trustees. The Village must hold a public hearing on such special use applications. The trustees may authorize the special use only if it: (1) is necessary for the public convenience at the location; (2) is designed, located and proposed to be operated so that the public health, safety and welfare will be protected; and (3) will not cause substantial injury to property values.

Chicago Joe's wants to operate an adult use business featuring semi-nude dancing and a restaurant that sells liquor at 2850 Indian Joe Road, in the O/I district. Certain types of businesses, including restaurants, banks, animal hospitals, dry-cleaning establishments, daycare

---

earnest money and had agreed to a purchase price of $1,350,000. *See* Letter to Steven Luzbetak, Esq., attached to Verified Compl.

[3] Zoning Code § 10-1-2(A), (C), (H), attached as Ex. 3A to Defs.' Rule 56.1 Statement of Material Facts.

facilities, and adult use facilities, are allowed in the O/I district only as a "special use."[4] On

December 22, 2006, the plaintiffs, Chicago Joe's and Conway (collectively the "Plaintiffs"),

submitted an application seeking "[p]ermission to operate an adult use facility in all adult use

categories as defined in the Code of Ordinances of the Village of Broadview, permission to

operate a restaurant with the ability to sell alcohol, [and] permission to operate 24 hours per day

– seven days per week[.]"[5]

In addition to the "special use" requirements for location in an O/I zone, adult uses are

also subject to certain other restrictions under § 10-4-6(D)(11), which, as of the time of Chicago

Joe's zoning application, read:

> Adult businesses are subject to the following:
>
> a.     It shall be unlawful for any adult business to sell, distribute, or permit beer or alcoholic beverages on the premises.
>
> b.     No merchandise or pictures of the products or entertainment on the premises shall be displayed in window areas or any other exterior area of the building or site that can be seen by the public from the outside of the building.
>
> c.     Only one adult business shall be permitted per block face.
>
> d.     Adult uses must be located a minimum of one thousand feet (1,000') from the property boundaries of any school, daycare center, cemetery, public park, forest preserve, public housing, and place of religious worship.
>
> e.     Adult uses must be located in a freestanding building of less than twenty thousand (20,000) square feet.

On February 28, 2007, the Village Planning and Zoning Commission (the

"Commission") conducted a public hearing on the Plaintiffs' zoning application during which the

Commission heard extensive public testimony.  At the conclusion, Commissioner Keehn moved

to deny the Plaintiffs' application "due to the zoning ordinance [which] set[s] forth the following

---

[4] Adult uses are allowed in the M—Manufacturing District as "conditional uses" as long as they meet the requirements of § 10-4-6(D)(11).

[5] Defs.' Rule 56.1 Statement of Material Facts Ex. 3B (zoning application form).

standards: It shall be unlawful for any adult business to sell, distribute or permit beer or alcoholic beverages on the premises."[6]  The motion was passed unanimously and the Commission recommended, in a written report to the Village Board of Trustees that mirrored the motion language, that adult use be denied.  The Board of Trustees voted to deny permission for adult use at 2850 Indian Joe Road on March 5, 2007, concurring with the Commission's conclusions.

On April 16, 2007, The Village Board of Trustees amended certain sections of the Zoning Code, including parts of § 10-7-4 and § 10-4-6(D)(11).  The Zoning Code now requires that "adult uses must be located a minimum of one thousand feet (1,000') from the property boundaries of any school, daycare center, cemetery, public park, forest preserve, public housing, *residentially zoned property*, and place of religious worship." Zoning Code § 10-4-6(D)(11)(d) (emphasis added to indicate amendment).  The 2850 Indian Joe Road site is not located more than 1,000 feet from residentially-zoned property.

On May 11, 2007, the Plaintiffs filed suit against the Village and thirteen individuals, asking for declaratory and injunctive relief and asserting that the Zoning Code is unconstitutional.  The individual defendants are: Defendant Henry Vicenik ("Vicenik"), who was the mayor[7] of the Village at all times relevant; Defendants Fitzgerald Mullins ("Mullins"), James Johnson, Jr. ("Johnson, Jr."), Robert Payne ("Payne"), Michael Tyl ("Tyl"), John Ferguson ("Ferguson"), and Sam D'anza ("D'anza"), who were Village trustees; and Defendants Beverly Keehm "(Keehm"), Jury Abraham ("Abraham"), Billy Davis ("Davis"), Juanita Hinton Johnson ("Johnson"), Minnie Reese ("Reese"), and Ray Donato ("Donato"), who were Village

---

[6] *Id.* Ex. 3C at 102:18-24.
[7] In some documents, Vicenik is called the Village President.  It is unclear if he holds two positions, President of the Village Board of Trustees and Village Mayor, or if one of the titles was used in error.

commissioners.  The Village and the eleven individual defendants are collectively referred to as the "Defendants."

## II. MOOTNESS

After an initial review of the parties' summary judgment briefs and statements of fact, the court issued a minute order requesting further briefing.  The court noted that the Plaintiffs filed this lawsuit for injunctive relief on May 11, 2007.  The Village Board of Trustees amended certain sections of the Zoning Code on April 16, 2007, including § 10-4-6(D)(11)(d).  The original version of § 10-4-6(D)(11)(d) provided that "adult uses must be located a minimum of one thousand feet (1,000') from the property boundaries of any school, daycare center, cemetery, public park, forest preserve, public housing, and place of religious worship."  The amended version included a restriction that adult uses also be located greater than 1,000 feet from "residentially zoned property."[8]  The record showed that the property at 2850 Indian Joe Road, the proposed location of Chicago Joe's Tea Room, is less than 1,000 feet from residentially-zoned property.  In light of the Plaintiffs' request for injunctive relief, the court requested further briefing on whether the amendment mooted the controversy.

The Village argues that rendering a decision on a Zoning Ordinance that is no longer in effect is inappropriate because such a decision would be merely advisory and the amendment has mooted the plaintiff's request for injunctive relief based on the defunct ordinance.  *See, e.g.*, *Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir. 1995) ("The complete repeal of a challenged statute naturally renders a request for an injunction against application of that statute moot.").  The Plaintiffs argue that the amendment does not remove the harm alleged; in fact, it exacerbates the unconstitutionality of the Village's Zoning Code by adding additional restrictions to the

---

[8] Other subsections of § 10-4-6(D)(11), including the prohibition on adult businesses selling or distributing alcohol, were not amended.

placement of adult use facilities. *See, e.g.*, *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (finding that an amendment to an ordinance does not render a plaintiff's claim moot where the new ordinance disadvantages the plaintiff in the same fundamental way as the original ordinance). They also argue that the amendment fails to cure the unconstitutional prior restraints imposed by the Zoning Code's requirement to obtain a special or conditional use permit, and that its claims for declaratory relief and damages are not rendered moot by the amendment.

Curiously, neither party's argument addresses the metaphorical "elephant in the room," namely that the amendment seems to have been promulgated specifically to target Chicago Joe's and prevent it from ever operating at its chosen location. The court's own research has uncovered a factually similar case. *See 754 Orange Ave., Inc. v. City of West Haven*, 761 F.2d 105 (2d Cir. 1985). In *754 Orange Ave.*, the plaintiff ("754 Orange") applied for a preliminary injunction enjoining the city from enforcing its zoning and licensing ordinances against it and ordering the city to issue a building permit. *Id.* at 107. On February 24, 1984, 754 Orange applied for a building permit to renovate a building in order to conduct the business of an adult bookstore. *Id.* at 108. The zoning ordinances did not have a special classification for adult use and the business was arguably considered a "commercial recreational facility." *Id.* The applicable zoning ordinance at the time of the application (§ 32-2.7) stated that "[n]o commercial recreational facility shall be located on a property within a one-thousand (1000) foot radius of a park, playground or public or private primary or secondary school." *Id.* at 109. 754 Orange's premises were between 1,000 and 1,500 feet from the nearest school, park, or playground. *Id.* The city denied the permit without explanation. *Id.* On May 23, 1984, the district court ordered the city to issue a permit. *Id.* The city did not comply. *Id.* However, on June 15, 1984, the city

amended § 32-2.7, increasing the minimum distance required from 1,000 feet to 1,500 feet, thereby making it categorically impossible for 754 Orange to be eligible for a permit at its current location. *Id.*

Following the amendment, the city moved to dismiss the case based on mootness due to 754 Orange's ineligibility for a permit under the amended section. *Id.* The court denied the motion, finding that the evidence suggested that the zoning amendments were made "in order to frustrate plaintiff's sale and display of sexually explicit material," which raised "a serious due process question." *Id.* On appeal, the Second Circuit, in part, held that "section 32-2.7 is impermissible as enacted, because its adoption strongly suggests that it was aimed solely at 754 Orange." *Id.* at 113. It found that the city amended the ordinance to include the premises owned by 754 Orange only after it "learned that 754 Orange's leased premises [are] beyond 1,000 feet from any school, park, or playground." *Id.* It reasoned that, despite an applicant's general lack of vested rights in existing zoning classifications under Connecticut law, courts "will not allow changed building zone regulations to act as a bar to a building project where it would be inequitable to do so." *Id.* The court noted that this principle of "equity of notice" was a legitimate concern in a First Amendment case. *Id.* (citing *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 80 (1976), wherein the U.S. Supreme Court observed that an amended zoning regulation was not aimed at suppression of free expression where "[t]he ordinance was already in existence, and its purposes clearly set out, for a full decade before adult establishments were brought under it"). The Second Circuit therefore refused to consider the amended ordinance because the city "did not 'adequately justif[y] its substantial restriction of protected activity' in a manner sufficient to justify its ex post facto treatment of Orange Avenue's contemplated use." *Id.* (quoting *Avalon Cinema Corp. v. Thompson*, 667 F.2d 659, 662 (8th Cir. 1981)).

