# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHICAGO JOE'S TEA ROOM LLC and PERVIS CONWAY, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 07 C 2680<br>)<br>) Judge Joan B. Gottschall |
| THE VILLAGE OF BROADVIEW, HENRY VICENICK, FITZGERALD MULLINS, JAMES JOHNSON, JR., ROBERT PAYNE, MICHAEL TYL, JOHN FERGUSON, SAM D'ANZA, BEVERLY KEEHM, JUDY ABRAHAM, BILLY DAVIS, JUANITA HINTON JOHNSON, MINNIE REESE, and RAY DONATO, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION & ORDER

Plaintiffs Chicago Joe's Tea Room LLC and Pervis Conway brought a civil action under 42 U.S.C. § 1983 (collectively "Chicago Joe's") against Defendants Village of Broadview (the "Village") and the individual members of the Village of Broadview Board of Trustees (Henry Vicenik, Robert Payne, Michael Tyl, John Ferguson, Sam D'Anza, Beverly Keehm, Judy Abraham, Billy Davis, Juanita Hinton Johnson, Minnie Reese, Ray Donato, Fitzgerald Mullins, and James Johnson, Jr. (collectively the "Trustees")) alleging that the Village's Zoning Code violates the First and Fourteenth Amendments to the U.S. Constitution, and that the Trustees ran afoul of those same amendments when they voted to deny Chicago Joe's' request for a special use permit. The Trustees

argue that they enjoy absolute immunity from personal liability and move on that basis for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c).[1]

## I. BACKGROUND

On December 22, 2006, Chicago Joe's submitted an application "to operate an adult use facility in all adult use categories as defined in the Code of Ordinances of the Village of Broadview." Compl. ¶ 11. On February 28, 2007 a public hearing was held before the Village of Broadview Planning and Zoning Commission regarding Plaintiffs' application. *Id.* ¶ 12. Based on that hearing, the Planning and Zoning Commission recommended that the Trustees reject Chicago Joe's' application for a special use permit. *Id.* ¶ 13. The Trustees followed the Planning and Zoning Commission's recommendation and voted to deny Chicago Joe's' application. *Id.*

The Village of Broadview zoning ordinance (the "Zoning Code") specifies that "no special use shall be authorized by the Village Board of Trustees unless the special use":

> (1) is deemed necessary for the public convenience at that location;
> (2) is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; [and] (3) would not cause substantial injury to the value of other property in the neighborhood in which it is located.

Vill. of Broadview Code § 10-7-4(D).

## II. ANALYSIS

On a motion for judgment on the pleadings, the court construes all well-plead facts in favor of the non-moving party and limits its analysis to the content of the pleadings. *Alexander v. City of Chi.*, 994 F.2d 333, 336 (7th Cir. 1993). Whether absolute immunity applies to the Trustees is a question of law for the court to decide. *Biblia Abierta v. Banks*, 129 F.3d 899, 905 (7th Cir. 1997).

---

[1] In this respect, the Trustees were encouraged by the court, which questioned Chicago Joe's entitlement to damages from the individual Trustees.

Relying on an Illinois statute mandating that Illinois courts review special use decisions according to the same deferential standard applicable to legislative acts, the Trustees contend that they are entitled to absolute legislative immunity. *See* 65 Ill. Comp. Stat. 5/11-13-25 (2006). In opposition Chicago Joe's urges that legislative immunity is inapplicable because Illinois law characterizes the Trustees' actions as "quasi-judicial." *See, e.g.*, *Millennium Maint. Mgmt., Inc. v. Cty. of Lake*, 894 N.E.2d 845 (Ill. App. Ct. 2008) (affirming that the special use permitting process is quasi-judicial in character). The court agrees with Chicago Joe's that the Trustees' denial of Chicago Joe's' special use permit was not a legislative act.

Illinois courts have historically interpreted 65 Ill. Comp. Stat. 5/11-13-25 (2006) to provide that the *approval* of a special use permit is subject to deferential review as a legislative decision, but a *denial* requires the more searching appellate scrutiny generally applicable to quasi-judicial (or administrative) decisions. *See Millennium*, 894 N.E.2d at 856. However, the Illinois legislature amended the statute to specify that any special use decision – favorable or unfavorable – is subject to judicial review as if it were a legislative decision. *See* 65 Ill. Comp. Stat. 5/11-13-25 (West 2009). Despite the "legislative" standard of review, though, the legislative history of the amendment to § 5/11-13-25 explicitly states that the amendment is not meant to question the Illinois Supreme Court's conclusion that special use decisions have a quasi-judicial character. *See Millennium*, 894 N.E.2d at 856. Indeed, the *Millennium* court found that the legislature had the legal authority (under Illinois' separation of powers doctrine) to dictate the appropriate standard of review to the courts only because the decision to grant or deny a special use permit is an administrative – not legislative – decision. *See id*. at 860.

Additionally, a review of the Zoning Code confirms that the special use process requires Trustees to apply pre-existing land use standards and policies to a particular parcel of land; a

3

procedure that is quasi-judicial, not classically legislative. *See id*. at 851. Zoning Code § 10-7-4(D) provides that Trustees may not authorize a special use unless the use

> (1) is deemed necessary for the public convenience at that location;
> (2) is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; [and] (3) would not cause substantial injury to the value of other property in the neighborhood in which it is located.

