IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHICAGO JOE'S TEA ROOM, LLC       )
PERVIS CONWAY,       )
      )
    Plaintiffs,       )
      )     07-cv-2680
    v.       )
      )     Hon. John Z. Lee
THE VILLAGE OF BROADVIEW,       )
ILLINOIS, HENRY VICENIK,       )
FITZGERALD MULLINS, JAMES       )
JOHNSON, JR., ROBERT PAYNE,       )
MICHAEL TYL, JOHN FERGUSON,       )
SAM D'ANZA, BEVERLY KEEHM,       )
JUDY ABRAHAM, BILLY DAVIS,       )
JUANITA HINTON JOHNSON,       )
MINNE REESE & RAY DONATO,       )
      )
    Defendants.       )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Chicago Joe's Tea Room, LLC, and Pervis Conway claim that the Village of Broadview and the individual defendants violated the First Amendment's guarantee of freedom of expression by rejecting Chicago Joe's application for a permit to open a restaurant and nightclub featuring semi-nude dancing on a particular parcel of land in Broadview. Plaintiffs seek declaratory and injunctive relief as well as damages. Broadview and all but one of the individual defendants have filed motions for summary judgment, and Plaintiffs have filed a cross motion for partial summary judgment. In addition, Broadview has moved for reconsideration of an earlier order in this

1

case, and the individual defendants have moved for reconsideration of another. Defendants have also moved to strike an expert report.

For the reasons given below, the Court grants Broadview's motion for reconsideration, grants its motion for summary judgment in part, grants the individual defendants' motion for summary judgment, and denies Plaintiffs' motion for partial summary judgment. The other motions are stricken as moot. What remains is to hold a trial on Plaintiffs' damages for the constitutional violation identified in the September 11, 2008, order granting partial summary judgment in their favor.

## I. Factual & Procedural History

This case has a nearly decade-long history that includes multiple previous motions for summary judgment. The Court presumes familiarity with the earlier orders issued and will discuss them only insofar as they are relevant to the motions currently under consideration.

The basic facts of this case are that Chicago Joe's Tea Room, LLC, wanted to open a restaurant and nightclub that would feature semi-nude dancing and serve alcohol in the Village of Broadview, a municipality in Cook County, Illinois, west of Chicago off Interstate 290. Broadview's SOF ¶¶ 46–48 [ECF 589]; Pls.' Resp. Br./Mem Supp. at 1 [ECF 608]. Chicago Joe's applied for a "special use" permit to allow it to open the proposed business on a plot of land in an area of Broadview zoned "industrial." Pls.' SOF ¶¶ 19, 25, 33 [ECF 602]. A local zoning ordinance, § 10-7-4(D) (the "special-use

ordinance"), set criteria for the issuance of such permits. Broadview's SOF § 73.

Broadview's Zoning Board of Appeals held a public hearing about Chicago Joe's permit application on February 28, 2007. Pls.' SOF §§ 37–38. During the hearing, members of the Zoning Board questioned representatives from Chicago Joe's on various issues relating to the application. *See generally* Broadview's Ex. 29, Zoning Board Hearing Trans. One of those issues was that the application sought permission to serve alcohol. *Id.* at 28–29, 31, 36–37.

Near the close of the hearing, a member of the Zoning Board moved to recommended that the Village Board deny Chicago Joe's application because an ordinance regulating adult businesses, § 10-4-6(D)(11) (the "adult-business ordinance"), prohibited alcohol from being served or consumed at such businesses. *Id.* at 102–03. The motion was seconded and carried unanimously. *Id.* The following week, on March 5, 2007, the Village Board voted to adopt the Zoning Board's recommendation. Pls.' SOF §§ 39–40; Pls.' Ex. Q, Minutes of the Village Board, at 3.

After denying Chicago Joe's a permit, Broadview amended the adult-business ordinance to prohibit adult businesses within 1,000 feet of any residential area. Broadview's SOF § 67. This new restriction, if enforceable, would have prevented Chicago Joe's from opening at the proposed site.

