IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO JOE'S TEA ROOM, LLC and PERVIS CONWAY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 07 C 2680 |
| VILLAGE OF BROADVIEW, HENRY VICENIK, FITZGERALD MULLINS, JAMES JOHNSON, JR., ROBERT PAYNE, MICHAEL TYL, JOHN FERGUSON, SAM D'ANZA, BEVERLY KEEHM, JUDY ABRAHAM, BILLY DAVIS, JUANITA HINTON JOHNSON, MINNIE REESE, and RAY DONATO, | ) ) ) ) ) ) ) ) ) ) | Judge John Z. Lee |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Pervis Conway and Chicago Joe's Tea Room, LLC ("Chicago Joe's") were parties to a real-estate deal involving a plot of land in the Village of Broadview ("Broadview") where Chicago Joe's intended to operate a strip club. The deal fell through when Broadview denied Plaintiffs the necessary zoning permits. Plaintiffs brought suit in 2007 against Broadview and a number of its employees and officials, alleging that the permit denial violated their rights to free expression under the First Amendment. Now, over twelve years later, Broadview moves to dismiss Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(1), asserting that Plaintiffs lack standing to sue. For the reasons stated herein, the Court denies Broadview's motion [765].

## Background

This case has a more-than-decade-long history that includes multiple motions for summary judgment and reconsideration. The Court presumes familiarity with the earlier orders issued and will discuss them only insofar as they are relevant to the motion currently under consideration.

The events underlying this case began in November 2006, when Conway contracted to sell a plot of land located in Broadview to David Donahue (who is not a party to this case) for $1.25 million, including $30,000 up-front earnest money. *See* Def.'s Mem. Supp. Mot. Dismiss, Ex. 5, Sales Contract at 1, ECF No. 762-6.[1] At some point after entering into the contract, Donahue assigned his rights in it to Chicago Joe's. *See id.*, Ex. 7, Correspondence from Donahue to Conway, ECF No. 762-8; Pls.' Resp. Opp. Mot. Dismiss, Ex. 8, Correspondence from Donahue to Joseph Inovskis, ECF No. 788-5.[2] Chicago Joe's planned to operate a strip club on the property. *See* 2016 Opinion at *1.

Two ordinances in Broadview's Zoning Code were relevant to Chicago Joe's plans—Section 10-7-4(D) (the "special-use ordinance") and Section 10-4-6(D)(11) (the "adult-business ordinance"). *See id.* The subject property was zoned "Office / Industrial," meaning that businesses classified as "special uses"—such as restaurants, banks, animal hospitals, dry-cleaning establishments, daycare facilities, and adult-use facilities—were required to obtain a permit under the special-use ordinance. *See* Defs.' LR 56.1(a) Stmt. Facts, Ex. 3.A, Broadview Zoning Code

---

[1] Broadview is the only remaining Defendant in this case; the Court has entered summary judgment in favor of all the individual Defendants. *See Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, No. 07 C 2680, 2016 WL 1270398, at *9 (N.D. Ill. Mar. 31, 2016) ("2016 Opinion") (entering summary judgment in favor of Mullins, Johnson, Payne, Tyl, Ferguson, D'Anza, Keehm, Abraham, Davis, Hinton Johnson, Reese, and Donato); Jan. 28, 2019 Order at 1, ECF No. 761 (entering summary judgment in favor of Vicenik).

[2] The parties dispute whether Donahue assigned his rights to Chicago Joe's on January 16, 2007, or December 12, 2006. This dispute is immaterial to the Court's analysis.

§ 10-4-4, ECF No. 25-5.  This process involved attending a public hearing for the Village Board of Trustees to determine if the special use was (1) necessary for the public convenience at the location; (2) designed, located, and proposed to protect the public health, safety, and welfare; and (3) not likely to cause substantial injury to property values.  *See* Def.'s Mem. Supp. Mot. Dismiss, Ex. 2, § 10-7-4(D), ECF No. 762-3.  Additionally, the adult-use ordinance prohibited "adult businesses" from selling, distributing, or permitting "beer or alcoholic beverages on the premises." Compl., Ex. C, § 10-4-6(D)(11), ECF No. 1.

