IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CHICAGO JOE'S TEA ROOM, LLC, ) <br> an Illinois Limited Liability Company ) <br> and PERVIS CONWAY, individually, ) <br>   ) <br> Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br>   ) <br> VILLAGE OF BROADVIEW, an Illinois ) <br> Municipal Corporation, ) <br>   ) <br> Defendant. ) | Case No. 07 CV 2680 <br><br> Hon. Judge Matthew F. Kennelly |

## **PLAINTIFFS' PETITION FOR ATTORNEYS' FEE AWARD**

Plaintiffs Chicago Joe's Tea Room, LLC and Pervis Conway (together "Plaintiffs") hereby petition the Court for an award of attorneys' fees and costs in the amount of $1,856,601.57 pursuant to 42 U.S.C. § 1988 and Northern District Local Rule 54.3. In support of their petition, Plaintiffs state:

## **INTRODUCTION**

This dispute began in 2007, when Plaintiffs applied for a special use permit to open an adult entertainment establishment within the Village of Broadview ("Village"). The Village denied that request, and 17 years of hard-fought litigation ensued, including two appeals. In 2008, the Court granted Plaintiffs' motion for summary judgment on their money damages claim brought under 42 U.S.C. § 1983, and through the remainder of the litigation that judgment remained intact. In November 2022, the Court entered a final judgment in the amount of $15,111.00 in favor of Plaintiffs on that claim. Plaintiffs appealed relating to their damages evidence and measures of damages only. The Village did not cross-appeal. On February 26, 2024, the Seventh Circuit affirmed.

1

21762178 _1

All that remains now is determination of Plaintiffs' attorneys' fees award under 42 U.S.C. § 1988. It is undisputed that Plaintiffs were the prevailing party on their money damages claim. It is undisputed that the overwhelming majority of the fee award Plaintiffs now seek relates to their successful Section 1983 damages claim. Furthermore, the Village does not contest any of Plaintiffs' lawyers' hourly rates or the duration of any of their hundreds of their time entries. For all 17 years of litigation, Plaintiffs paid their lawyers on an hourly or flat fee basis. None of Plaintiffs' lawyers worked on this case pursuant to a pure contingent fee agreement.[1] As explained in greater detail below, because Plaintiffs' money judgment was more than nominal, the Court should exercise its discretion to award Plaintiffs' their attorneys' fees in the amount of $1,856,601.57.

## BACKGROUND FACTS

Plaintiffs filed this lawsuit against the Village in 2007, alleging that the Village violated their constitutional rights by denying them a permit to open an adult entertainment business. Compl. (Dkt. 1) at 2, ¶¶ 11, 23. Plaintiffs contended that Chicago Joe's Tea Room, LLC ("Chicago Joe's") possessed a contract to purchase the property from Plaintiff Pervis Conway and subsequently gained possession of the property in the Village at the address of 2850 Indian Joe Road in Broadview with the intent of opening such a business. *Id.* ¶¶ 3, 8, 11. In December 2006, Chicago Joe's submitted a special use permit application to the Village. *Id.* ¶ 11. In early 2007, the Village rejected it. *Id.* ¶ 13.

On May 11, 2007, Chicago Joe's filed this lawsuit against the Village and thirteen individual defendants. *Id.* at 1. By its three-count complaint, Chicago Joe's sought monetary,

---

[1] One firm, O'Rourke & Moody, LLP provided legal services pursuant to a hybrid flat-fee arrangement that included a success premium/contingency interest.

injunctive, and declaratory relief based on the Village's decision to deny it a special use permit under §10–4–6(D)(11)(d) of the Village Code. *Id.* ¶¶ 43-58. Both sides quickly moved for summary judgment on all claims. On September 11, 2008, the Court granted Chicago Joe's motion for summary judgment on the question of whether the Village's Code was unconstitutional, and denied the Village's cross-motion seeking a declaration that its Code was constitutional. Dkt. 67.

The Court found that prior to March 5, 2007, Chicago Joe's "spent considerable time, effort, and money to locate a suitable property and secure the contract." *Id.* at 10. Based on those efforts, Chicago Joe's "had acquired a vested right in the continuation of [Village Code] §10–4–6(D)(11)(d) during the pendency of its application." *Id.* at 11. Therefore, Chicago Joe's had stated a viable constitutional claim.