Illinois also recognizes that property owners may, under certain circumstance, acquire a vested right to the continuation of an existing zoning classification, despite the general rule to the contrary. *1350 Lake Shore Assocs. v. Healey*, 861 N.E.2d 944, 950 (Ill. 2006). In order to come within the purview of the exception, a land owner must have made a "'substantial change of position, [such as] expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance[.]'" *Id.* (quoting *Fifteen Fifty N. State Bldg. Corp. v. City of Chicago*, 155 N.E.2d 97 (1958)).

The exception only applies, however, where an applicant reasonably relies on the legality of the ordinance and does *not* apply where a land owner unreasonably relies on an invalid ordinance. *Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 849 (7th Cir. 2007); *City of Elgin v. All Nations Worship Ctr.*, 860 N.E.2d 853, 857 (Ill. App. Ct. 2006). In both *Petra* and *All Nations*, plaintiff churches had purchased property in an area that was not zoned in a manner that allowed them to operate. *Petra*, 489 F.3d at 847; *All Nations*, 860 N.E.2d. at 665. The municipalities amended the zoning ordinances to cure the perceived constitutional problems, which eliminated the churches' ability to locate in their chosen area. *Petra*, 489 F.3d at 848; *All Nations*, 860 N.E.2d. at 666. The courts rejected the churches' arguments that they had a vested interest in continuing to operate based on reliance on the facial invalidity of the zoning ordinance. *Petra*, 489 F.3d at 848; *All Nations*, 860 N.E.2d. at 669. In *Petra*, the Seventh Circuit noted that there was no basis "for the proposition that the federal Constitution forbids a state that has prevented a use of property by means of an invalid (even an unconstitutional) enactment to continue to prevent that use by means of a valid one." *Petra*, 489 F.3d at 849. In *All Nations*, the Illinois Appellate Court reasoned that "vested rights are acquired by attempting to comply with an ordinance as written. . . . Here, however, All Nations proceeded *in violation*

of the zoning ordinance as written [under the assumption it would be found invalid]." *All Nations*, 860 N.E.2d. at 668 (emphasis in original).

The Seventh Circuit recently reaffirmed its rejection of "the notion that a property owner may rely on purported defects in prior versions of the law as the springboard to claim a vested interest in property use for which it never obtained permission." *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1005 (7th Cir. 2008) (discussing the similarities of its holding in *Petra* and the Illinois Appellate Court's holding in *All Nations*). Thus, the ability of a municipality to adopt a curative amendment to an invalid zoning ordinance and thereby attempt to moot an applicant's claim is beyond question. The issue, therefore, is whether the Village's amendment of § 10-4-6(D)(11)(d) was intended to be curative.

The Defendants' own arguments seem to belie such a finding. For example, the Defendants contend that the pre-amendment version of § 10-4-6(D)(11)(d) was constitutionally valid as a content-neutral "time, place, and manner regulation." *See* Defs.' Mem. in Supp. of Mot. for Summ. J. at 8 (citing a version of the Zoning Code promulgated in November 2001 in support); *id.* (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986), which concluded that an ordinance that prohibited adult movie theatres within 1,000 feet of any residential zone, single or multi-family dwelling, church, park, or school was constitutional); Defs.' Rule 56.1 Statement of Material Facts, Ex. 3A (Zoning Code, dated November 2001). Leaving aside for the moment the issue of whether the Defendants' argument is correct, the amendment itself also suggests that the Village was not attempting to rectify any perceived constitutional infirmity. For example, the amended § 10-4-6(D)(11)(d) further restricted the availability of land for adult use, which is the opposite result to that expected of an attempt to rectify an ordinance that impermissibly infringed on protected speech. The court therefore

concludes that the Village was not attempting to rectify any weaknesses in its Zoning Code when it extended the reach of § 10-4-6(D)(11)(d).

In reaching this conclusion, the court is cognizant of the equities. The amendment made Chicago Joe's categorically ineligible for a permit. Pls.' Statement of Facts ¶ 36. Chicago Joe's entered a contract to purchase the property from Conway after concluding that the location met with the requirements of § 10-4-6(D)(11)(d) in that it was "a minimum of one thousand feet (1,000') from the property boundaries of any school, daycare center, cemetery, public park, forest preserve, public housing, and place of religious worship." *See id.* ¶ 35. Chicago Joe's spent considerable time, effort, and money to locate a suitable property and secure the contract. *See* Letter to Steven Luzbetak, Esq., attached to Verified Compl. (detailing terms of contract and non-refundable earnest money paid). After Chicago Joe's applied for a permit and a public hearing was held, it came to light that Chicago Joe's chosen location met the requirements of the original § 10-4-6(D)(11)(d), but was within 1,000 feet of family homes. Consequently, the Village amended its zoning ordinance to exclude adult use facilities from locations that were within 1,000 feet of homes, which coincidentally included the proposed site for Chicago Joe's. The record does not disclose that the Village conducted any studies on the effect of adult use facilities within 1,000 feet of residential neighborhoods and the amended ordinance contains no findings to explain the rationale for the amendment.[9]

In light of these facts, the adoption of the amendment strongly suggests that it was not intended to be curative, but rather was aimed solely at Chicago Joe's, similar to the targeted amendment in *754 Orange Ave.* Under these circumstances, the reasoning of *Petra* and *All*

---

[9] Of note, neither the original nor the amended Zoning Code contains legislative findings to support any restrictions on adult use. This absence of findings is a further reason why the amendment does not moot the Plaintiffs' claims. *See* § IV(B)(2) *infra*.

*Nations* is inapplicable.  Pursuant to the reasoning of the Second Circuit in *754 Orange Ave.*, the

court holds that  Chicago Joe's had acquired a vested right in the continuation of § 10-4-

6(D)(11)(d) during the pendency of its application.[10]  Therefore, the fact that Chicago Joe's

could not, under the current version of § 10-4-6(D)(11)(d), occupy 2850 Indian Road is

irrelevant to the merits of the summary judgment motions, to which the court now turns.

### III. MOTIONS TO STRIKE

The Defendants move to strike portions of the Plaintiffs' Local Rule 56.1(a) Statement of

Facts for lack of reference to the record and reliance on inadmissible evidence.  The Plaintiffs

move to strike the affidavit of Michael Hoffman, attached as Exhibit 7 to the Defendants' Local

Rule 56.1(b)(3)(B) Statement of Additional Facts, for failure to establish the foundation for the

opinions and conclusions.

**A.      The Defendants' Motion To Strike [38]**

**1.       Lack Of Reference To The Record**

The Defendants argue that several paragraphs of the Plaintiffs' Statement of Material

Facts violate Local Rule 56.1 because they lack a reference to the record.  The Rule requires the

moving party to submit a statement of material facts that "consist[s] of short numbered

paragraphs, including within each paragraph specific references to the affidavits, parts of the

record, and other supporting materials relied upon to support the facts set forth in that

paragraph."  L.R. 56.1; *see also Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)

(emphasizing the need for concrete evidence in support of asserted material facts).  The court's

standing order emphasizes this requirement.  *See* Standing Order Regarding Motions for

---

[10] Because the constitutionality of other amended sections, such as § 10-7-4, has been
challenged, the court restricts this holding to § 10-4-6(D)(11)(d).  Where a constitutional
challenge has been raised, Broadview had a right, pursuant to the reasoning in *Petra*, to attempt
to cure any infirmities through post-hoc amendments.

Summary Judgment ("This statement shall consist of <u>short</u> <u>numbered</u> paragraphs, including within each paragraph <u>specific</u> references to affidavits, parts of the record, transcript excerpts and other supporting material." (emphasis in original)), http://10.205.15.104/JUDGE/GOTTSCHALL/jbgstnd.htm. The standing order states that "if a movant submits a 56.1(a)(3) statement that does not include specific evidentiary support for a given purported 'material fact,' thereof, that 'fact' may be disregarded." *Id.*

       a.    <u>Paragraphs 33, 39, and 55</u>

The Plaintiffs admit that they failed to cite to the record in two instances, specifically paragraphs 39[11] and 55,[12] and the court finds that paragraph 33[13] suffers from a similar infirmity. They reason that the paragraphs should, nevertheless, not be stricken because they "do not contain legal conclusions but set forth facts entirely within the purview of Defendants which could be answered without placing any hardship on the Defendants to ascertain their accuracy." Pls.' Resp. to Defs.' Mot. to Strike at 5. This statement is fundamentally flawed. A motion for summary judgment is no place for a party to be conducting discovery. The Plaintiffs should have obtained evidence supporting the statements long ago by means of requests to admit or deposition testimony. A party's failure to obtain the necessary discovery it needs to prove its case does not excuse non-compliance with the rules of the court. *See Int'l Union, United Auto, Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 886 F.2d 871, 886 (7th Cir. 1989) ("[The court's] inquiry must be based on the underlying premise that the

---

[11] "No other property on the same block face as the Subject Property is currently proposed to be used for an adult business as defined by the Village Code." Pls.' Statement of Material Facts ¶ 39.