Vill. of Broadview Code § 10-7-4(D). Moreover, the Village and the Trustees argued repeatedly in their summary judgment briefs that the Trustees were constrained by these specific special use requirements, Illinois law, and the numerous other pre-existing standards and policies incorporated in the zoning code. *See, e.g.*, Def.'s Resp. 8-9 (arguing that the Zoning Code provides principled limits to guide special use decisionmaking) (Doc. No. 77). Despite their formal status as legislators then, the Trustees do not act in their legislative capacity when granting or denying a special use permit. *See Biblia*, 129 F.3d at 903 (stating that legislative immunity applies to legislators only when acting in a legislative capacity, defined as: (1) core legislative acts, (2) activities where adjudication of liability would require inquiry into the motives behind legislative acts, and (3) activities essential to facilitating the core legislative process). Legislative immunity is therefore inapplicable to the Trustees here.

This finding does not end the immunity analysis, however, because the Seventh Circuit has conferred absolute *judicial* immunity on public officials who act in a quasi-judicial capacity. *See Reed v. Village of Shorewood*, 704 F.2d 943, 951 (7th Cir. 1938); *Killinger v. Johnson*, 389 F.3d 765, 769-71 (7th Cir. 2004). *Reed* reasoned that judicial immunity applies to a liquor control commissioner's decision to revoke a liquor license because Illinois law grants commissioners the authority to do so while also providing important procedural protections to license holders; when revoking a license a commissioner must provide notice and a hearing to the license holder and

4

articulate a reason for the revocation. Furthermore, the commissioner's decision is subject to appellate administrative review. *Reed*, 704 F.2d at 951. In *Killinger* the Seventh Circuit extended *Reed* to apply absolute judicial immunity to a liquor control commissioner's decision to close a licensee's business *without* a hearing. *See Killinger*, 389 F.3d at 770. Analogizing the liquor commissioner's emergency closure to a federal judge's issuance of an *ex parte* temporary restraining order, *Killinger* held that the commissioner performed "a judicial function when he temporarily closed" a licensed liquor establishment and was therefore immune from suit. *Id*.

Here, the Zoning Code requires that the Village Planning and Zoning Board (a separate administrative body from the Board of Trustees) hold a public hearing on every special use application, review facts related to the special use application, make factual findings and submit a report of those findings along with a recommendation to grant or deny the permit to the Trustees. *See* Zoning Code § 10-7-4(C). In turn, the Trustees must base a grant or denial of a special use permit on the standards set out in § 10-7-4(D) quoted above. Such decisions, moreover, are subject to administrative review by the Planning and Zoning Board and judicial review in the Illinois courts. Accordingly, the special use process, like the liquor permitting procedures discussed in *Reed*, is quasi-judicial.

Whether the Trustees who vote for or against the recommendation of the quasi-judicial Planning and Zoning Board act in a judicial capacity, however, is a close question which the Seventh Circuit has not addressed. The Trustees, after all, may be legally bound to follow the standards in § 10-7-4 of the Zoning Code, but they are not required to give any rationale for a particular vote. Thus the Trustees' approval or denial of a special use permit is not reviewable in the same manner this court's decisions are, or even on the same basis as Illinois liquor comissioners, who must provide some reason for any adverse decision. *See* 65 Ill. Comp. Stat. § 11-13-1.1 (providing that

municipal trustees must adopt or overrule the special use recommendation of a planning and zoning board by vote, but not requiring the articulation of any rationale for that vote). This distinction is crucial because *Reed*'s extension of judicial immunity to a liquor commissioner who revokes a liquor license was premised on the fact that a liquor commissioner's mistakes – like a judge's – are "remediable through the appellate process." *Reed*, 704 F.2d at 952. The absence of a requirement that Trustees give a reason for a special-use vote, coupled with the Illinois legislature's decision to mandate that special use decisions be reviewed by Illinois courts under the deferential standard accorded to legislative acts, renders appellate review of special use votes too insubstantial a procedural safeguard to permit the extension of judicial immunity to the Trustees under *Reed*. *Id*. Absent any authority granting judicial or legislative immunity to municipal actors in the special use context, the court cannot shield the Trustees from liability.

This ruling aligns, though for different reasons, with case law in the Eleventh Circuit, which denies absolute immunity to local legislators (city council members) who make "a land use decision . . . which is an application of policy to a specific party." *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1392 (11th Cir. 1993) (citing *Crymes v. DeKalb Cty, Ga.*, 923 F.2d 1482, 1485 -86 (11th Cir. 1991) (internal quotation omitted). And the Seventh Circuit's grant of absolute legislative immunity to legislators who pass *amendments* to a zoning ordinance that burdened a single property does not conflict with the Eleventh Circuit's holding because here the Trustees did not pass "legislation" rezoning Chicago Joe's' property, but relied on pre-existing policy to deny Chicago Joe's a permit. *See Biblia Abierta v. Banks*, 129 F.3d 899, 904 (7th Cir. 1997) (rejecting district court's finding that "[r]ules which apply only to certain individuals appear more like executive or administrative decisions than legislative ones" and holding that "the availability of absolute immunity does not depend upon the number of people that a law happens to affect at the time of its passage." ).

6

## III. CONCLUSION

For the reasons set forth above, Defendants' motion for judgment on the pleadings is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 12, 2009