On May 11, 2007, Chicago Joe's and Pervis Conway, the owner of the proposed site for the business, filed this lawsuit against Broadview, members of the Zoning Board, and members of the Village Board. *See* Compl. [ECF 1.] In Count I, Plaintiffs seek a declaratory judgment that the ordinance prohibiting alcohol at adult establishments and the ordinance governing the issuance of special-use permits violate the First Amendment's free speech clause on their face and as applied. In Count II, Plaintiffs seek to enjoin Defendants from enforcing the ordinances in question and denying Chicago Joe's the sought-after permit. In Count III, Plaintiffs seek damages for the purportedly unconstitutional denial of the permit application.

Broadview moved for summary judgment, arguing that the amendment to the adult-business ordinance creating the 1,000-foot ban mooted Plaintiffs' claims. Plaintiffs filed a cross-motion for partial summary judgment. Judge Gottschall, to whom this case was previously assigned, granted in part and denied in part both motions. *See Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, No. 07 C 2680, 2008 WL 4287002, at *24 (N.D. Ill. Sept. 11, 2008) (the "September 2008 opinion").

Judge Gottschall first concluded that the new 1,000-foot restriction did not moot Plaintiffs' claims. *Id.* at **3–6. Relying on *754 Orange Ave., Inc. v. City of W. Haven, Conn.*, 761 F.2d 105 (2d Cir. 1985)—a case involving a similar zoning ordinance—she reasoned that a municipality cannot moot a First Amendment claim by amending an ordinance in a way that, instead of

addressing the purported constitutional infirmity, creates new restrictions intended to target the plaintiff. *Id.* In *754 Orange*, the defendant municipality had attempted to bar an adult bookstore that would have otherwise been permitted by amending an ordinance to ban such businesses from operating within 1,500 feet of a playground. *754 Orange Ave.*, 761 F.2d at 109–10. The Second Circuit concluded that applying the amended ordinance would be inequitable because the amendment's sole purpose was to target the plaintiff. *Id.* at 113. Based upon the reference in *754 Orange* to "vested rights," *see id.*, Judge Gottschall went on to conclude that Chicago Joe's had acquired a "vested right" under Illinois law to proceed under the adult-business ordinance as it existed at the time that the permit application was filed. *Chi. Joe's Tea Room*, No. 07 C 2680, 2008 WL 4287002, at *4. She explicitly confined this holding on vested rights to the adult-business ordinance, explaining that the holding did not apply to the special-use ordinance. *Id.* at *6 n.10.

Also in the September 2008 opinion, Judge Gottschall considered Plaintiffs' claim that the special-use ordinance was unconstitutional both as applied and on its face. Rejecting the first argument, Judge Gottschall explained that Broadview, by denying Chicago Joe's a permit solely on the

basis of the alcohol ban in the adult-business ordinance, had not applied the special-use ordinance to Chicago Joe's at all.[1] *Id.* at *13.

As for the facial challenge to the ordinance, Judge Gottschall first explained that Broadview had amended the special-use ordinance since denying the permit and that only the current version could be considered in deciding a facial challenge. *Id.* at *20. She then explained that Plaintiffs' submissions were insufficient to decide whether the ordinance was facially invalid. *Id.* at *21. [2]

Judge Gottschall, however, did grant Plaintiffs' cross-motion for summary judgment "to the extent it seeks a declaration that § 10-4-6(D)(11) [the alcohol ban] is unconstitutional." *See Chi. Joe's Tea Room*, No. 07 C 2680, 2008 WL 4287002, at *19. She explained that the ban was

---

[1]     Plaintiffs apparently believe that Judge Gottschall deferred ruling on this issue. *See* Pls.' Resp. Br./Mem. Supp. at 3, 37–39. The Court, however, understands the ruling to be a rejection of the as-applied challenge on the merits.

[2]     In a later opinion, Judge Gottschall concluded that summary judgment could not be granted as to the facial challenge due to the presence of disputed facts:

> Here the court does not yet know how comprehensively the language of § 10–4–7 applies to adult use establishments in the Village because the parties dispute how much land is available for such purposes without a special use permit. … Accordingly, because the standard of review turns on factual matters in dispute or entirely outside the record, the court declines to render judgment as a matter of law as to the facial unconstitutionality of § 10–7–4.

*Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, No. 07 C 2680, 2009 WL 3151856, at *2 (N.D. Ill. Sept. 25, 2009).

unconstitutional because there was no evidence indicating that the ordinance was primarily motivated by concerns about the "secondary effects" of mixing alcohol with nude dancing. *Id.* Judge Gottschall acknowledged that, in determining the primary concern of a law, "the court may consider a range of materials including 'the text of the ordinance, its preamble or express legislative findings associated with it, and studies and information of which legislators were clearly aware.'" *Id.* at *15 (citing *Joelner v. Vill. of Washington Park, Ill.*, 508 F.3d 427, 431 (7th Cir. 2007)). Broadview, however, had made no reference to secondary effects in the ordinance nor put forward any evidence that village officials were concerned with the secondary effects of mixing nude dancing with alcohol consumption. *Id.* at ** 18–19.

Broadview responded to the September 2008 ruling by again amending its ordinances. The village retained the ban on alcohol but added legislative findings as to the secondary effects of mixing alcohol and nude dancing to justify it. Broadview's SOF ¶ 61. The village also eliminated the ban on adult businesses within 1,000 feet of a residential area, the provision that Judge Gottschall opined was targeted at Chicago Joe's. *Id.* ¶ 62.

Meanwhile, Illinois law also changed. On August 16, 2007, about three months after this lawsuit was commenced, the Illinois legislature amended 65 Ill. Comp. Stat. § 5/11-5-1.5, a law governing the placement of "adult entertainment facilities." The amendment was adopted roughly eight months

after Chicago Joe's had submitted its permit application and five months after Broadview had rejected it.

Under the amended version of § 5/11-5-1.5:

> it is … prohibited to locate, construct, or operate a new adult entertainment facility within one mile of the property boundaries of any school, day care center, cemetery, public park, forest preserve, public housing, or place of religious worship located in that area of Cook County outside of the City of Chicago.

*Id.* This law effectively bans any new strip club from opening anywhere in Broadview because the entirety of Broadview falls within its scope in one fashion or another.

Defendants did not raise the enactment of § 5/11-5-1.5 during the first round of summary judgment motions, but in March 2010, they filed a second motion for summary judgment, arguing that Plaintiffs lacked standing to bring their claims. The permit application, Defendants explained, was deficient in many ways and would not have been approved under any circumstances. Furthermore, they argued, § 5/11-5-1.5 mooted Plaintiffs' claims for injunctive relief.

Judge Gottschall denied this motion. *Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, 790 F. Supp. 2d 693 (N.D. Ill. 2011). She first disagreed that Plaintiffs lacked standing, explaining that Chicago Joe's might have been able to remedy the identified deficiencies in its application. *Id.* at 695–96. She then concluded, in a single sentence, that § 5/11-5-1.5 was inapplicable

because, "as the court explained in its September 2008 opinion, by making significant investment in the property in reliance on the previous zoning law, Chicago Joe's acquired a vested right in the continuation of the law as it existed at the time of its application in December 2006." *Id.* at 696.[3]

In the years since, the parties have litigated numerous additional motions and completed discovery. Broadview and the individual defendants (with one exception) have now moved for summary judgment, and Plaintiffs have filed a cross-motion for partial summary judgment.

## II. Analysis

### A. Counts I and II – Declaratory and Injunctive Relief

Defendants argue once more that changes to Broadview's ordinances and the August 2007 amendment to 65 Ill. Comp. Stat. § 5/11-5-1.5 render Plaintiffs' claims for equitable relief moot. *See* Broadview's Mem. Supp. at 11–18 [ECF 585.]. In furtherance of this argument, they ask the Court to reconsider Judge Gottschall's determination that Chicago Joe's had acquired a "vested right" to proceed under the law that was in place at the time that it first submitted the permit application. *Id.* at 9–11; Broadview's Mot. Reconsider [ECF 592].

Under the law of the case doctrine, where a case has been transferred from one judge to another, "in general, the successor judge is discouraged

---

[3]      Judge Gottschall did not explain how Plaintiffs came to have a vested right vis-à-vis the enactment of § 5/11-5-1.5, when the September 2008 ruling was confined to Broadview's amendment of the adult-business ordinance and the use of the amendment to target Chicago Joe's.

from reconsidering the decision of the transferor judge." *Gilbert v. Illinois State Bd. of Ed.*, 591 F.3d 896, 902 (7th Cir. 2010), citing *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). But "judges are significantly less constrained by the law of the case doctrine with respect to jurisdictional questions." *Gilbert*, 591 F.3d at 903 (internal quotations and citations omitted). This also is true where the successor judge is not presented with "precisely the same question in precisely the same way," *Brengettcy*, 423 F.3d at 680, such as when "a renewed motion for summary judgment is supported by additional evidentiary evidence," *Best v. Shell Oil Co.*, 107 F.3d 544, 547 (7 th Cir. 1997), or there has been a change in the law "that makes clear that the earlier ruling was erroneous," *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006).