On December 22, 2006, Chicago Joe's (listed as "contract buyer") applied for a special-use permit, seeking permission to operate an "adult use facility" with "the ability to sell alcohol." *See id.*, Ex. A, Zoning Appl.  On February 28, 2007, the Broadview Planning Commission and Zoning Board held a hearing to determine whether to grant Chicago Joe's application.  *See* Def.'s Mem. Supp. Mot. Dismiss, Ex. 8, Planning Comm'n Hr'g Tr. at 1, ECF No. 762-9.  The Board voted to recommend denying the application based on the fact that Chicago Joe's proposed use involved the sale of alcohol, which was prohibited under the adult-business ordinance.  *Id.* at 102:18–103:18.  On March 5, 2007, the Broadview Board of Trustees voted to accept the recommendation, and the permit was denied.  *See id.*, Ex. 9, Bd. of Trs. Meeting Record at 3, ECF No. 762-10.

The contract between Conway and Chicago Joe's was contingent on Chicago Joe's satisfying itself that "zoning and other governmental approvals" were acceptable for its intended project and that it could obtain financing.  *See* Sales Contract ¶ 2, *id.*, Rider ¶ R-4.  Although Chicago Joe's ability to invoke these contingencies had expired by the time of Broadview's decision, Conway and Chicago Joe's continued to negotiate the sale and agreed to extend the closing date to June 30, 2007.  Def.'s Mem. Supp. Mot. Dismiss, Ex. 11, Maksimovich

Correspondence, ECF No. 762-12. Additionally, Chicago Joe's agreed to pay an additional $100,000 in earnest money and to increase the purchase price to $1.35 million. *Id.*

If the parties thought they might still be able to get zoning approval, two changes to local and state law eliminated this possibility. First, on April 16, 2007, Broadview amended its adult-business ordinance to prohibit such businesses from operating within 1,000 feet of any residential property.[3] *See* Sept. 11, 2008 Mem. Op. & Order ("2008 Opinion") at 5, ECF No. 67. Then, on August 16, 2007, the Illinois legislature amended 65 Ill. Comp. Stat. 5/11-5-1.5 to prohibit the placement of "adult entertainment facilities" "within one mile of . . . any school, day care center, cemetery, public park, forest preserve, public housing, or place of religious worship located in that area of Cook County outside of the City of Chicago." 2016 Opinion at *3. It is undisputed that the subject property falls within this prohibition. *See id.* at *4 ("[T]he entirety of Broadview falls within its scope in one fashion or another.").

The deal between Chicago Joe's and Conway never closed, and Plaintiffs brought suit in May 2007, seeking declaratory and injunctive relief, as well as damages.

Instead of selling the property to Chicago Joe's, Conway entered into an "Articles of Agreement for Deed" with Trust No. 072982, a land trust, on August 8, 2007. Def.'s Mem. Supp. Mot. Dismiss, Ex. 4, Articles of Agreement for Deed, ECF No. 762-5. Under the agreement, Trust No. 072982 agreed to make monthly installment payments to Conway until the purchase price of $1.35 million was paid.[4] *See id.* ¶¶ 1, 3. Once all the payments were made, Trust No. 072982

---

[3] That amendment has since been rescinded. *See* 2016 Opinion at *3.

[4] Chicago Joe's contends that it is the current tenant of the property under a lease agreement with Trust No. 072982. This fact, whether true or not, is immaterial.

would be entitled to a warranty and quitclaim deed, which would be held in trust until that time. *See id.* ¶ 28.

In the meantime, this case continued, and the parties proceeded through multiple rounds of summary judgment. In September 2008, Judge Joan B. Gottschall (who previously was assigned to the case) declared the adult-business ordinance unconstitutional, because it restricted the time, place, and manner of First Amendment-protected free expression without any legislative findings as to the secondary effects of that expression. *See* 2008 Opinion at 24–36. In reaching that conclusion, Judge Gottschall also held that Plaintiffs could not pursue an as-applied challenge to the special-use ordinance because Broadview did not actually invoke the special-use ordinance's requirements in denying Plaintiffs' permit. *See id.* at 22–24. Judge Gottschall also granted summary judgment to Defendants as to Plaintiffs' challenge to the vagueness and overbreadth of Broadview's Zoning Code, but denied summary judgment as to Plaintiffs' facial challenge to the special-use ordinance. *See id.* at 40–43; Sept. 25, 2009 Mem. Op. & Order at 6 ("2009 Opinion"), ECF No. 125.