The Court went on to hold that Village Code Section 10-4-6(d)(11)(a) violated the First Amendment to the United States Constitution. Dkt. 67 at 35-36. Relying on *Joelner v. Vill. of Washington Park, Ill,* 508 F.3d 427 (7th Cir. 2007), *as amended on denial of reh'g* (April 3, 2008) and *Ben's Bar, Inc. v. Vill. of Somerset*, 316 F.3d 702 (7th Cir. 2003), the District Court concluded that "defendants have failed to suggest a triable issue of fact as to whether § 10-4-6(D)(11)(a) could withstand strict scrutiny." *Id.* "Therefore, Plaintiff's motion for summary judgment is granted to the extent it seeks a declaration that § 10-4-6(D)(11)(a) is unconstitutional." *Id.* at 36.

Separately, on August 16, 2007, the Illinois governor signed a bill amending 65 ILCS § 5/11-5-1.5, which governs the permissible locations for adult entertainment businesses. *See* 65 ILCS § 5/11-5-1.5. Under the new version of this statute, adult entertainment businesses in Cook County but outside Chicago (like the Village of Broadview) could not be located within one mile of any "school, day care center, cemetery, public park, forest preserve, public housing, or place of religious worship…" The effect of this amendment was to prohibit any adult entertainment

3

business anywhere in the Village. The entire Village was covered by one part of this statute or another.

On March 31, 2010, the Village moved for summary judgment again, arguing that 65 ILCS § 5/11-5-1.5 mooted Chicago Joe's injunctive and declaratory claims. Per the Village, because Chicago Joe's could not operate its proposed business at the Property, it lacked standing to pursue those claims. On March 9, 2011, the Court denied the Village's motion (which it found was actually a motion to dismiss under Fed. R. Civ. P 12(b)(1)), holding that "the December [*sic*]² 2007 change to Illinois law cannot be applied to Chicago Joe's application [for a special zoning permit]." Dkt. 222 at 5.

Following that ruling, expanded discovery began. In September 2012, this Court opened discovery up to all subjects relevant to any claim or defense, expert testimony, and damages. Dkt. 312; 316; 332. For the next two-plus years, the parties engaged in extensive discovery relating to Plaintiffs' damages, including multiple depositions of Plaintiff's representative regarding Plaintiffs' damages calculations, expert depositions, and third-party discovery.

On February 20, 2015, the Village moved for summary judgment for a third time. Dkt. 583. In that motion, the Village asked the Court to reconsider the premises for its 2011 denial of their motion to dismiss, and for its 2008 grant of summary judgment to Plaintiffs. In particular, the Village argued that Plaintiffs had no vested rights at the time it sought a special use permit. The Village also argued that a subsequent amendment to its Code solved the constitutional problem the Court found in 2008.

This time, the Court granted the Village's motion. On March 31, 2016, it found that Plaintiffs did not have a vested right in the continuation of the Village Code as it existed when it

---

² The Illinois law changed in August 2007, not December.

first sought a special use permit. Dkt. 661. Per the Court, because Plaintiffs did not have such a vested right, the Village's changes to its Code mooted Chicago Joe's injunctive and declaratory claims. So, too, did the Illinois Legislature's August 2007 amendment to 65 ILCS § 5/11-5-1.5.

The Court held, however, that "[t]he mootness of Plaintiff's equitable claims does not extend to their claim for damages." Dkt. 661 at 19. It confirmed that "Plaintiffs are potentially entitled to damages for the constitutional violation Judge Gottschall identified in her September 2008 opinion." *Id.* "Accordingly, the Court denies Broadview's motion as to that claim." *Id*. The Court concluded that the case was to proceed to trial "on damages only" as to the Village, and for the one individual defendant who did not move for summary judgment, "on liability and damages under Count III." *Id.* at 22.

Before the matter could progress to trial, Plaintiffs filed a timely interlocutory appeal of the Court's March 31, 2016 ruling. On June 29, 2018, the Seventh Circuit affirmed dismissal of Plaintiffs' equitable claims, finding them mooted by the intervening Illinois statutory change. *Chicago Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 818 (7th Cir. 2018) ("*Chicago Joe's I*"). It remanded the case for trial on Plaintiffs' damages claim. *Id.*

Following COVID-19 and other delays, on March 12, 2021, the Village filed eight motions in *limine* to exclude or limit huge swaths of Chicago Joe's evidence. Dkt. 888-895. On December 9, 2021, the Court granted the Village's motions in substantial part. Dkt. 963. In that ruling, the Court barred Plaintiffs' representative David Donahue from testifying regarding lost profits damages; barred Plaintiffs' rebuttal expert from testifying; barred Plaintiffs' expert's 2021 supplemental report from evidence; and barred use of documents Plaintiffs alleged were relevant to their calculation of lost profits. Dkt. 963.