[12] "The statements recited [in paragraph 54] and contained in the Chicago Tribune article attributed to Vicenik are true and accurate recitations of the statements made by Vicenik on March 5, 2007 with regard to Plaintiffs' proposed adult business." *Id.* ¶ 55.

[13] "Exhibit L is a true and accurate copy of the Village's Official Zoning Map as it existed at all relevant times." *Id.* ¶ 33

creation of a record adequate to meet legal challenges is the responsibility of the parties litigating the case."). Paragraphs 33, 39 and 55 are therefore stricken for failure to comply with Rule 56.1(a)(3).[14]

   b.   Paragraph 32 And Exhibit L

The Defendants argue that paragraph 32 should be stricken because it is supported by Exhibit L, which is a reduced-size black-and-white reproduction of the Official Zoning Map from which the statements asserted by the Plaintiffs "cannot be substantiated." Defs.' Mot. to Strike at 2. The argument is frivolous given that the Defendants submit the exact same map (albeit in color) as part of their own record. *See* Defs.' Statement of Material Facts Ex. 3A, pt. 4 of 4. The court will not grant a motion to strike for such a hyper-technical reason.

   2.   Inadmissible Evidence

The Defendants move to strike multiple statements of fact that cite to allegedly unauthenticated and/or inadmissible exhibits in violation of Rule 56(e). As the Plaintiffs point out, Rule 56(e) applies only to exhibits to an affidavit. In many cases, the Plaintiffs submit "free-standing" exhibits that are not associated with any affidavit, rendering Rule 56(e) inapplicable. However, this begs the question of whether the exhibits *should have been* attached to an affidavit. In the words of the Seventh Circuit:

> It bears repeating that the purpose of summary judgment is to determine whether there is any genuine issue of material fact in dispute, and, if not, to render judgment in accordance with the law as applied to the established facts. The facts must be established through one of the vehicles designed to ensure reliability and veracity – depositions, answers to interrogatories, admissions and affidavits. *When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence.*

---

[14] Some of the Defendants' own statements similarly lack citation to the record, and the court has disregarded those paragraphs for non-compliance with the rules. *See, e.g.*, Defs.' Rule 56.1(b)(3) Resp. to Pls.' Statement of Facts ¶ 56 (no citation to the record to support dispute of fact in violation of Local Rule 56.1(b)(3)(B)).

*Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985) (emphasis added). Thus, to the extent that an exhibit is not independently admissible (for example, self-authenticating documents as provided by Federal Rule of Evidence 902 or information subject to judicial notice), a foundational affidavit is required (in which case the requirements of Rule 59(e) would be triggered).

The Defendants' reliance on Rule 56(e) skips over the preliminary evidentiary questions of authenticity and admissibility. In doing so, they assert objections to 22 of the 25 exhibits.[15] The exhibits are, for the most part, public documents or provisions of the Village's ordinance which are admissible in substance without a foundational affidavit under Federal Rules of Evidence 201 or 902 or Federal Rule of Civil Procedure 44. Other materials, including documents authored by the Village Zoning Board, are admissions under Federal Rule of Evidence 801(d). Therefore, the Defendants' global Rule 56(e) objection to the exhibits is overruled.

The Defendants further assert that: (1) paragraphs 38 and 39 inappropriately cite exhibit N as support; and (2) paragraphs 52 and 54 impermissibly rely on hearsay within exhibit R. Paragraph 39 has already been stricken for failure to cite the record. Paragraph 38 states:

> At the time Chicago Joe's submitted its application for a special use permit and at the time the Village Board denied Chicago Joe's request for a special use permit, no other existing or proposed adult use was located on the same block face as the Subject Property. See Affidavit of Joseph A. Inovskis attached as Exhibit N to Plaintiffs' Summary Judgment Documents.

Pls.' Statement of Material Facts ¶ 39. The problem, as the Plaintiffs concede, is that the affidavit does not establish the affiant's competency to testify as to any proposed uses.

---

[15] The Defendants originally objected to an additional exhibit, Exhibit C, but withdrew that objection in their reply, conceding that it was substantiated by the affidavit of Joseph Inovskis, which includes three exhibits that are also separate exhibits.

However, Inovskis does establish that he had personal knowledge of the existing uses; therefore, paragraph 38 will be stricken only to the extent it references "proposed" adult use.

Paragraphs 52 and 54 are based on statements of Village officials published in a newspaper article. The Defendants contend the paragraphs rely on hearsay. Paragraph 52 states:

> On March 6, 2007, the Chicago Tribune published an article written by Joseph Ruzich wherein Vicenik is quoted as saying with regard to Plaintiffs' proposed adult business: "I am not in favor of this business in our community." *See* Chicago Tribune article dated March 6, 2007 attached as Exhibit R to Plaintiffs' Summary Judgment Documents.

*Id.* ¶ 52. The paragraph does not ask the Defendants to admit the truth of what the article says Vicenik says; it asks to admit that the Chicago Tribune published an article with specific content. There is no hearsay implication and the motion to strike on this basis is denied.

Paragraph 54 states: "The Chicago Tribune article also states that [Mayor] Vicenik stated he was confident the Village would turn down future requests for such clubs. *See* Exhibit R to Plaintiffs' Summary Judgment Documents." The Plaintiffs contend that Mayor Vicenik's statement is not hearsay because it is an admission under Federal Rule of Evidence 801(d)(2), or, alternatively, it is not offered for the truth but to show the reasons for denying the special use permit were pretextual. The court agrees that the Mayor's statement could be admissible at trial as an admission; therefore, the motion to strike paragraph 54 is denied.

**B.      The Plaintiffs' Motion To Strike [45]**

The Plaintiffs contend that the affidavit of Michael Hoffman ("Hoffman"), submitted as a rebuttal affidavit to the Plaintiffs' expert affidavit, does not comport with the requirements of the Federal Rules as applied to expert affidavits. Rule 56(e) provides in part that:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.

Fed. R. Civ. P. 56(e)(1); *see also Rosemary B. v. Bd. of Educ. of Cmty. High Sch. Dist. No. 155*, 52 F.3d 156, 159 (7th Cir. 1995) (upholding the district court's decision to strike plaintiff's affidavit where it was "conclusory and not based on personal knowledge, and [the] attached exhibits [we]re unauthenticated"); *Bee v. Local 719, United Auto Workers*, 744 F. Supp. 835, 836 (N.D. Ill. 1990) (granting a motion to strike where the affidavit statements were based on hearsay, not personal knowledge). Thus, "[a]ffidavits . . . create an issue of fact only to the extent that they provide evidence that would be admissible if offered live on the witness stand." *Watson v. Lithonia Lighting*, 304 F.3d 749, 751-52 (7th Cir. 2002); *see also Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002) (noting that when considering evidence submitted on summary judgment, "[t]he evidence need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content").

Expert testimony is admissible at trial when it comports with Rule 702, which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) (requiring the court to undertake a gatekeeping role whereby it ensures that expert testimony "rests on a reliable foundation and is relevant to the task at hand"). These reliability requirements are read into the affidavit requirements of Rule 56(e). *See, e.g.*, *U.S. v. Wittje*, 333 F. Supp. 2d 737, 742 (N.D. Ill. 2004).

The Plaintiffs argue that Hoffman's affidavit is devoid of any facts or data to explain how Hoffman reached his opinions and that this renders the affidavit, and therefore the opinions,

inadmissible. The Defendants contend that, under Federal Rule of Evidence 705, an expert need not disclose the underlying facts or data when testifying. They state that "[t]here is no requirement that an expert set forth the detail of any calculations leading to his or her conclusions in order for his or her affidavit to support a motion for summary judgment." Defs.' Resp. at 2. Although they may be correct that calculations are not *per se* mandated by the relevant case law, reasons underlying the opinion are. *See, e.g.*, *Nat'l Diamond Syndicate, Inc. v. United Parcel Serv., Inc.*, 897 F.2d 253, 260 (7th Cir. 1990) (finding summary judgment inappropriate on the basis of a conclusory statement in an affidavit because "if the affiant offers an expert opinion, she must give reasons for the opinion, not merely state her conclusions") (citing *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989)). Therefore, the court looks to the affidavit to determine if Hoffman's reasons are clearly laid out.

Hoffman disagrees with two of the plaintiff's expert's conclusions, namely that only three parcels of land in the Village met the Village's zoning requirements for adult use before April 16, 2007 and that not one parcel could be used for adult use after the zoning ordinance revisions in April 16, 2007. In rebuttal of the conclusions, Hoffman opines that "approximately 38 acres or 3% of the Village was available [before April 16, 2007] for possible development of an adult use under the regulations in effect at the time Chicago Joe's applied for a special use permit" and that "roughly ten parcels along 25th Avenue" would be potential locations after April 16, 2007. Hoffman Aff. ¶¶ 6, 8. In support of these conclusions, he relies on Exhibit 2 to

the affidavit, an August 27, 2004 memorandum from Hoffman to the Village Deputy Clerk and a hand-drawn map of the Village.[16]

The August 27, 2004 memorandum explains that the map "applies the state standards to the Village of Broadview," where the state standards are that "any adult use be located 1,000 [feet] away from a cemetery, school, day care center, public park, forest preserve, public housing, or place of religious worship."  However, the hand-drawn map does not disclose its scale and contains no measurements and few property line markers by which the court can ascertain how Hoffman came to the conclusion that 3%, 38 acres, or ten lots are or were available for adult use.  The affidavit does not explain the methodology used or the basis on which he made his calculations.  The lack of precision in both the exhibit and the affidavit renders Hoffman's determination regarding the amount of land available questionable.  Absent information on how he went about calculating the number of lots or available acreage, his conclusion, namely that the Plaintiffs' expert's opinion of the number of sites available is wrong, simply cannot be considered sufficiently reliable.  Rule 702 and *Daubert* require more than a rough sketch and an unsubstantiated number to support of an expert opinion.  However, Hoffman's opinion as to the validity of criteria employed by Plaintiffs' expert may stand, as it relies only on his expert knowledge, which is adequately identified in his resume.[17]  The motion to strike is therefore granted in part, as to paragraphs 5 through 8, and denied in part, as to paragraphs 1 through 4.