In this case, the Court concludes for a number of reasons that it is appropriate to revisit the question of whether Chicago Joe's had a vested right at the time that its permit was first filed. First, a substantial amount of discovery has taken place since the prior rulings, and the Court now has a more complete record to evaluate this issue. Second, the village has attempted to remedy the constitutional deficiency that Judge Gottschall identified in the ordinance banning alcohol at adult businesses, and the 1,000-foot ban that was the linchpin of her September 2008 order has been repealed. Third, whether Chicago Joe's can claim a vested right is critical to the issue of jurisdiction, for without it (at least, in Broadview's eyes), Chicago

Joe's claims would be moot. *See Jackson v. Clements*, 796 F.3d 841, 843 (7th Cir. 2015) ("In order for federal courts to retain jurisdiction over a case, there must be an actual, ongoing controversy, and the absence of one renders a case moot and deprives the court of subject matter jurisdiction."). Finally, the Court has a "strong and reasonable" conviction that, if Judge Gottschall had had the benefit of the record now before this Court, she would have ruled differently on the issue, and to stand by the prior ruling at this point would be error. *See Gilbert*, 591 F.3d at 902.

In Illinois, the general rule is "that there is no vested right to the continuation of a statute or ordinance." *1350 Lake Shore Associates v. Mazur-Berg*, 791 N.E.2d 60, 73 (Ill. App. Ct. 2003). However, there is an exception to this rule when "there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance." *Id.* In such a case, courts have found that such a "party has a vested property right and he may complete the construction and use of the premises for the purposes originally authorized, irrespective of subsequent zoning or a change in zoning classification." *Id.* Although the doctrine is normally applied in cases concerning building permits, the doctrine could presumably apply to other types of permits, like the special use permit at issue here.

There is some question as to whether the Illinois vested interest doctrine applies to federal claims such as those at issue here,[4] but assuming that it does, the Court finds that Chicago Joe's has failed to meet the doctrine's "good faith" requirement. To do so, Chicago Joe's must have been "attempting to comply with an ordinance as written." *City of Elgin v. All Nations Worship Ctr.*, 860 N.E.2d 853, 857 (Ill. App. Ct. 2006); *see Petra*, 489 F.3d at 848 (vested rights doctrine only applies "if the use was authorized by the zoning ordinance as it stood before the change"). Chicago Joe's, however, was seeking a permit to open an adult business that would serve alcohol, in the face of Broadview's adult-business ordinance that explicitly prohibited it. Although "a party may have a right to assume that an ordinance is valid and proceed accordingly, it has no corresponding right to do the contrary: to assume that the ordinance is invalid and proceed in violation of it." *City of Elgin*, 860 N.E.2d at 858.[5] This failing is all the more evident in light of the

---

[4]    *See Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846 (7th Cir. 2007) (noting that the vested interest doctrine did not apply because "no claim under state law is before us.").

[5]    The transcript of the Zoning Board hearing in February 2007 confirms that Chicago Joe's knew it needed to circumvent the alcohol ban in order to obtain its permit. Early in the hearing, the Board's Chairman pointed out that the "petitioner did specifically request in his application the sale of alcohol, which is specifically prohibited in the adult use section." Broadview's Ex. 29, Zoning Board Hearing Trans., at 28. When asked to respond to this concern later in the hearing, a lawyer representing Chicago Joe's stated:

> That's the reason for the special use permit to try to overcome that obstacle. Being security is already going to be in place, lighting in place, there's really no reason. I mean, usually the prohibition of alcohol is to reduce

village's subsequent efforts to remedy the ordinance's constitutional defect and the Illinois legislature's amendment of 65 Ill. Comp. Stat. § 5/11-5-1.5, which will be discussed below.[6]

Because the vested-rights doctrine is inapplicable here, the case is governed by general mootness principles. And it is well established that a municipality can render a First Amendment claim for injunctive relief moot by changing the challenged law in a way that removes the purported constitutional problem. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 324 (7th Cir. 2015) (holding that a zoning code amendment removing a particular provision that regulated "sexually oriented businesses" mooted a First Amendment challenge to the provision). Thus, the proper question is whether Broadview has successfully cured the constitutional failings in the adult

---

crime and to keep those things from happening. But in this case, I think we can overcome that.