The case was then transferred to this Court, which concluded that the August 2007 amendment to Illinois law rendered Plaintiffs' claims for declaratory and injunctive relief moot. 2016 Opinion at *4–7. The Seventh Circuit upheld that conclusion on appeal. *See Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 814–17 (7th Cir. 2018). Accordingly, Plaintiffs' sole remaining claim is for damages from the constitutional violation identified in Judge Gottschall's 2008 Opinion. *See* 2016 Opinion at *8–9.

## **Legal Standards**

Under Rule 12(b)(1), a defendant may move to dismiss claims over which the federal court lacks subject-matter jurisdiction, including claims for which the parties lack standing. *See Apex*

5

*Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009); *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999). In ruling on a Rule 12(b)(1) motion, the Court must accept as true all well-pleaded facts and may look beyond the jurisdictional allegations to evidence submitted on the issue of subject-matter jurisdiction. *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007). The Court must also draw all reasonable inferences in the plaintiff's favor. *Id.*

## Analysis

Broadview contends that neither Plaintiff has standing to pursue the remaining damages claim—Chicago Joe's because it has never owned the subject property, and Conway because he contracted to sell the property and was never personally invested in the plan to open a strip club.

The Court once again observes that "[t]he question of subject-matter jurisdiction here lies close to the sometimes blurry line between standing and mootness." *Chi. Joe's Tea Room*, 894 F.3d at 812–13. Article III standing requires the plaintiff to show a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 678 (2016) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Article III "injury-in-fact" is a concrete and particularized, actual or imminent invasion of a legally protected interest. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[I]f the [litigant does] not have standing, the Court is without authority to consider the merits of the action." *Swan v. Bd. of Educ. of City of Chi.*, 956 F. Supp. 2d 913, 918 (N.D. Ill. 2013). Although a party must have standing at all stages of the litigation, "[w]hen a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness." *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010). Mootness is the "doctrine of standing set in a time frame: The requisite personal interest that must exist at the

commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Here, although Broadview characterizes all of its contentions as relating to standing, it raises arguments addressing Plaintiffs' status with respect to the subject property at the time of the permit denial (standing), as well as the effect subsequent developments—such as the parties' later negotiations and sale of the property to Trust No. 072982—have had on their relationship to the property (mootness).

**I.    Mootness**

Broadview's mootness arguments are unpersuasive. As explained in the Court's 2016 Opinion, Plaintiffs' only remaining claim is one for damages arising out of Broadview's allegedly improper denial of the special-use permit.[5] *See* 2016 Opinion at *8–9. And such a claim, once accrued, does not become moot based solely upon subsequent changes in the ownership rights of the property. *See Six Star Holdings, LLC*, 821 F.3d at 803 (explaining that, because the plaintiff had "already suffered an injury from the unconstitutional ordinances" by refraining from protected speech, it had standing to seek damages); *Parvati Corp.*, 630 F.3d at 514 (noting that damages claims did not depend on the plaintiff's "continued ownership of the property"); *see also Campbell-Ewald*, 136 S. Ct. at 677 ("[W]hether a claim for prospective relief is moot is different from the issue [of] claims for damages to remedy past harms.").[6] Accordingly, the principal issue

---

[5]     Although Judge Gottschall denied summary judgment as to Plaintiffs' facial challenge to the special-use ordinance, that element of Plaintiffs' claims did not survive the Court's 2016 Opinion. "[A] facial challenge usually invites prospective relief, such as an injunction, whereas an as-applied challenge invites narrower, retrospective relief, such as damages." *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016). Plaintiffs cannot pursue a challenge to the special-use ordinance where their claims for equitable relief are moot and the special-use ordinance was not actually applied to them for purposes of a damages claim.

[6]     In its reply brief, Broadview makes a variety of arguments aimed at what it perceives to be Plaintiffs' attempt to add a claim at this late stage concerning the passage of the 2007 amendment to the

raised by Broadview's motion is whether either Plaintiff had standing to bring this action to begin with—in other words, whether the permit denial caused Plaintiffs an injury-in-fact that damages can appropriately redress.