21762178_1

Later, the Village filed four additional motions in *limine*, including one asking the Court to "bar Plaintiffs' use of evidence at trial that was not disclosed in compliance with Federal Rule of Civil Procedure 26(A)(1)(a)(iii) or supplemented pursuant to Rule [*sic*] Federal Rule of Civil Procedure 26(E)(1)(A)." Dkt. 990 at 1; Dkt. 990-993. The Court granted these motions. Dkt. 1018. Plaintiffs moved for reconsideration, which was denied. Dkt. 1029. In so doing, the Court stated that "it is highly questionable whether summoning a jury is a worthwhile venture, as opposed to some other means of bringing the case to a conclusion in the district court." Dkt. 1029 at 9. The Court "*strongly*" encouraged the parties to consider entry of a stipulated judgment that would preserve each side's "appellate rights." *Id*.

The parties did so, and on November 9, 2022 the District Court entered a Stipulated and Final Consented Judgment Order, Dkt. 1044, and a Final Judgment Order, Dkt. 1045. Judgment was entered in favor of Plaintiffs and against the Village in the stipulated amount of $15,111.00. *Id*. This sum was comprised of money paid by Plaintiffs for survey and inspection work relating to their property in the Village, money paid to provide required public notice, and legal fees related to their permit application. *See* Dkt. 1038 (stipulated damages calculation) (attached hereto as Exhibit A).

The parties agreed to defer consideration of any petition for attorneys' fees and costs "pending resolution of the anticipated appeal." Dkt. 1045. That appeal is now completed: The Seventh Circuit affirmed this Court's rulings in full. *See Chicago Joe's Tea Room, LLC et al v. Village of Broadview*, 94 F. 4th 588 (7th Cir. 2024) ("*Chicago Joe's II*").

**SUMMARY OF FEES SOUGHT**

Plaintiffs ask for a fee award in the amount of $1,856,601.57. *See* Declaration of David Donahue, Ex. B hereto at Ex. 1, Ex. 2 (summary of fees incurred, along with supporting invoices and rate summaries). Of that sum, $1,810,880.08 was for attorney time billed and paid by Plaintiffs. *Id.* An additional $45,721.47 is sought for costs, which is not contested by the Village. *Id.*, Ex. 2. Over 17 years, Plaintiffs engaged eight different law firms on this matter, none of whom worked on a 100% contingent-fee basis.[3] *Id.* Seven firms represented Plaintiffs on an hourly basis, and the eighth – O'Rourke and Moody – worked for a flat monthly fee with a success premium/contingent fee kicker. *Id.*

Plaintiffs provided the Village with detailed monthly billing records for each of their counsel, pursuant to Local Rule 54.3. Those same records are attached as Exhibit 2 to the Declaration of David Donahue, which is Exhibit B hereto. The left-hand column of the summary table (the first five pages of Donahue Decl. Ex. 2) contains Line Numbers that correspond to the Bates Labelling at the top of each individual invoice in the remainder of Exhibit 2.

After having a chance to review these records, the Village now contests only $66,393.57 of the $1,856,601.57 in fees and costs sought. *See* Dkt. 1095-2. The Village has not contested any of Plaintiffs' counsel's hourly rates as excessive or otherwise improper, and has not asserted any objection to the hours spent by Plaintiffs' counsel on any particular task. Rather, the Village's opposition is primarily legal, and is incorrect as discussed below.

---

[3] Current counsel is the ninth. Plaintiffs' fee petition does not include any fees paid to current counsel.

21762178_1

**ARGUMENT**

I. **Applicable Legal Standard.**

Plaintiffs prevailed on their constitutional claim against the Village, winning a money judgment in the amount of $15,111.00. *See* Dkt. 1038, Ex. A hereto; Dkt. 1045. 42 U.S.C. § 1988 ("Section 1988") sets the standard for awards of attorneys' fees to prevailing plaintiffs, providing, in pertinent part:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…

42 U.S.C. § 1988(b).

"Generally, the prevailing party in a civil rights lawsuit is entitled to an award of attorney's fees." *Capps v. Drake*, 894 F.3d 802, 804 (7th Cir. 2018) (applying 42 U.S.C. § 1988(b)). That statute "empowers courts to award attorney's fees as part of the costs to the "prevailing party" of a § 1983 lawsuit." *Aponte v. City of Chicago,* 728 F.3d 724, 726 (7th Cir. 2013). Even if the Section 1983 plaintiff only wins "nominal" damages, that party nevertheless has prevailed under Section 1988, and thus is "eligible to receive reasonable attorney's fees." *Id.* However, "a reasonable attorney's fee for a nominal victor is usually zero." *Id.* Put differently, a nominally victorious plaintiff is not automatically entitled to his or her fee award calculated via the traditional loadstar method. *Id., citing Farrar v. Hobby,* 506 U.S. 103, 117 (1992).