---

[16] Two other documents are attached to the affidavit, but are not referenced in the affidavit: a legal memorandum from Amy E. Smith to the Zoning Board dated July 29, 2004; and an "Official Zoning Map, Broadview, IL."  There is no basis upon which the court can determine the purpose of these documents absent reference in the affidavit; it therefore disregards them.

[17] Hoffman's resume indicates he is a licensed landscape architect with numerous years of experience with municipal and private customers in both planning and landscape architecture. He maintains professional affiliations and speaks on planning and design topics.

## IV. CROSS-MOTIONS FOR SUMMARY JUDGMENT

Both parties have moved for summary judgment on the Village's liability under the First and Fourteenth Amendments. However, the Plaintiffs have moved for partial summary judgment on Counts I and II of their three-count complaint only, choosing not to move for summary judgment on Count III, a claim for monetary damages.

### A. Summary Judgment Legal Standard

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). It is not appropriate if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. "Summary judgment for a [movant] is appropriate when the [non-movant] 'fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex Corp.,* 477 U.S. at 322).

In response, the non-moving party cannot rest on the pleadings, but must designate specific material facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. When considering a motion for summary judgment, the court

must view the record and any inferences to be drawn from it in the light most favorable to the opposing party. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). However, a court is "not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citing *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003)).

On cross-motions for summary judgment, the traditional standards for summary judgment apply and each movant must individually satisfy Rule 56's requirements. *Blum v. Fisher*, 961 F. Supp. 1218, 1222 (N.D. Ill. 1997) (citing *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996)). The court must construe all evidence and inferences therefrom in favor of the non-movant. *See Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007) (quoting *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004)). The court therefore considers the merits of each motion separately[18] and draws all reasonable inferences and resolves all factual uncertainties in favor of the non-moving party.[19]

## B.     First Amendment: Zoning Restrictions And Adult Entertainment Establishments

---

[18] In this case, the Plaintiffs "incorporate" arguments made in their opening memoranda into their response in opposition to the Defendants' motion for summary judgment and the Defendants similarly incorporate their response in opposition to the Plaintiffs' motion into their reply in support of their own motion. Similarly, multiple additional statements of material fact offered in opposition are mere duplicates of statements of fact offered in support of the party's own motion. There is, therefore, considerable overlap which makes it almost impossible, as a practical matter, to consider each motion separately.

[19] Each party submitted multiple rounds of material facts and exhibits in support of its own motion and in opposition to the other party's motion. The Defendants failed to respond to the Plaintiffs' Rule 56.1(b) Statement of Additional Material Facts and Materials in Opposition to Defendants' Motion for Summary Judgment. Where the statements are duplicates of those in support of Plaintiffs' own motion, the court has implied the same responses as the Defendants offered in their Rule 56.1(b)(3) Response to the Plaintiffs' Statement of Facts, and where the statements are new, the court has exercised its discretion and determined whether the record supports the statement and given weight to the statements accordingly.

The Defendants have moved for summary judgment on the basis of an absence of material fact as to the constitutionality of the Zoning Code, arguing that it satisfies an intermediate scrutiny standard as an appropriate time, place, and manner restriction on adult use facilities. The Plaintiffs have cross-moved for summary judgment on the basis of an absence of material fact as to the *un*constitutionality of the Zoning Code, arguing that: (1) the special use permit requirement constitutes an impermissible prior restraint on protected speech; (2) the Zoning Code cannot survive strict scrutiny as a content-based restriction on First Amendment freedoms; and (3) the terms employed in the Zoning Code are vague and overly broad and do not satisfy due process requirements.

The First Amendment provides, in part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. It is made applicable to the states through the Fourteenth Amendment's due process clause. *Brown v. Brienen*, 722 F.2d 360, 366-67 (7th Cir. 1983). Nude dancing and other types of adult entertainment are considered expressive conduct, although they "fall[] only within the outer ambit of the First Amendment's protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion) (citations omitted).

Many court opinions have established the parameters of the debate over the constitutionality of zoning restrictions on adult businesses. *See, e.g.*, *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 439 (2002) (concluding that an ordinance prohibiting multiple adult businesses within a single building served a substantial government interest); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986) (finding constitutional an ordinance that prohibited adult movie theatres within 1,000 feet of any residential zone, single or multi-family dwelling, church, park, or school); *Andy's Rest. & Lounge, Inc. v. City of Gary*, 466 F.3d 550, 556 (7th Cir. 2006) (holding that restrictions on adult businesses, including limited

operating hours and a bar on physical contact between employees and customers, did not render the zoning ordinance unconstitutional).

1.    Unconstitutional Prior Restraint: As-Applied Challenge

The Plaintiffs argue that the Village's special use permit procedures constitute an unconstitutional prior restraint on protected speech because the Village has unbounded discretion and no deadline by which it must render a decision.  Under the Zoning Code, certain uses in the O/I district "of such a nature that the operation may give rise to unique problems with respect to their impact upon neighboring property or public facilities," such as adult use facilities, animal hospitals, banks, dry-cleaning establishments, and restaurants, require prior authorization by the Village Board of Trustees. *See* Zoning Code § 10-7-4(A), *id.* § 10-4-4.  At all relevant times, the Zoning Code provided that the Village must hold a public hearing on a special use application and the Village trustees may not authorize a special use permit unless it is: (1) necessary for the public convenience at the location; (2) designed, located and proposed to be operated so that the public health, safety and welfare will be protected; and (3) would not cause substantial injury to property values.  *See* Zoning Code § 10-7-4(C)-(D).

It does not appear, from the record before the court, that the Village considered the § 10-7-4 special use criteria when rendering its decision.  The only reason given on the record by the Village for denying zoning permission to Chicago Joe's was § 10-4-6(D)(11)(a)'s prohibition on liquor sales at adult entertainment establishments.  *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶¶ 28, 29, 33.  The court's review of the sections at issue indicates that a business that does not meet the minimum mandatory guidelines set forth in § 10-4-6 is categorically ineligible for a special use permit, whereas § 10-7-4 provides the guidelines under which businesses that meet the prerequisites of § 10-4-6 may obtain authorization from the

Village to conduct their special use. Curiously, although the Village contends that Chicago Joe's did not meet the prerequisites of § 10-4-6(D)(11)(a), it did not deny Chicago Joe's application outright for failure to meet the minimum mandatory guidelines for adult use. Rather, it granted it a special use public hearing pursuant to § 10-7-4(C).

At the public hearing on February 28, 2007, the Planning Commission heard testimony from dozens of interested parties about the likely impact of Chicago Joe's on, among other things, property values, safety, the police force, tax revenue, traffic congestion, and general public welfare. *See* Defs.' Rule 56.1 Statement of Material Facts, Ex. 3C (transcript of public meeting). Members of the Planning Commission and Village Board themselves made public comments relating to the criteria listed. *See, e.g.*, *id.* 61:14-62:3 (Defendant Ferguson, speaking "as a resident not as a Trustee," discussing his concerns about the impact on youth of a strip club). Yet, neither the Village Planning Commission nor the Board of Trustees placed on the record any findings of fact or other remarks regarding whether Chicago Joe's would otherwise qualify for a special use permit to operate an adult use facility under § 10-7-4(D).[20] *See* Defs.' Rule 56.1 Statement of Material Facts, Ex. 3C at 102:18-103:16 (Planning Commission minutes, motion of Commissioner Keehn moving to "deny the application for special use . . . due to the zoning ordinance set[s] forth the following standards: It shall be unlawful for any adult business to sell, distribute, or permit beer or alcoholic beverages on the premises"); *id.* Ex. 3D (Planning

---

[20] The Defendants deny this statement, contending that "[t]he Trustees voted to deny for reasons stated on the record" and citing Plaintiffs' Exhibit Q (Village meeting minutes) in support. *See* Defs.' Rule 56.1(b)(3) Resp. to Pls.' Statement of Facts ¶ 49. However, the exhibit shows that President Vicenik reported only that Chicago Joe's was "a recognized venture in a proper place and location," and that "that type of business is not for the Village of Broadview" and concurred with the Planning Commission "findings of fact" (which consist only of a notation that Chicago Joe's applied for a special use permit for an adult use facility). *See* Pls.' Statement of Material Facts in Supp. of Mot. for Summ. J. Ex. Q at 3; *id.* Ex. P. The record does not show that the Village made any findings as to the criteria of § 10-7-4(D). Therefore, based on the record before it, the court finds this to be an undisputed fact.