*Id.* at 36–37.

[6] The record before Judge Gottschall at the time of the September 2008 ruling is worth noting. Once Chicago Joe's challenged the constitutionality of the ordinance banning alcohol sales at adult establishments, the village amended the ordinance to prohibit such businesses within 1,000 feet of any residential area, effectively making Chicago Joe's project impossible. Judge Gottschall rightfully considered this a blatant attempt to target Chicago Joe's and, relying upon the reasoning in *754 Orange Ave*, found that Chicago Joe's had a vested interest to proceed despite the 1,000-foot ban. *See Chi. Joe's Tea Room*, No. 07 C 2680, 2008 WL 4287002, at **2–6. At the same time, the judge found the alcohol ban unconstitutional. *Id.* at *19. In response, the village attempted to remedy the constitutional deficiency identified by Judge Gottschall by adding legislative findings to support the alcohol ban in adult establishments. It also deleted the 1,000 feet ban that had triggered Judge Gottschall's concern and gave rise to company's vested interest. Neither issue, however, was raised by the parties at that time, and Judge Gottschall did not have occasion to address them before the case was transferred.

business ordinance noted by Judge Gottschall. The Court concludes that it has.

A lengthy preamble to Broadview's amended adult business ordinance explains that the alcohol ban is aimed at secondary effects rather than the suppression of expression. See Def.'s Ex. 12, Adult Business Ordinance, at 1–4. When an ordinance is aimed at combating secondary effects associated with speech, courts apply intermediate scrutiny to assess the ordinance's constitutionality. *R.V.S., L.L.C. v. City of Rockford*, 361 F.3d 402, 408 (7th Cir. 2004).

Of course, "simply stating that an ordinance is designed to combat secondary effects is insufficient to survive intermediate scrutiny. The governmental interest of regulating secondary effects may only be upheld as substantial if a connection can be made between the negative effects and the regulated speech." *Id.* Broadview has sought to make the required connection by citing in the preamble studies showing negative secondary effects of combining alcohol and nude dancing, which include increased crime, and by citing previous cases upholding similar alcohol bans. *See* Def.'s Ex. 12, Adult Business Ordinance, at 3.

Plaintiffs argue that Broadview nevertheless has failed to justify its alcohol ban because the studies it cites were commissioned by other municipalities. Pls.' Resp. Br./Mem. Supp. at 14–15. But the Supreme Court and the Seventh Circuit have expressly rejected this very argument. *See City*

*of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51–52 (1986) ("The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses."); *Ben's Bar, Inc. v. Vill. of Somerset*, 316 F.3d 702, 725 (7th Cir. 2003) (rejecting the proposition that a municipality must "conduct its own studies, at the local level, to determine whether adverse secondary effects result when liquor is served on the premises of adult entertainment establishments").

As Judge Gottschall noted, the "burden on a municipality in adult use zoning cases is slight: recitation of the precise purpose of the ordinance and a few legislative findings on the link between crime and adult entertainment establishments, a finding that the type of restriction imposed will ameliorate the secondary effects, and maybe a citation or two to applicable case law." Chicago Joe's Tea Room, No. 07 C 2680, 2008 WL 4287002, at *19; *see also City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 451 (2002) ("As a general matter, courts should not be in the business of second-guessing fact-bound empirical assessments of city planners."). The amended adult business ordinance satisfies this burden.

Furthermore, Broadview contends that Plaintiffs' challenge to the alcohol ban is mooted by another change in law—a change that also moots Plaintiffs' challenge to the special-use ordinance. In August 2007, the Illinois

legislature amended 65 Ill. Comp. Stat. § 5/11-5-1.5, to prohibit the location, construction, or operation of a new adult entertainment facility within a mile of any school, day care center, cemetery, public park, forest preserve, public housing or place of religious worship located in Cook County outside of Chicago. This statute effectively bans any new adult entertainment business from opening anywhere in Broadview. If applied here, Plaintiffs' claims for equitable relief are moot because the Court would not be able to grant any meaningful relief by declaring Broadview's special-use or adult-use ordinances unconstitutional or by enjoining their application. *See Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649, 652 (7th Cir. 2012) (holding that claim for declaratory relief challenging a Wisconsin's concealed-carry permitting regime was moot because plaintiff could no longer lawfully possess a firearm under federal law); *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009) ("[D]eclaratory judgment is appropriate only when the court's ruling would have an impact on the parties."); *Dorel Juvenile Grp., Inc. v. DiMartinis*, 495 F.3d 500, 503 (7th Cir. 2007) (explaining that a claim for injunctive relief is moot when court cannot grant "any meaningful relief").