## II. Chicago Joe's Standing

Turning to standing, Broadview first contends that Chicago Joe's lacked a sufficient ownership interest in the property to obtain damages arising from the permit denial. In support, Broadview cites two Illinois cases holding that a contract purchaser cannot apply for—or challenge the denial of—a zoning permit. *See Clark Oil & Refining Corp. v. City of Evanston*, 177 N.E.2d 191, 192 (Ill. 1961); *Zoeller v. Augustine*, 648 N.E.2d 939, 942 (Ill. App. Ct. 1995). In both cases, the Illinois courts explained that "[w]hen the validity of a zoning ordinance is questioned, the plaintiff is generally the landowner whose right to use his land in an otherwise lawful manner has been, or is in immediate danger of being, restricted by enforcement of the ordinance." *Clark Oil & Refining Corp.*, 177 N.E.2d at 192; *see Zoeller*, 648 N.E.2d at 942 ("[O]ne must have title or a possessory interest in subject property in order to seek to effectuate rezoning of that property . . . . [A] contract to purchase, contingent upon rezoning of the subject property, is not a sufficient interest to maintain a legal action[.]"). As Broadview sees it, because Chicago Joe's merely had a contractual right to purchase the property at the time of the permit denial (and never did purchase it), *Clark Oil* and *Zoeller* doom Chicago Joe's claim.

What Broadview fails to appreciate, however, is that federal standing principles are more liberal than what is required under Illinois law. In fact, the Supreme Court has rejected the very argument advanced by Broadview, explaining that "[s]tate law of standing . . . does not govern

---

Broadview Zoning Code. Broadview is correct that Plaintiffs' remaining damages claim, which concerns only the denial of the special-use permit that occurred *prior* to that amendment, does not encompass a separate claim against Broadview for using the amendment to "target" Plaintiffs.

8

such determinations in the federal courts. . . . Illinois may choose to close its courts to applicants for rezoning unless they have an interest more direct than [a contract purchaser's], but this choice does not necessarily disqualify [the contract purchaser] from seeking relief in federal courts for an asserted injury to its federal rights." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 n.8 (1977). In *Village of Arlington Heights*, the Supreme Court recognized that a contract purchaser may have standing to challenge a zoning denial if it can show any concrete injury—whether economic or non-economic—fairly traceable to the defendant's actions. *See id.* at 262–63. In that case, the Court found that the plaintiff-contract purchaser had suffered both economic injury in the form of expenditures made in support of its rezoning petition, as well as non-economic injury to its goal of making "suitable low-cost housing available in areas where such housing is scarce." *Id.*

Recent cases applying *Village of Arlington Heights* follow a similar approach, permitting contract purchasers to sue for constitutional violations so long as they can show some specific harm. *Toll Brothers, Inc. v. Township of Readington*, 555 F.3d 131, 138–43 (3d Cir. 2009), is instructive. There, a real-estate developer with an option to purchase a tract of land began formulating plans to develop housing and an office park on the plot. *Id.* at 134–35. The township, however, rezoned the tract in such a way to thwart the developer's plans. *Id.* at 135. The developer sued, claiming violations of its constitutional rights and alleging economic injury in the form of lost profits and expenditures it incurred in planning the development. *Id.* at 135–36. The Third Circuit, citing *Village of Arlington* as well as cases from the Fourth, Ninth, and Second Circuits, concluded that an optionee such as the developer could show injury-in-fact from zoning restrictions blocking a planned development. *Id.* at 138–39 (collecting cases). Furthermore, the court concluded, the developer had established the requisite injury for standing, because it had

9

"paid substantial sums in planning its proposed developments, seeking approval for its office development, and maintaining its option." *Id.* at 140. Furthermore, the court explained, the option itself was a "valuable property right" that could be diminished by any effect on the underlying property value occasioned by the zoning change. *Id.* at 141–42. After addressing the traceability and redressability requirements in a similar fashion, the court held that the real-estate developer had standing to sue. *Id.* at 143–44; *see also Sullivan Props., Inc. v. City of Winter Springs*, 899 F. Supp. 587, 592 (M.D. Fla. 1995) (concluding that a contract purchaser had standing to sue because of its inability to "proceed with its proposed development of the property").