By contrast, if the favorable judgment is more than nominal or minimal, then the plaintiff is entitled to have its fee award determined via the traditional lodestar method. *Capps*, 894 F. 3d at 807 (after determining that *Farrar* did not apply, Seventh Circuit remanded for fee

8

21762178 _1

determination based on the lodestar method); *G&G Closed Cir. Events, LLC v. Castillo*, No. 1:14-CV-02073, 2020 WL 7025141, *5 (N.D. Ill. Nov. 30, 2020) (finding $800 award was "not 'nominal'" and applying modified lodestar method for fee award); *Gibbons v. Vill. of Sauk Vill.*, No. 15 CV 4950, 2018 WL 2388399, **3-4 (N.D. Ill. May 25, 2018) (applying lodestar method for fees awarded on $25,000 settlement) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

## II. Plaintiffs' judgment is more than nominal or minimal and thus their fees should be determined by the lodestar method.

The parties agree that the threshold issue for the Court now is whether to apply *Farrar* in support of an award of no fees, or to calculate the fee award based on the lodestar method articulated in *Hensley*. *See* Jt. Stmt., Dkt. 1095, at 2.

Plaintiffs submit that the $15,111.00 judgment entered in their favor was not nominal or minimal, and that they should be awarded attorneys' fees based on the lodestar method. *Capps* is both instructive and binding. In that case, the plaintiff sought $3,600,000 and was awarded only $32,092 in damages. *Capps*, 894 F.3d at 804. The district court denied plaintiff's fee request, citing *Farrar*, but the Seventh Circuit reversed and remanded for a fee determination based on the lodestar method. The appellate court disagreed that "this was a case where the plaintiff 'aimed high and fell short.'" *Id.* at 806. Rather, because the plaintiff was more concerned with obtaining an adverse judgment than collecting an award, he was entitled to fees under Section 1988. *Id.* The District Court's ruling was based primarily on its displeasure with Capps' counsel, but "§ 1988 awards the right to fees to the plaintiff, not his counsel," and thus such considerations are irrelevant. *Id.*

Plaintiffs in this case are similarly situated. Chicago Joe's could not seek and thus did not obtain a punitive damages award like the plaintiff in *Capps*, but nevertheless was awarded over $15,000 in hard damages. Just as Capps was more interested in a judgment of liability than money,

9

21762178_1

Plaintiffs here were more interested in their equitable claims relating to the Village's denial of a special use permit than money. Their primary goal was to open their business as originally planned, or in the alternative, a restaurant/tavern venue that did not include a live dancing or adult use component. Plaintiffs diligently pursued injunctive and declaratory relief until 2018, when the Seventh Circuit held that those claims were mooted by Illinois' amendment to 65 ILCS § 5/11-5-1.5. *Chicago Joe's I,* 894 F.3d at 816-17. Plaintiffs' equitable claims were defeated, therefore, not by any arguments or actions taken by the Village, who chose to target Chicago Joe's through amendments to their zoning ordinances in a way that bolstered Plaintiffs' case, *see* Dkt. 67 at 6, but by the independent actions of the Illinois legislature.

*Gibbons v. Vill. of Sauk Vill.*, 2018 WL 2388399 is also instructive. Plaintiff in that case sued her governmental former employer, alleging retaliatory termination and due process violations. *Gibbons*, 2018 WL 2388399, *1. After two years of litigation and on the eve of trial, Gibbons accepted a $25,000 offer of judgment from the Village of Sauk Village. *Id.* Sauk Village opposed Gibbons' fee request based on *Farrar*, and the Court rejected that argument. *Id.* *3. The Court engaged in the following analysis:

> This court concludes that although the judgment award Gibbons secured here is significantly less than the relief she sought, it is not fairly characterized as "de minimus" or "nominal" as to warrant bypassing the lodestar analysis. See *Farrar*, 506 U.S. at 115. The Seventh Circuit and district courts in this circuit have found that similar and smaller awards are not trifling, *see Montanez v. Simon*, 755 F.3d 547, 556-57 (7th Cir. 2014) (noting that a $2,000 damages award is "a meaningful sum"), even where the plaintiff sought significantly higher awards, *see, e.g., Heyne v. Nick's Am. Pancake & Café, Inc.*, No. 3:11-CV-305 JD, 2013 WL 6047553, at *7 (N.D. Ind. Nov. 15, 2013) (finding that $24,000 award not "trifling" even though only represented 3.5% of trial demand*); Catalan v. RBC Mort. Co.*, No. 05 CV 6920, 2009 WL 2986122, at *1-2, *8 (N.D. Ill. Sept. 16, 2009) (finding that $11,100 jury award is not "de minimus" where plaintiff sought $65,000 at trial).

10

*Id*. The Court thus elected to have Gibbons submit a fee petition per local rules. *Id*. at *5.

The parallels between *Gibbons* and this case are clear. Plaintiffs' $15,111.00 judgment is right in line with the $25,000 judgment in *Gibbons* and the other awards cited by the *Gibbons* court. The Village's agreement to a stipulated judgment here is not so different from the Rule 68 offer of judgment made in *Gibbons*. There is no evidence in the record that Plaintiffs here unnecessarily multiplied or complicated this case, despite its length. Most of the motion practice was initiated by the Village, and both of Plaintiffs' appeals were procedurally proper, albeit unsuccessful. Plaintiffs first prevailed on the liability portion of their claims in 2008, and there is no evidence that the Village took any meaningful steps to try to reach a negotiated resolution between 2008 and 2022. Rather, the parties engaged in protracted discovery on damages sandwiched around an interlocutory appeal, including extensive motion practice. Plaintiffs' attorneys worked on an hourly basis through all of it, and thus Plaintiffs' requested fee award would not represent any sort of windfall.

### III. The Village's proposed deduction of $66,393.57 in fees has no basis.

The Village's only objection to specific fees and costs incurred by Plaintiffs attacks $66,393.57 in fees that the Village alleges were expended "in seeking injunctive relief and the large categories of damages excluded by the Court and upheld on appeal." Dkt. 1095 at 1-2. A close look at these selected items shows that there is no basis for their exclusion.

The general rule is that "a fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Catalan v. RBC Mortg. Co*., No. 05 CV 6920, 2009 WL 2986122, *3 (N.D. Ill. Sept. 16, 2009) (citing *Hensley*). Rather, "when claims are interrelated, as is often the case in civil rights litigation, time spent pursuant to an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Id*.

11

21762178_1

Plaintiffs won $15,111.00 in damages, and until the Court's final damages-related rulings, could not have possibly predicted what that sum would have been, or on what facts it might have been based. The Village's proposed damages-related attorneys' fee exclusions all predate the Court's ruling on the relevant motions *in limine* by years. Those operative motions were filed in March 2021. Dkt. 888-895. The Court granted these motions and excluded most of Plaintiffs' damages evidence in December 2021. Dkt. 963. Now, the Village reaches back as early as *2012* to argue that Plaintiffs should not be awarded attorneys' fees for damages research conducted while the case was in active discovery and before any damages-related motions had been filed. Even the Village's later-cited time entries relating to damages are legitimate: Plaintiffs bore the burden of proof on damages and properly engaged their attorneys to research damages issues, conduct damages-related discovery, and write damages-related motions. That Plaintiffs were not awarded the amount of damages they sought may be relevant to the *Farrar* analysis, but provides no basis to exclude specific line items from an otherwise proper lodestar-based fee award. *Catalan*, 2009 WL 2986122 at *3.

The same goes for the Village's proposed injunction-related exclusions. The Village argues that injunction-related work dating back to 2012 should not be included in any fee award. Its proposed exclusions include work relating to Plaintiffs' interlocutory appeal and strategy decisions made in the wake of the Seventh Circuit's ruling in *Chicago Joe's I*. Even though Plaintiffs ultimately did not prevail on their claims for injunctive relief, their work on their injunctive claims is sufficiently interrelated to their successful money damages claim in terms of fact development, discovery depositions, etc., that there are no good grounds to exclude these line items. *Catalan*, 2009 WL 2986122 at *3.

21762178 _1

IV. **The fee award should not be discounted by 90%.**

The Village's final argument is that if the Court is to make a fee award, Plaintiff's requested sum should be "substantially reduced 90% or more." Dkt. 1095 at 2. Plaintiffs acknowledge that some discounting may be appropriate given the disparity between the amount of their damages and the total sum of fees that they incurred, but disagree that a 90% or greater reduction is appropriate.