Commission report to Mayor Vicenik on the recommended denial of the special use permit); *id.* Ex. 3E (Board of Trustees meeting minutes). Therefore, despite the fact that a public hearing was held under § 10-7-4 and notwithstanding the Plaintiffs' arguments that denial of a request for special use on the basis of § 10-4-6(D)(11) is improper, the court concludes that the sole basis for the denial was that the "adult use" proposed did not comport with the mandatory requirements of § 10-4-6(D)(11)(a).[21]

Given that the official record does not implicate § 10-7-4 of the Zoning Code, the court declines to reach the issue of its constitutionality as applied to the Plaintiffs. *See Burton v. U.S.*, 196 U.S. 283, 295 (1905) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."). The court therefore turns to the whether the section of the Zoning Code that undergirds the proffered reason for the denial of the application, namely § 10-4-6(D)(11)(a), is a proper "time, place, and manner" restriction on protected speech.

2.      Time, Place, And Manner Restriction: Section 10-4-6(D)(11)(a)

The Defendants argue that the Zoning Code's operative provisions are proper time, place, and manner restrictions on adult speech because they merely: (1) proscribe specific locations for the adult oriented businesses and (2) prohibit the sale or use of alcohol at such venues. Defs.' Mem. in Supp. of Mot. for Summ. J. at 8. The Plaintiffs argue that the restrictions do not pass constitutional muster because the Village cannot point to any evidence that its predominant

---

[21] The Defendants' arguments are in accord with this conclusion and dedicate the vast majority of their briefs, in support and in opposition, to the constitutionality of the liquor restriction. *See, e.g.*, Defs.' Mem. in Supp. of Mot. for Summ. J. at 1 ("The permit was denied because the Zoning Code expressly prohibits the explosive combination of nudity and alcohol."); Defs.' Resp. to Pls.' Mot. for Partial Summ. J. at 1 (arguing that Chicago Joe's "sought a zoning permit . . . to be allowed to do precisely what the Village of Broadview's Zoning Code prohibited: providing adult entertainment while serving alcohol").

concern was the secondary effects of adult speech rather than the content of the speech. Pls.'
Mem. in Supp. of Mot. for Partial Summ. J. at 6. The parties' arguments appropriately focus on
the constitutionality of § 10-4-6(D)(11)(a), the ban on alcohol sales at adult establishments,
given that it was the proffered reason for the denial of a special use permit to Chicago Joe's.

The Seventh Circuit has twice considered zoning ordinances very similar to the one at
issue here, namely that restrict the sale of liquor at adult entertainment establishments. *See
Joelner v. Vill. of Washington Park* (*Joelner II*), 508 F.3d 427 (7th Cir. 2007) (ordinance
prohibited sale of alcohol at adult cabarets opened after the date of the ordinance but exempted
currently licensed adult cabarets);[22] *Ben's Bar, Inc. v. Vill. of Somerset*, 316 F.3d 702 (7th Cir.
2003) (ordinance barred the sale, use, or consumption of alcohol on the premises of "Sexually
Oriented Businesses").

The Village's Zoning Code provides, in pertinent part, that "[i]t shall be unlawful for any
adult business to sell, distribute, or permit beer or alcoholic beverages on the premises." Zoning
Code § 10-4-6(D)(11)(a).[23] The Seventh Circuit has crafted a two-stage, four-step test to assess
the constitutionality of such a restriction.

> First, [the court] must ask if an ordinance that bans alcohol at adult entertainment
> establishments (1) is passed pursuant to a legitimate governmental power, (2)
> does not completely prohibit adult entertainment, and (3) is aimed at combating
> the negative secondary effects caused by adult entertainment establishments. If
> so, then the regulation is constitutional if it survives intermediate scrutiny,
> meaning it serves a substantial governmental interest, it is narrowly tailored, and
> reasonable alternative avenues of communication remain available. If, on the
> other hand, a regulation is not aimed at secondary effects (it fails step three), strict

---

[22] Neither party cites *Joelner II*. The opinion was issued in November 2007 and was amended on
denial of rehearing in April 2008. The motions in the case at bar were filed in November 2007,
and the matter was fully briefed, including motions to strike, in January 2008.
[23] This sub-section of the Zoning Code is identical in both the original and amended versions.
*Compare* Exs. to Defs.' Rule 56.1 Statement of Material Facts, Ex. 3A § 10-2-6 (superseded
version), *with* Exs. to Pls.' Statement of Material Facts in Supp. of Mot. for Partial Summ. J., Ex.
I (current version).

scrutiny applies. This means that the regulation must "be necessary to achieve a compelling state interest and be narrowly drawn to achieve that end."

*Joelner II*, 508 F.3d at 431 (citing *Ben's Bar, Inc.*, 316 F.3d at 722 and *Joelner v. Vill. of Washington Park* ("*Joelner I*"), 378 F.3d 613, 622-23 (7th Cir. 2004)).

It is beyond question that the Village has the power to regulate alcohol sales and consumption in "inappropriate locations" to protect the health and safety of its residents. *Ben's Bar, Inc.*, 316 F.3d at 722 (citing *Pap's A.M.*, 529 U.S. at 296, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 515 (1996) and *California v. LaRue*, 409 U.S. 109, 114 (1972)). Although there is a dispute as to whether there is any actual opportunity for an adult entertainment business to locate in the Village, it is undisputed that the Zoning Code does not, by its terms, completely prohibit adult entertainment. *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 14 (not disputing that "[t]he Village of Broadview's Zoning Code permits adult uses in M–Manufacturing District as a conditional use; and in the O/I–Office and Industrial District as a special use"); *id.* ¶ 15 (not disputing that 309.2 acres, or 26.8% of the Village is zoned either O/I or M); *see Ben's Bar, Inc.*, 316 F.3d at 723 (noting that the liquor regulation at issue "does not completely prohibit Ben's Bar's dancers from conveying an erotic message; it merely prohibits alcohol from being sold or consumed on the premises of adult entertainment establishments"). Thus, the Village easily passes the first two parts of the first step of the *Joelner/Ben's Bar* four-step test.

The third step requires a determination of whether the Zoning Code is "aimed at combating the negative secondary effects caused by adult entertainment establishments." *Joelner II*, 508 F.3d at 431. The Defendants bear the burden of showing that the "'predominant concerns' motivating the ban were with secondary effects." *Id.* (citing *Andy's Rest.*, 466 F.3d at 554). The burden is not heavy; the municipality "may rely on any evidence that is 'reasonably

believed to be relevant.'" *Alameda Books, Inc.*, 535 U.S. at 438. Thus, the court may consider a range of materials including "the text of the ordinance, its preamble or express legislative findings associated with it, and studies and information of which legislators were clearly aware." *Joelner II*, 508 F.3d (citing *R.V.S. v. City of Rockford*, 361 F.3d 402, 409 n.5 (7th Cir. 2004) and *Ben's Bar, Inc.*, 316 F.3d at 723 n.28); *see also Alameda Books, Inc.*, 535 U.S. at 429 (finding it reasonable for the City of Los Angeles to rely on a study it conducted years before the enactment of the challenged ordinance to show a link between reducing crime and restricting the number of adult establishments in one building). However, "[t]his is not to say that a municipality can get away with shoddy data or reasoning." *Alameda Books, Inc.*, 535 U.S. at 438.

The Plaintiffs contend that the Defendants have not met their burden on step three because no evidence has been produced showing that the Village considered the secondary effects of liquor and adult entertainment when enacting its Zoning Code. The Defendants argue that they have met their burden because the Zoning Code states, in relevant part,[24] that its purpose is:

> To promote and protect the public health, safety, morals, comfort and general welfare of the people;
>
> To promote the character and the stability of the residential, business and manufacturing areas within the village of Broadview and to promote the orderly and beneficial development of such areas;
>
> To prohibit uses, buildings or structures incompatible with the character of development or intended uses within specified zoning districts.

---

[24] The Defendants also claim that the Zoning Code's purpose includes "to protect against . . . hazards in the interest of public health, safety, comfort and general welfare." The ellipses obscure the intent of the provision. The full section reads: "To protect against *fire, explosion, noxious fumes and other hazards* in the interest of public health, safety, comfort and general welfare." Zoning Code § 10-1-1(M) (emphasis added). The legal maxim *noscitur a sociis* (a word is known by its associates) makes it extremely unlikely that the drafters foresaw "adult entertainment with liquor" as a potential item on this list, despite the fact that the Seventh Circuit called the mix "explosive" in *Ben's Bar, Inc.* Therefore, the court will consider only three of the four proffered purposes.

Zoning Code § 10-1-2(A), (C), (H).[25]  It is not disputed that this language appears in the Zoning

Code.  *See* Defs.' Rule 56.1(b)(3) Resp. to Pls.' Statement of Material Facts ¶ 69 (admitting that

Ex. W represents the language of the Zoning Code); Pls.' Statement of Material Facts in Supp. of

Mot. for Partial Summ. J., Ex. W (Zoning Code § 10-1-2).

The Defendants additionally ask the court to "take judicial notice that nudity and alcohol

are an explosive combination."  Defs.' Mem. in Supp. of Mot. for Summ. J. at 16 n.3.  They

reason that multiple courts around the nation have so stated, and the "fact," therefore, is not

subject to reasonable dispute.  *See id.* at 13-16 (collecting cases, including *Ben's Bar, Inc.*, 316

F.3d at 708 and *City of Chicago v. Pooh Bar Enters., Inc.*, 865 N.E.2d 133, 157 (Ill. 2006)).  The

Defendants emphasize that a municipality may reasonably rely on the findings of courts in

support of its zoning restrictions, and that the Village had a sound basis for believing there was a

correlation of adult-oriented businesses that serve alcohol and harmful secondary effects, such as

increased crime.  The link, they argue, is obvious and is deducible from common sense.  Defs.'