In response, Plaintiffs first point out that Judge Gottschall previously ruled in March 2011 that § 5/11-5-1.5 did not moot their claims. *Chicago Joe's*, 790 F. Supp.2d at 696. But this was contingent upon Chicago Joe's vested interest in the continuation of the law as it existed at the time of its

application. For the reasons stated above, the Court now concludes that the vested interest doctrine does not apply.

In addition, Plaintiffs argue that the Illinois statute does not preclude their claims for equitable relief because a First Amendment claim cannot be mooted by a change in law that fails to cure the asserted constitutional problems. Pls.' Resp. Br./Mem. Supp. at 11–14; *see Smith v. Exec. Dir. of Ind. War Memorials Comm'n*, 742 F.3d 282, 287 (7th Cir. 2014) (explaining that a case is not mooted by a policy change "if the policy change does not actually correct the asserted constitutional problem"). But this principle does not save Plaintiffs' claims because the amendment to § 5/11-5-1.5 is not a change to the purportedly unconstitutional ordinances being challenged in this case. Of course, if the Illinois statute is itself unconstitutional, it should be struck down, but Plaintiffs have not challenged the statute's constitutionality in their motion.[7]

Plaintiffs also suggest that § 5/11-5-1.5 cannot be applied "retroactively" and so cannot be applied to Chicago Joe's. But really there is no question of retroactivity here. Chicago Joe's applied for a permit, and Broadview rejected the application. The Illinois legislature then amended the statute, and under the amendment, "it is prohibited to locate, construct, or

---

[7]     Plaintiffs did offer this argument in response to a previous summary judgment motion, *see* Pls.' Resp. Br. (July 9, 2010) [ECF 207], but they do not raise it here, nor did they seek to amend their complaint to include a challenge to this law. In the current briefing, they suggest that Broadview's local analog to the § 5/11-5-1.5 is unconstitutional, *see* Pls.' Resp. Br./Mem. Supp. at 14 [ECF 608], but this quite different from challenging the validity of the statute itself.

operate a new adult entertainment facility" in the specified area. Chicago Joe's proposed establishment did not open prior to the amendment, and the new provision makes no exception for businesses that might have opened but for a wrongful permit denial.

That said, if the village had granted Chicago Joe's a permit back in February 2007 (rather than denying it based on an unconstitutional ordinance) *and* Chicago Joe's had been able to construct and operate its establishment prior to the amendment in August 2007 of § 5/11-5-1.5, then Chicago Joe's would not have come within the scope of the amendment at all. Considering this scenario, it would seem somewhat inequitable to find now that the revision to § 5/11-5-1.5 prohibits Chicago Joe's from ever opening its business. But the Court cannot simply disregard § 5/11-5-1.5. "A federal court possesses broad powers to remedy constitutional violations, but these powers are not boundless." *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). And the Court finds no authority (nor have Plaintiffs cited any) for setting aside an unchallenged state statute in order to remedy a constitutional problem with a local ordinance (which, as noted, has since been remedied).

Because § 5/11-5-1.5 prohibits Chicago Joe's from opening its adult business at the proposed site, any declaratory or injunctive relief relating to Broadview's ordinances would be without effect. Plaintiffs' equitable claims in this case are thus moot and must be dismissed.

**B. Count III – Damages Claim**

The mootness of Plaintiffs' equitable claims does not extend to their claim for damages. And Plaintiffs are potentially entitled to damages for the constitutional violation Judge Gottschall identified in her September 2008 opinion. *See Chi. Joe's*, No. 07 C 2680, 2008 WL 4287002, at *19 (holding unconstitutional the alcohol ban in Broadview's adult-business ordinance, which was the sole reason given for denying Chicago Joe's a permit).

Both Broadview and "Certain Individual Defendants"—which is all but one of them[8]—have moved for summary judgment on Count III. Broadview's briefs, however, do not actually include any arguments about Plaintiffs' damages claim. Accordingly, the Court denies Broadview's motion as to that claim.