The Court has not identified any Seventh Circuit precedent on the issue of whether a contract purchaser has standing to challenge zoning decisions. Still, in light of *Village of Arlington Heights*, the Court finds the analysis in *Toll Brothers* persuasive and concludes that Chicago Joe's contract-purchaser status does not categorically deprive it of standing. Thus, the controlling question in this case is whether Chicago Joe's suffered any concrete injury from Broadview's decision to deny it a special-use permit.[7] Here, as was the case in both *Arlington Heights* and *Toll Brothers*, Chicago Joe's asserts that it suffered economic injury because it incurred costs in support of its planned development and experienced lost profits. This is a sufficient injury-in-fact, traceable to the permit denial, and redressable by a damages award. *See Village of Arlington Heights*, 429 U.S. at 262; *Toll Bros.*, 555 F.3d at 143–44; *Sullivan Props.*, 899 F. Supp. at 592.

Broadview, however, raises a number of additional arguments worth mentioning. First, Broadview contends that Chicago Joe's has suffered *no* damages as a result of the permit denial,

---

[7] Broadview, asserting that Donahue assigned his rights under the contract to Chicago Joe's in January 2007, contends that Chicago Joe's cannot have standing because it was not the contract purchaser at the time the permit application was filed in December 2006. But Chicago Joe's had become a contract purchaser by the time that Broadview denied the permit, which is the basis for the alleged injury.

because its contract with Conway was contingent on financing and zoning and Chicago Joe's could have simply exited the contract with no adverse consequences. But, the contingent nature of the contract does not nullify the injury Chicago Joe's purportedly suffered as a result of the permit denial. *See* 429 U.S. at 262. And, in any event, Chicago Joe's right to void the contract based upon these contingencies had expired by that time.

Broadview also asserts that, unlike the developer in *Village of Arlington Heights*, Chicago Joe's did not actually incur any expenditures; instead, it was Donahue who paid the earnest money to Conway. In support, Broadview cites Donahue's deposition, in which he testified that he had transferred earnest money to Conway before transferring the interest in the contract to Chicago Joe's. *See* Pls.' Resp. Opp. Mot. Dismiss, Ex. 1, Donahue Dep. at 177:21–178:21, ECF No. 788-1. But Donahue further testified that Chicago Joe's *also* paid earnest money after it received an interest in the contract. *See id.* at 179:15-24. Moreover, even if Chicago Joe's expended little in advance of closing, the permit denial still "killed the deal" as the parties envisioned it, *Chi. Joe's Tea Room*, 894 F.3d at 814—leading to lost profits and a devalued contract. *See Toll Bros.*, 555 F.3d at 141–42.[8]

Next, Broadview argues that any injury Chicago Joe's did suffer is not traceable to the permit denial, because Chicago Joe's and Conway continued to negotiate the sale even after the permit was denied. It is true that Chicago Joe's and Conway extended the closing date to June 2007, and apparently neither party sued the other for breach of contract after it became clear that the deal would not close. But the mere fact that the parties may have continued trying to salvage the deal does not mean that the zoning denial caused *no* injury. The record shows that, after the

---

[8] Additionally, as Plaintiffs point out, Chicago Joe's still has a right to nominal damages for the violation of its constitutional rights, even if economic injury cannot be shown. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1552 (2016).

11

permit denial—which undisputedly prevented Chicago Joe's from opening a strip club in accordance with its plans—the parties never closed on the sale, and Chicago Joe's never opened its club. This is sufficient to show a "traceable" injury for purposes of standing. Whether and to what extent intervening events or other facts may have mitigated either Plaintiff's damages is a question for the jury. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013) ("Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery.").

Finally, Broadview argues, Chicago Joe's cannot show injury-in-fact from the permit denial given that it proceeded with its plans for the strip club despite the fact that the adult-business ordinance prohibited its plans to serve alcohol. As an initial matter, the cases Broadview cites in support of its position speak not to standing, but to the issue (previously addressed by the Court) of whether a party can claim a vested right in a pre-amendment version of an ordinance. *See, e.g.*, *City of Elgin v. All Nations Worship Ctr.*, 860 N.E.2d 853, 858 (Ill. App. Ct. 2006) (holding that a party cannot "acquire a vested right to conduct services in violation of [a] presumptively valid ordinance"). These cases shed little light on the question of whether the ordinance itself has harmed the plaintiff. On that issue, it is well-accepted that parties may sue for damages when an unconstitutional ordinance has been applied in such a way as to cause injury, whether or not the party "proceeded in violation" of the unconstitutional ordinance. *See, e.g.*, *Village of Arlington Heights*, 429 U.S. at 261–63 (holding that a property developer had standing to bring suit where its contract was contingent on securing rezoning, which was denied).