If a discount is to be applied, the guiding principle is one of proportionality. "Proportionality can refer to multiple concepts in the realm of attorney's fees." *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544-45 (7th Cir. 2009). "One of these concepts addresses the situation where a plaintiff recovers a very small percentage of the damages claimed and the attorney's fees are consequently reduced." *Id.* at 545. While some proportionality in this area is appropriate, the Seventh Circuit has "rejected the notion that the fees must be calculated proportionally to damages." *Id.* Rather, "[b]ecause Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy." *Id.* "If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing." *Id.*

Applying these principles to Plaintiffs' fee petition, it is Plaintiffs' position that if the Court elects to award them fees subject to a percentage reduction, then no more than a 50% reduction on their fees would be appropriate. Plaintiffs respectfully direct the Court to *Catalan*, 2009 WL 2986122, at *10 as an example of how such a reduction should be implemented. In that case, Plaintiff won $11,100 in money damages and sought in excess of $250,000 in attorneys' fees and costs. *Id.* at *1. The Court, having first held that *Farrar* did not apply, made a lodestar award but implemented a 40% reduction in the lodestar "to account for the wide gulf between the amount of

13

21762178_1

damages requested at every stage of this litigation and the actual jury award after trial." *Id.* at *10. The Court imposed this "substantial reduction" but noted that many of the fees incurred by plaintiffs were the result of their burden of proof and "the even greater resources that Defendants devoted to defeating Plaintiff's claims." *Id*.

This case is similar. Plaintiffs bore the burden of proof in establishing their damages. Because Plaintiffs never got the chance to open their business, establishing their damages, including lost profits, was a laborious, document-heavy, expert-driven process. Although Plaintiffs were ultimately unsuccessful in obtaining their desired lost profit damages, they were awarded over $15,000. As stated above, the damages issues on which Plaintiffs prevailed cannot fairly be disentangled from those on which they lost. As such, if the Court elects to reduce the fee award, Plaintiffs respectfully submit that no more than a 50% reduction would be appropriate.

Lastly, it is worth noting that Plaintiffs' failure to establish lost profits damages was due primarily to errors made by their attorneys. Such errors include: failing to update Plaintiffs Rule 26(a) disclosures, failing to disclose a primary damages expert, and failing to timely supplement damages discovery. *See Chicago Joe's II*, 94 F. 4th at 602-607 (affirming sanctions imposed for a litany of discovery failures). Such errors continued through the Court's final rulings on Plaintiffs' damages evidence. On August 19, 2022, the Court directed Plaintiffs' counsel to "present evidence related to their actual out-of-pocket costs and expenses." Dkt. 1029 at 4, *quoting* Dkt. 990 at 8.

Plaintiffs' counsel failed to make a comprehensive presentation of this evidence. On September 13, 2022, in ruling on Plaintiff's Motion for Reconsideration regarding excluded damages evidence, this Court found that Plaintiffs' counsel instead presented it "with repeated non-answers, somewhere on the spectrum between non-responsiveness and evasion." Dkt. 1029 at 4. Even after a half-hour-plus of questioning, "the Court is not sure that it got a real answer" on

computations of damages from Plaintiff's counsel. Dkt. 1029 at 4-5. The Court went on to confirm that a number of Plaintiffs' substantial alleged "out of pocket" damages were not recoverable because "they are not plaintiffs' out-of-pocket expenses." *Id*. at 6.

Because a fee award is made to the party and not counsel, such failures should not be held against Plaintiffs, at least not in their entirety. *See Capps*, 894 F.3d at 806 ("§ 1988 awards the right to fees to the plaintiff, not his counsel"). This is another reason why a reduction of 90% or more would be punitive rather than appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court grant their petition for attorneys' fees and costs, and award them such fees and costs in the amount of $1,856,601.57.

Dated: July 24, 2024

Respectfully submitted,

By: */s/ Adam N. Hirsch*
Michael J. Scotti, III (ARDC #6205868)
Adam N. Hirsch (ARDC #6275127)
ROETZEL & ANDRESS, LPA
70 West Madison Street
Suite 3000
Chicago, IL 60602
Telephone: 312.580.1200
mscotti@ralaw.com
ahirsch@ralaw.com

*Attorneys for Plaintiff Chicago Joe's Tea Room, LLC and Pervis Conway*

21762178 _1