Resp. to Pls.' Mot. for Partial Summ. J. at 10 (citing to *N.Y. State Liquor Auth. v. Bellanca*, 452

U.S. 714, 718 (1981) and *Pooh Bar Enters., Inc.*, 865 N.E.2d at 157).  Moreover, they argue that,

because the court is required to undertake a highly deferential review of the Village's purposes

and the Plaintiffs have not proved the objectives of the zoning ordinance to be pretextual, the

Zoning Code passes constitutional muster.

The Zoning Code contains no express legislative findings on the negative secondary

effects caused by adult entertainment establishments.  Section 10-1-2 is silent on the issue,

stating only generalized purposes to protect the health and welfare of Village residents and

---

[25] The original and amended versions of the Zoning Code are identical.  *Compare* Exs. to Defs.'
Rule 56.1 Statement of Material Facts, Ex. 3A §10-1-1 (superseded version), *with* Exs. to Pls.'
Statement of Material Facts in Supp. of Mot. for Partial Summ. J., Ex. W (current version).

promote proper development.  The Defendants submitted, along with other evidence, affidavits from: Mayor Vicenik; Village Zoning and Planning Commission Chairman Donato; and the Village Zoning Administrator, Michael Kaminski.  None discuss the purposes of the adult-use restrictions in § 10-4-6(D)(11) of the Zoning Code.  None state their awareness of relevant First Amendment case law or studies of deleterious effects of allowing adult entertainment establishments to serve alcohol.  The sole invocation of these rationales comes in a summary judgment brief lodged with the court by the Defendants' counsel.  This is in stark contrast to the two cases upon which the Defendants primarily rely for the proposition that the pervasiveness of secondary effects of adult businesses is "common sense."

In *Bens Bar, Inc.*, the zoning ordinance at issue was enacted for the explicit purpose of regulating "Sexually Oriented Businesses and related activities to promote the health, safety, and general welfare of the citizens of the Village of Somerset, and to establish reasonable and uniform regulations to prevent the deleterious location and concentration of Sexually Oriented Businesses within the Village of Somerset."  316 F.3d at 704-05.  The ordinance contained a legislative findings section that read:

> Based on evidence concerning the adverse secondary effects of Sexually Oriented Businesses on the community in reports made available to the Village Board, and on the holdings and findings in [numerous Supreme Court, federal appellate, and state appellate judicial decisions], as well as studies and summaries of studies conducted in other cities . . . and findings reported in the Regulation of Adult Entertainment Establishments in St. Croix County, Wisconsin; and the Report of the Attorney General's Working Group of Sexually Oriented Businesses . . . the Village Board finds that:

> (a) Crime statistics show that all types of crimes, especially sex-related crimes, occur with more frequency in neighborhoods where sexually oriented businesses are located.

> (b) Studies of the relationship between sexually oriented businesses and neighborhood property values have found a negative impact on both residential and commercial property values.

(c) Sexually oriented businesses may contribute to an increased public health risk through the spread of sexually transmitted diseases.

(d) There is an increase in the potential for infiltration by organized crime for the purpose of unlawful conduct.

(e) *The consumption of alcoholic beverages on the premises of a Sexually Oriented Business exacerbates the deleterious secondary effects of such businesses on the community.*

*Id.* at 705 (ellipses, substitutions, and emphasis in original).  In reaching its conclusion that the ordinance comported with First Amendment requirements, the Seventh Circuit referred to the clear purpose and explicit findings of the village board.  *See id.* at 723 (including as key factors the village's finding that liquor exacerbates secondary effects of adult entertainment and its express pronouncement that the purpose was not to deny access to protected activities).

The second case relied on by the Defendants for the proposition that secondary effects are obvious is *Pooh Bah Enterprises, Inc.*  In *Pooh Bah*, the Illinois Supreme Court, employing the *Ben's Bar* test, upheld an ordinance that prohibited nude dancing in liquor establishments under the intermediate scrutiny standard.  865 N.E.2d at 161.  In doing so, it conducted an extensive analysis of the evidence offered to support the contention that the challenged ordinance was aimed at combating the negative secondary effects caused by adult entertainment establishments. *Id.* at 154-56.  The ordinance contained explicit findings on the secondary effects.  *See id.* at 154 (quoting the preamble to the ordinance which discussed the link of adult uses in certain area and increased criminal activity).  Testimony indicated that the city zoning department had consulted with groups such as the American Planning Association, had reviewed numerous studies from other cities and had presented its recommendations to the city council for consideration during the enactment of the ordinance.  *Id.* at 155.  Studies on the impact of liquor sales on the secondary effects were among the studies reviewed.  *Id.* at 158.  Only when the court had established that the city did, in fact, make findings as to the "deleterious secondary effects of

allowing adult entertainment establishments to serve liquor" did it grant these findings "a high

degree of deference." *Id.* at 159 (noting that a legislative body could not rely on shoddy data, but

the court would "not specify the methodological standards to which [the city's] evidence must

conform").

Other cases similarly find ordinances subject to intermediate scrutiny only where

evidence indicates that the ordinances were enacted after consideration of secondary effects.

*See, e.g.*, *Alameda Books, Inc.*, 535 U.S. at 430 (finding sufficient a city's primary reliance on a

study that demonstrated a link between combination adult businesses and harmful secondary

effects); *Playtime Theatres, Inc.*, 475 U.S. at 50 (noting that the record showed the city "relied

heavily on the experience of, and studies produced by" other cities on the secondary effects of

adult theaters); *Andy's Rest. & Lounge, Inc.*, 466 F.3d at 554 (finding that the ordinance

"emphasizes that its purpose is to control the 'adverse effects' of sexually oriented businesses

and that the reports before the council "addressed secondary effects").

Thus, the court agrees with the Plaintiffs that First Amendment jurisprudence, as cited by

the Defendants and otherwise, requires the Village to submit more than unwritten "common

sense" rationales to trigger the secondary effects exception and qualify the ordinance for only

intermediate scrutiny. The Seventh Circuit's most recent case on an ordinance that banned

alcohol from adult entertainment establishments supports this conclusion. *See Joelner II*, 508

F.3d 427. In *Joelner II*, the Seventh Circuit upheld a district court's conclusion that a

prospective alcohol ban for adult entertainment establishments was unconstitutional. 508 F.3d at

433. It did so after applying strict scrutiny, which the court of appeals found applicable because

"the purpose of the ban . . . was to prevent competition," not to curb secondary effects. *Id.* at

433. The ordinance's preamble, unlike the one at bar, specifically asserted that it aimed "to

establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the Village." *Id.* at 430. It also cited nineteen cases that discussed the secondary effects of adult entertainment establishments, including *Ben's Bar, Inc. Id.* The court rejected the village's arguments that, by citing *Ben's Bar*, the village implicitly considered the studies upon which the city relied in that case, and that citing cases showed that the village had considered the secondary effects considerations discussed within those cases. *Id.* at 432-33. The court of appeals observed that the studies referenced in *Ben's Bar* did not address the key issue of the ordinance under consideration, namely the ban of alcohol at some, but not all, adult establishments. *Id.* at 433. The court also noted that evidence in the record cast doubt on the stated purpose of the ordinance. *See id.* at 432 (noting that certain actions taken immediately prior to enactment of the ordinance to favor existing operators would likely increase the secondary effects of adult entertainment the ordinance sought to curb). *Joelner II* makes it clear that the Seventh Circuit demands more than passing reference as to the secondary effects of adult establishments to establish that those effects are the predominant concern of the municipality.

There is support, albeit in dicta, to conclude that, in the absence of *any* reference to secondary effects in the ordinance, the Seventh Circuit would impose strict scrutiny. In *Ben's Bar, Inc.*, the court cited a case that so held. *See Ben's Bar., Inc.*, 316 F.3d at 724 n.29 (citing *G.Q. Gentlemen's Quarters, Inc. v. City of Lake Ozark*, 83 S.W.3d 98, 103 (Mo. Ct. App. 2002)). The court in *G.Q. Gentlemen's Quarters, Inc.*, ruled that the City of Lake Ozark failed to prove that the purpose of the ordinance was to prevent secondary effects and not to suppress protected speech because it provided no evidence of its purpose in enacting the ordinance. 83 S.W.3d at 102-03. The court found nothing in the preamble to the ordinance or in the express legislative

findings, and the city "did not introduce any evidence of studies or information it considered on the issue in enacting the ordinance." *Id.* The only evidence was oral testimony that the court found "did not provide evidence of the City's purpose . . . ." *Id.* In concluding that the strict scrutiny standard therefore applied, the court noted that it would "not presume that the City enacted [the ordinance] to prevent negative secondary effects associated with erotic dancing establishments absent any indication of such purpose." *Id. See also Ranch House, Inc. v. Amerson*, 238 F.3d 1273, 1282 (11th Cir. 2001) (rejecting a request to "simply assume that the Legislature's purpose was to combat the negative impact on health, safety, and welfare allegedly caused by venues that provide nude dancing" where there was an "absence of any indication that the relevant legislative body intended to ameliorate [secondary] effects").