In addition, the individual defendants argue that they are entitled to qualified immunity from Plaintiffs' claim for damages. *See* Certain Individual Defendants' Am. Mem. Supp. at 2–3 [ECF 594]. Government officials are entitled to qualified immunity unless their conduct violated "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The individual defendants argue that they are entitled to qualified immunity in this case because it was not clearly established when they rejected the Chicago Joe's permit

---

[8] Former Village President Henry Vicenik has not moved for summary judgment.

application that the alcohol ban in the adult-business ordinance was unconstitutional. *Id.*

Plaintiffs respond that whether the unconstitutionality of the alcohol ban was clearly established is irrelevant, reasoning that the alcohol ban was not the real reason for the permit denial. Pls.' Resp. Br./Mem. Supp. at 40–41. Instead, they contend that the evidence, "when viewed most favorably to Plaintiffs, strongly indicates that the real reason the Board denied the Application was that they did not want a strip club in the Village and that the stated basis – the alcohol prohibition – was merely pretextual." *Id.* at 41. In support, Plaintiffs cite the testimony of a member of the Village Board who admitted to voting against Chicago Joe's because she finds strip clubs "tasteless" and a statement from the former mayor that he was "against the strip club." *Id.* at 40–41; Pls.' SOF ¶¶ 48–50; (Minnie Reese Dep.) at 45–47; Pls.' Ex. FF, Westchester Minutes. Plaintiffs go on to assert that "denying the Application because one finds strip clubs to be tasteless is clearly unconstitutional." Pls.' Resp. Br./Mem. Supp. at 41. They also argue that the "second step in the qualified immunity analysis is an easy one here. There is no question that at the time of the Application, nude dancing was a constitutionally protected form of expression." *Id.*

In the Seventh Circuit, "once a defendant claims qualified immunity, the burden is on the plaintiff to show that the right claimed to have been violated was clearly established." *Marshall v. Allen*, 984 F.2d 787, 797 (7th

Cir. 1993). A "case directly on point is not required," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012). And courts must not "define clearly established law at a high level of generality." *Williams v. Ind. State Police Dep't*, 797 F.3d 468, 475 (7th Cir. 2015).

Plaintiffs have not bothered to cite any legal authority whatsoever in support of their argument that Defendants are not entitled to qualified immunity. Nor have they attempted to define a clearly established right with any specificity. The undeniable fact that nude dancing is a protected form of expression is not enough to clearly establish that someone would be violating a First Amendment right by officially relying on an applicable ordinance to deny a permit while privately desiring to suppress expression. To be clear, such right may have been clearly established at the time, but Plaintiffs have failed to meet their burden on that question. *See, e.g.*, *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015) (concluding that defendant was entitled to qualified immunity because plaintiff did not identify "any case factually similar to this one that would have provided a reasonable officer with notice that he had a constitutional duty"); *Findlay v. Lendermon*, 722 F.3d 895, 897 (7th Cir. 2013) ("Because Findlay has not carried his burden of showing the violation of a clearly established right, Lendermon is entitled to qualified immunity."). The Court thus concludes that the individual

defendants who have moved for summary judgment are entitled to qualified immunity.

### III. Conclusion

For the reasons given, Broadview's motion for reconsideration [ECF 591] is granted, and its motion for summary judgment [ECF 583] is granted as to Counts I and II but denied as to Count III. Certain Individual Defendants' motion for summary judgment [ECF 594] is granted. Plaintiffs' cross-motion for partial summary judgment [ECF 604] is denied. As a result of these rulings, a motion by Certain Individual Defendants for reconsideration of a decision denying them absolute legislative and quasi-judicial immunity [ECF 595] is now moot, as is a motion from Broadview to strike an expert report [ECF 626]. The moot motions are stricken.

A hearing will be held on 4/28/16 at 9:15 a.m. to set deadlines for the final pretrial order and motions in limine and to schedule the final pretrial conference and trial. As far as Broadview is concerned, the trial will be on damages only as discussed herein. For Defendant Vicenik—the one individual defendant who did not move for summary judgment—the trial will be on liability and damages under Count III.


**SO ORDERED**                    **ENTER:** 3/31/16

_____

**JOHN Z. LEE**
**United States District Judge**

22