Chicago Joe's suffered an injury-in-fact when it was denied a permit to open the type of establishment it had been planning to open, thereby severely crippling the deal between it and Conway. This injury is traceable to Broadview's actions and redressable by an award of damages. Accordingly, the Court declines to dismiss Chicago Joe's damages claim for lack of standing.

## II.     Conway's Standing

Having concluded that Chicago Joe's has standing to proceed on its damages claim, the Court need not necessarily address the issue of Conway's standing. "As long as there is at least one individual plaintiff who has demonstrated standing . . . a court need not consider whether the other . . . plaintiffs have standing to maintain the suit." *Chi. Joe's Tea Room*, 894 F.3d at 813 (internal quotation marks and citation omitted). Still, "even an individual plaintiff 'bears the burden of showing that he has standing for each type of relief sought.'" *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 625 (7th Cir. 2017) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Because the only remaining issue in this case is Plaintiffs' entitlement to damages, the Court proceeds to determine if Conway has standing to pursue such relief.

When it comes to zoning permits, the standing of the property owner is generally assumed. *See Polenz v. Parrott*, 883 F.2d 551, 556 (7th Cir. 1989) ("Because the property interest in such a case is apparent,—it is the ownership interest in the land itself—the interest is often assumed without discussion."). Conway was the owner of the property at the time Broadview denied the special-use permit. Indeed, the Seventh Circuit has already concluded that Conway had standing by virtue of his ownership at the earlier stages of the case:

> It is undisputed that Conway owned the property when Broadview denied the application for a special-use permit . . . . The original contract between Chicago Joe's and Conway was contingent not on Chicago Joe's actually obtaining zoning approval but on its being satisfied that it *could* obtain that approval. Broadview's denial killed the deal—at least as the parties originally envisioned it. The evidence of that result means that Conway has offered evidence of a concrete, actual injury traceable to Broadview's conduct . . . .

*Chi. Joe's Tea Room*, 894 F.3d at 813–14. The Seventh Circuit also noted that "[d]amages based on the abandoned sale could . . . redress Conway's injury," and that, although the complaint does

not explain the nature of Conway's damages, they appeared to be "different than the damages for Chicago Joe's." *Id.* at 814 n.3.

Seeking to circumvent the Seventh Circuit's analysis, Broadview argues that Conway did not, in fact, have a sufficiently personal stake in the outcome of the permit application. In particular, Broadview points to the fact that Conway was still able to sell the property within a relatively short time. Furthermore, Broadview argues, during his deposition, Conway could not identify any specific damages he had personally suffered from the permit denial. And in any event, Broadview asserts, Conway was not personally involved in the permit application and did not care if the permit was approved; indeed, he continued negotiating with Chicago Joe's even after the permit was denied.

For his part, Conway contends that he did suffer damages despite his sale of the property to Trust No. 072982, because his Articles of Deed with the Trust allowed for payments to be made over time rather than in one lump sum, requiring him to pay interest on his mortgage that he would not have had to pay if he had been able to sell the property to Chicago Joe's. Whether or not this is the case is, again, an issue for the jury. In fact, all of Broadview's arguments about whether Conway suffered calculable damages go to his "ultimate measure of recovery," and not the issue of standing. *Abbott*, 725 F.3d at 808. The undisputed fact is that Broadview denied a permit application for property owned by Conway, restricting his right to use that property or to sell it to someone who might use it in a similar fashion. *See Polenz*, 883 F.3d at 556. As with Chicago Joe's, this injury is traceable to Broadview's conduct and is redressable by damages to the extent that they can be proven at trial. *See Chi. Joe's Tea Room,* 894 F.3d at 813–14. Accordingly, Broadview's motion as to Conway is also denied.

14

## **Conclusion**

For the reasons stated herein, the Court denies Broadview's motion to dismiss [765].

**IT IS SO ORDERED.**                    **ENTERED: 9/5/19**

_____
**JOHN Z. LEE**
**United States District Judge**