Similarly, in *Joelner I*, the Seventh Circuit concluded it could not determine if intermediate scrutiny applied based on the preliminary injunction record and remanded for further factfinding. 378 F.3d at 624. In so doing, it rejected the proposition that a recitation that the ordinance was enacted "[i]n order to promote the public interest in the preservation of public health, safety and welfare" would suffice to trigger intermediate scrutiny. *Id.* The court, without so finding, presumed the stated purpose covered secondary effects, but still rejected its sufficiency because showing concern for secondary effects was one reason for the ordinance, but it "must be the 'predominant concern.'" *Id.* The record contained no legislative findings or indication that the village considered studies or other information. *Id.* The Seventh Circuit warned that, absent additional evidence, "the Ordinance would likely be unconstitutional because the Village's general statements about public welfare would be insufficient to demonstrate that the ordinance was necessary to serve a compelling state interest and narrowly drawn to that end." *Id.* at 624-25.

In summary, the cases where intermediate scrutiny has been applied have concerned ordinances that expressly discuss secondary effects as factors motivating and informing the ordinance; the Seventh Circuit has indicated that an absence of evidence that a municipality considered secondary effects results in the application of strict scrutiny. In this case: (1) the Zoning Code makes no express legislative findings on the secondary effects of adult entertainment, *see* Defs.' Rule 56.1 Statement of Material Facts, Ex. 3A; (2) the only references that could be construed as relating to secondary effects are three (of sixteen total) stated purposes that relate to general concerns about public welfare and appropriate development, *see id.* § 10-1-2; (3) the ordinance's purposes do not discuss either adult businesses or alcohol, *see id.*; (4) the ordinance does not cite cases or studies relating to secondary effects, *see id.*; and (5) the Defendants have submitted, in support of or in opposition to summary judgment, no additional evidence that the Village considered secondary effects in passing its ordinance.

The Defendants ask too much when they suggest that the court overlook these deficiencies and instead take judicial notice of the secondary effects of the mix of alcohol and adult entertainment. The "[s]econdary effects doctrine is an exception to the general rule that a statute which on its face distinguishes among particular types of speech or expression by content is subject to the strictest scrutiny." *Ranch House, Inc.*, 238 F.3d at 1282. The burden on a municipality in adult use zoning cases is slight: recitation of the precise purpose of the ordinance and a few legislative findings on the link between crime and adult entertainment establishments, a finding that the type of restriction imposed will ameliorate the secondary effects, and maybe a citation or two to applicable case law. The Village failed to do this. In the absence of any evidence, no reasonable jury could find that the Village Zoning Code was enacted to counter the

secondary effects of adult entertainment. Therefore, whether or not the Village relied on the "common sense" notion of secondary effects, strict scrutiny applies.

Strict scrutiny "means that the regulation must be necessary to achieve a compelling state interest and be narrowly drawn to achieve that end." *Joelner II*, 508 F.3d at 431 (internal quotation and citation omitted). The burden of proof rests with the Defendants. *Id.* The Defendants argue that alcohol restrictions are the least restrictive means of furthering the Village's interest in protecting the general health and welfare of the residents "by combating the negative secondary effects that flow from the explosive combination of erotic entertainment and alcohol." Defs.' Resp. to Pls.' Mot. for Partial Summ. J. at 11. The argument misses the mark because it assumes that the intermediate scrutiny standard applies; the Defendants do not argue in the alternative, as the Plaintiffs do. It also relies on an assumption that the Village's purpose was to combat negative secondary effects, in the absence of any concrete proof. "Adopting [the] Defendants' broad argument renders meaningless the rule that '[w]hen the Government restricts speech the Government bears the burden of proving the constitutionality of its actions.'" *Ranch House, Inc.*, 238 F.3d at 1283 (quoting *U.S. v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 816 (2000)). In the absence of sufficient evidence on the motivation for the Zoning Code, the court concludes that the defendants have failed to suggest a triable issue of fact as to whether § 10-4-6(D)(11)(a) could withstand strict scrutiny.[26] Therefore, the Defendants' motion for summary judgment is denied. Moreover, in light of the facial invalidity of § 10-4-6(D)(11)(a), it follows that it is invalid in all its applications, including as it was applied to Chicago Joe's to deny the

---

[26] This holding applies equally to the other sub-sections of § 10-4-6(D)(11) because of the lack of legislative findings on secondary effects to justify such restrictions on adult speech. *See, e.g.*, *Playtime Theatres, Inc.*, 475 U.S. at 48 (finding constitutional a regulation requiring a minimum distance between adult establishments and certain other categories of land use only where the evidence established that the regulation was aimed at the secondary effects of adult use and was unrelated to the suppression of free expression).

special use application. Therefore, Plaintiffs' motion for summary judgment is granted to the extent it seeks a declaration that § 10-4-6(D)(11) is unconstitutional.[27]

3.    Unconstitutional Prior Restraint: Facial Challenge[28]

The Plaintiffs argue that the Zoning Code constitutes a prior restraint on free speech. Specifically, they contend that: (1) no property in the Village may be used, as a matter of right, for an "adult business" due to special use permit requirements; (2) the standards under which the Village Trustees determine whether to grant a special use permit are vague and indefinite and thereby vest the Village with unbridled discretion; and (3) the Zoning Code provides no time frame in which the Village must decide whether to grant a special use permit. *See* Zoning Code § 10-7-4(A) (outlining the categories of special uses); *id.* § (D) (outlining standards for consideration of the Village Trustees in authorizing a special use).

It is undisputed that the Village amended § 10-7-4, the section describing special use procedures. *See* Defs.' Rule 56.1 Resp. to Pls.' Statement of Facts ¶¶ 23-24 (admitting that § 10-7-4(C) was amended on April 16, 2007 to add timeframes for decisions). Part of the section remained constant, namely the requirement that a special use: (1) be deemed necessary for the public convenience at that location; (2) is so designed, located, and proposed to be operated that the public health, safety and welfare will be protected; and (3) would not cause substantial injury

---

[27] The Plaintiffs' arguments on prior restraint and appropriate time-place-manner restrictions frequently overlap. Initially, the Plaintiffs appear to argue that the lack of findings on secondary effects renders the special use procedures improper content-based restrictions. *See, e.g.*, Pls.' Mem. in Supp. of Mot. for Partial Summ. J. § I(B)(2). At other times, the Plaintiffs simply refer indiscriminately to the entire Zoning Code as unconstitutional for lack of legislative findings on secondary effects. *See, e.g.*, Pls.' Reply in Supp. of Mot. for Partial Summ. J. § II. And sometimes, they focus on the provisions of § 10-4-6(D)(11). *See, e.g.*, Pls.' Mem. in Opp'n. to Defs.' Mot. for Summ. J. § II. Given that § 10-4-6(D)(11) is specifically targeted to adult use establishments and that the Defendants explicitly tailor *their* arguments to § 10-4-6(D)(11), the court has narrowed its holding accordingly.

[28] The Defendants did not move for summary judgment on this theory; they simply responded to the Plaintiffs' arguments.

to the value of other property in the neighborhood in which it is located. Zoning Code § 10-7-4(D). However, in part, the amendment added deadlines by which certain special use permit activities must be completed, which is one of the specific areas that the Plaintiffs allege is constitutionally unsound. Because a municipality may attempt to cure defects in an unconstitutional ordinance, the Plaintiffs' facial challenge must be decided based on the current version of § 10-7-4 of the Zoning Code. *See Petra Presbyterian Church*, 489 F.3d at 849 (holding that a municipality may moot claims of unconstitutionality by adopting curative legislation).

The Defendants correctly point out that the Plaintiffs' argument that all adult businesses must obtain a special use permit blatantly ignores the fact that the Village not only allows adult uses in the O/I–Office and Industrial District where Chicago Joe's proposes to locate, but also allows adult uses in the M–Manufacturing District. The Village will grant a conditional use permit to an adult use business that wishes to locate in the Manufacturing District providing it comports with the preliminary requirements of § 10-4-6(D)(11).[29] *See* Zoning Code § 10-7-3-1. Thus, the facts – and the Plaintiffs' own admissions – simply do not support Plaintiffs' contention that the Village requires *all* adult businesses to seek a special use permit. On its face, the Zoning Code allows an adult business to locate in the Manufacturing District without prior restraint. *See* Pls.' Resp. to Defs.' Rule 56.1 Statement of Material Facts ¶ 6 (not disputing that the Zoning Code permits adult uses in both the O/I and M Districts); Zoning Code § 10-7-3-1(A) (providing that conditional uses "shall be authorized . . . by the zoning administrator" providing the use comports with the standards of § 10-4-6).

---

[29] This requirement applies under the current version of the Zoning Code and does not take into account the court's holding that § 10-4-6(D)(11) is constitutionally invalid.

Plaintiffs cross-reference their argument that there is an absence of actual physical locations in the Village that meet the stringent zoning requirements for adult use, which consequently renders any ability to locate absent a special use permit illusory. They cannot prevail under this argument, as it is currently briefed, for two reasons. First, the actual quantity of property available for adult use is a disputed issue of material fact. *See* Hoffman Aff. ¶¶ 3-4 (disputing, for methodological reasons, the conclusion of the Plaintiffs' expert as to the lack of parcels of land or properties available for adult use in the Village), Ex. 7 to Defs.' Local Rule 56.1(b)(3)(B) Statement of Additional Facts. If a suitable location for Chicago Joe's exists in the M District, then it need only move to avoid prior restraint. *See Casanova Entm't Group, Inc. v. City of New York*, 375 F. Supp. 2d 321, 335-36 (S.D.N.Y. 2005) (noting that the requirement of special use permits for adult entertainment businesses is permissible unless no alternative sites exist where a business can locate without prior restraint); *see also Ill. One News, Inc. v. City of Marshall*, 477 F.3d 461, 463-64 (7th Cir. 2007) (pondering the question of whether a small municipality could, without offending the First Amendment, adopt a regulatory system that "forces the speaker to go elsewhere" as long as opportunities exist in neighboring jurisdictions).

Additionally, unlike the restrictions on adult use in § 10-4-6(D)(11), it is undisputed that the special use and conditional use requirements do *not* apply solely to adult entertainment facilities. *See* Pls.' Resp. to Defs.' Rule 56.1(b)(3)(B) Statement of Additional Facts ¶ 12 (not disputing that, among others, banks, restaurants, animal hospitals, and daycare facilities are listed as "special uses" in the O/I district); *id.* ¶ 15 (not disputing that, among others, banks and restaurants are listed as "conditional uses" in the M district). The Defendants argue that this makes the Village's procedures content neutral. In reply, the Plaintiffs reassert the argument that there is an absence of proof that the Village considered the secondary effects of adult use when

instituting the special use restrictions; however, this argument rests on the faulty premise that "[t]he special use requirements of the Zoning Ordinance apply *only if the expression that will take place is sexual in nature*." *See* Pls.' Reply in Supp. of Summ. J. at 6 (emphasis added). By glossing over a fact established by the record, the Plaintiffs miss their opportunity to address the import of the applicability of the special use permit procedures to businesses other than adult use establishments.

Such an omission is particularly troubling because the prior restraint cases primarily relied upon by the Plaintiffs deal exclusively with zoning codes that singled out adult uses for differential treatment. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (noting that "the scheme involved here is more onerous with respect to sexually oriented businesses than with respect to the vast majority of other businesses"); *Entm't Concepts, Inc., III v. Maciejewski*, 631 F.2d 497, 503 (7th Cir. 1980) (assessing the unconstitutionality of an ordinance that treated differently adult and non-adult movies). However, the Plaintiffs fail to assist the court in figuring out how, or if, the holdings of cases such as *FW/PBS* and *Entertainment Concepts* apply to situations where the restrictions are of a more general applicability.[30] Given the complexity of First Amendment jurisprudence, the court declines to decide the issue without assistance from the Plaintiffs. *See, e.g.*, *Reynolds v. E. Dyer Dev. Co.*, 882 F.2d 1249, 1254 (7th Cir. 1989) (stating that, where a party failed to reply to an argument raised on response, that "[t]he court is not obliged . . . to conduct the legal research necessary to construct an argument from [the] facts"). The Plaintiffs' motion for summary judgment on this ground is denied without prejudice.

---

[30] Such an analysis is crucial because the threshold inquiry of any First Amendment challenge to a law that does "not directly or indirectly impede speech" must be whether the purpose of the ordinance is to suppress speech; if it is not, then the inquiry summarily ends. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 578 (1991) (Scalia, J., concurring in the judgment).

**D.    Vagueness And Overbreadth[31]**

The Plaintiffs (briefly) argue that: (1) although the Zoning Code defines "sexual conduct," it does not define "explicit," rendering the term "explicit sexual conduct" overly vague; (2) no definition of "sexual activity" is offered, rendering the term so broad as to include a love scene in a movie or a piece of art displayed in a museum; and (3) the terms "relating to nudity" and "encouraging or tolerating sexual activity" are vague and overly broad.[32]   The Defendants argue that the Plaintiffs' vagueness challenge fails as a matter of law because it is undisputed that there is no uncertainty about the applicability of the ordinance to them and that the Plaintiffs lack standing to pursue a third-party challenge.

"The vagueness doctrine rests on the due process requirement of notice."  *Entm't Concepts, Inc., III*, 631 F.2d at 501 (citing *Smith v. Goguen*, 415 U.S. 566, 572 (1974)).  The law must give "the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly."  *Id.*  In contrast, "the overbreadth doctrine enables litigants to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."  *Hill v. Colorado*, 530 U.S. 703, 731-32 (2000) (internal citation omitted).

In their arguments, the Defendants correctly analogize the facts of the case at bar to those of *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976).  In *American Mini Theatres*, a theater that presented "material distinguished or characterized by an emphasis on matter

_____

[31] This argument is purely legal; the parties make no citation to the record other than the statutory sections in question, which are undisputed as to content.

[32] The Plaintiffs include this argument as a prong of their First Amendment argument that the Zoning Code is content-based.  It is properly brought as a due process challenge under the Fourteenth Amendment.

depicting . . . 'Specified Sexual Activities' or 'Specified Anatomical Areas'" was classified as an adult establishment. *Id.* at 53. The operators of adult movie theaters challenged the ordinance, in part, because they maintained that they could not determine how much of the described "specified sexual activities" or matter depicting "specified anatomical areas" was permissible before an exhibition was "characterized by an emphasis" on such matter. *Id.* at 58. The Court rejected the vagueness challenge because "even if there may be some uncertainty about the effect of the ordinances on other litigants, they are unquestionably applicable to these respondents." *Id.* at 58-59. The Court also rejected a facial overbreadth challenge for lack of standing. *Id.* at 61. It reasoned that "the only vagueness in the ordinances relates to the amount of sexually explicit activity that may be portrayed before the material can be said to [be] 'characterized by an emphasis' on such matter." *Id.* It reasoned that the answer would be clear in most cases and, where it was not, the ordinances were "'readily subject to a narrowing construction by the state courts.'" *Id.* (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)). The court concluded that the fact that only "borderline" cases might be deterred by the allegedly overbroad ordinances was insufficient cause to justify "the exceptional approach to constitutional adjudication" that allows a plaintiff to mount a First Amendment challenge on behalf of absent parties. *Id.* It therefore affirmed the district court's rejection of the plaintiffs' challenge. *Id.*

Similarly in this case, the Plaintiffs challenge specific definitions of "adult" activity yet admit that they are seeking to "operate an adult use facility in all adult use categories as defined in the Code." *See, e.g.*, Compl. ¶ 11 (describing special use application); *id.* Ex. A ¶ 3 (detailing nature of request in Chicago Joe's Planning, Zoning and Site-Plan Application); Pls.' Statement of Material Facts ¶ 9 (noting that Chicago Joe's submitted an application "seeking approval of a special use for the operation of an adult business and restaurant"). Thus, "any element of

vagueness in these ordinances has not affected" the Plaintiffs. *American Mini Theatres, Inc.*, 427 U.S. at 59. Because the Plaintiffs cannot establish that they lacked notice or due process, their vagueness challenge fails. Additionally, like in *American Mini Theatres*, the terms challenged – when read in their appropriate context and as part of the entire definitional scheme – affect only "borderline" cases where the portrayed activity is sexual in nature but possibly not "explicit," where "sexual conduct" may differ from "sexual activity," or where it is unclear the extent to which activities encourage or tolerate sexual activity. The court, in accordance with the reasoning of *American Mini Theatres*, concludes that this is not an appropriate case in which the Plaintiffs acquire standing to assert the rights of persons not before the court. *See id.* at 60 (noting a facial challenge lies only where "the statue's deterrent effect on legitimate expression is . . . both real and substantial and if the statute is [not] readily subject to a narrowing construction by the state courts."). *Accord Ill. One News, Inc.*, 477 F.3d at 465 (rejecting a third-party standing argument where neither the "helpless stranger" nor the "offers no notice at all" arguments applied). Consequently, the Plaintiffs' motion for summary judgment on due process grounds is denied and the Defendants' motion for summary judgment on these claims is granted.

**E. Declaratory And Injunctive Relief**

The Plaintiffs ask the court to declare the Zoning Code unconstitutional and to enjoin the Defendants from enforcing its Zoning Code in a manner that prohibits them from operating their business, including requiring the issuance of any license or permits necessary to operate Chicago Joe's. *See* Pls.' Mot. for Partial Summ. J. ¶¶ 17-18. The court has declared § 10-4-6(D)(11) unconstitutional; nevertheless, the broad request for injunctive relief is denied without prejudice.

Under the terms of the Zoning Code, a special use permit may only be granted after the Board of Trustees balances the factors listed in § 10-7-4. The court has concluded that, although

the Board of Trustees completed the necessary steps to evaluate the special use application from Chicago Joe's, they did not make any findings. The Plaintiffs' argument that the absence of such findings constitutes a tacit finding that Chicago Joe's meets the requirements is unpersuasive. The Plaintiffs have challenged § 10-7-4 as an unconstitutional prior restraint on their right to free speech; however, the court is unable to rule on the merits of this claim due to inadequate briefing. If the court were to conclude that § 10-7-4 is constitutionally sound, then it is unclear how an injunction could issue absent review of the Board of Trustees' findings on the pending application. On the other hand, if the court were to conclude that § 10-7-4 is unconstitutional, the requirements would be rendered void as to Chicago Joe's application. In light of this, the court sets the matter for a status at which time it will entertain any motion for reconsideration of its denial without prejudice of the Plaintiffs' facial prior restraint challenge, providing that the parties are prepared to submit additional briefing on the issue. Alternatively, the court will hear from the parties regarding scheduling a hearing on the permanent injunction.

## V. CONCLUSION

For the reasons stated above, defendants' motion to strike [38] and plaintiffs' motion to strike [45] are granted in part and denied in part; the defendants' motion for summary judgment [26] is granted in part and denied in part; and the plaintiffs' motion for partial summary judgment [29] is granted in part and denied in part. The parties shall appear for a status hearing.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 11, 2008