**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO JOE'S TEA ROOM, LLC** | ) | |
| **and PERVIS CONWAY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07 C 2680** |
| | ) | |
| **The VILLAGE OF BROADVIEW,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Chicago Joe's Tea Room, LLC, and Pervis Conway (collectively, Chicago Joe's) have filed a petition for attorneys' fees totaling $1,856,601.57 from defendant Village of Broadview. Broadview opposes Chicago Joe's petition, arguing the Court should either not award fees or substantially reduce any award due to Chicago Joe's limited success. For the reasons below, the Court grants Chicago Joe's petition in part and awards half of the amount it seeks.

### Background

This litigation has spanned more than fifteen years and proceeded before three different judges. The Court presumes general familiarity with the facts, touching only on those relevant to the issue at hand.

In late 2006, Chicago Joe's applied for a special use permit to open an adult entertainment business in the Village of Broadview. Throughout the permit process, Chicago Joe's made clear it planned to serve alcohol. Broadview denied the permit,

citing a local ordinance that prohibited adult entertainment businesses from selling alcohol. Broadview subsequently amended its ordinances to prohibit adult businesses within 1,000 feet of any residential area, making it impossible for Chicago Joe's to open an adult business in Broadview whether or not it served alcohol.

Chicago Joe's sued in 2007, arguing the ordinances requiring a special use permit and prohibiting adult businesses from selling alcohol violated the First Amendment. In its initial complaint, Chicago Joe's sued not just the Village of Broadview, but also its mayor, six village trustees, and six village commissioners. Chicago Joe's sought monetary damages of $10,000,000, a declaratory judgment that the ordinances were unconstitutional, and an injunction preventing the defendants from enforcing the ordinances.

Both sides moved for summary judgment in 2008. Judge Joan Gottschall, who was then presiding over the case, held that the alcohol ban was unconstitutional. *Chi. Joe's Tea Room, LLC v. Village of Broadview*, No. 07 C 2680, 2008 WL 4287002, at *19 (N.D. Ill. Sept. 11, 2008). In response to the defendants' argument that its new ordinance rendered the case moot, Judge Gottschall found that Chicago Joe's retained a "vested right" to proceed under the ordinances in existence when it first applied for the permit. *Id.* at *6.

While the case was pending, the State of Illinois also amended its adult business laws. A new law that took effect in 2007 prevented any adult business in Chicago's suburbs from being located within one mile of "any school, day care center, cemetery, public park, forest preserve, public housing, or place of religious worship." 65 Ill. Comp. Stat. 5/11-5-1.5. The law encompassed all of Broadview. Still, Judge Gottschall held

2

that because of Chicago Joe's "vested right," the new state law could not render the case moot. *Chi. Joe's Tea Room, LLC v. Village of Broadview*, 790 F. Supp. 2d 693, 696 (N.D. Ill. 2011).

In 2012, the case was reassigned to then-District Judge John Lee. At the close of discovery in 2015, Broadview and the individual defendants asked Judge Lee to reconsider Judge Gottschall's previous summary judgment rulings. On reconsideration, Judge Lee dismissed Chicago Joe's requests for declaratory and injunctive relief as moot, finding that the 2007 amendment to Illinois's adult business laws prevented Chicago Joe's from opening its adult business in Broadview. *Chi. Joe's Tea Room, LLC v. Village of Broadview*, No. 17 C 2680, 2016 WL 1270398, at *7 (N.D. Ill. Mar. 31, 2016), *aff'd*, 894 F.3d 807 (7th Cir. 2018). Judge Lee also granted summary judgment in favor of the individual defendants regarding Chicago Joe's request for damages, finding they were entitled to qualified immunity. *Id.* at *9; *Chi. Joe's Tea Room, LLC v. Village of Broadview*, No. 07 C 2680, 2019 WL 13036240, at *3 (N.D. Ill. Jan. 28, 2019). Still, Judge Lee allowed Chicago Joe's to continue with its suit against Broadview, concluding it was "potentially entitled to damages" caused by Broadview's unconstitutional permit rejection. *Chi. Joe's*, 2016 WL 1270398, at *8.

Evidentiary disputes concerning damages ensued. Broadview filed several motions *in limine* to exclude large swaths of Chicago Joe's evidence on both substantive grounds and its failure to make proper disclosures during discovery. Judge Lee granted these motions in substantial part in December 2021 and August 2022, barring Chicago Joe's from presenting much of its evidence concerning lost profits and preventing it from claiming certain out-of-pocket expenses.

3

The case was reassigned to the undersigned judge in September 2022, when Judge Lee was appointed to the Seventh Circuit. At that point the case was set for trial later in September 2022. The Court denied a motion to reconsider certain of Judge Lee's *in limine* rulings and then reset the trial to early November 2022 after the parties agreed to waive a jury. In the end, the parties agreed to a stipulated judgment in favor of Chicago Joe's for $15,111, which the Court entered on November 9, 2022. The judgment compensated Chicago Joe's for survey work on the proposed business location, property inspection, legal notices filed, and legal services related to its permit application. Chicago Joe's appealed a number of the underlying rulings. The Seventh Circuit affirmed. *See Chi. Joe's Tea Room, LLC v. Village of Broadview*, 94 F.4th 588, 608 (7th Cir. 2024).

Chicago Joe's now petitions for attorneys' fees from Broadview totaling $1,856,601.57.

## Discussion

In a civil rights action, a court may award the "prevailing party" reasonable attorneys' fees. 42 U.S.C. § 1988(b). Courts usually determine a reasonable fee by "first calculating a lodestar—multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Simpson v. Sheahan*, 104 F.3d 998, 1001 (7th Cir. 1997). A court forgoes the lodestar approach, however, if the prevailing party received only "technical, nominal, or *de minimis*" damages. *Aponte v. City of Chicago*, 728 F.3d 724, 726–27 (7th Cir. 2013) (citing *Farrar v. Hobby*, 506 U.S. 103, 120–21 (1992) (O'Connor, J., concurring)).

## A.     Nominal, technical, or de minimis

Broadview argues that Chicago Joe's damages award is minimal in comparison to its requested damages, justifying a denial of attorneys' fees. "[A] reasonable attorney's fee for a nominal victor is usually zero." *Aponte*, 728 F.3d at 727. What is considered "nominal, technical, or de minimis," however, is "contextual and will vary on a case-by-case basis." *Id.* at 728. The Seventh Circuit has suggested that courts should "look at the entire litigation history" and consider 1) "the number of victorious versus unsuccessful claims," 2) "the amount of damages sought versus recovered," and 3) "time expended by the parties" and "judicial resources" used. *Id.* But none of these factors are dispositive. A court should not blindly follow them into finding objectively substantial awards nominal. *See Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (reversing a district court's finding of nominal damages despite a large disparity between the damages awarded and sought when the plaintiff clearly "obtained a significant judgment").

### 1.     Number of victorious versus unsuccessful claims

First, Broadview argues that Chicago Joe's failures in this litigation far outweigh its successes. It is undeniable that Chicago Joe's did not achieve all it hoped for. It did not receive the requested declaratory or injunctive relief, and it only obtained a judgment against one of the fourteen defendants it had originally sued.

Yet Chicago Joe's undoubtedly won its legal claim. It succeeded in establishing that Broadview's prohibition on adult entertainment businesses selling alcohol violated its First Amendment rights, and it obtained over $15,000 in damages. Even considering that Chicago Joe's did not receive most of the requested remedies sought, it would be

incorrect to say it was unsuccessful in pursuing its legal claim. At worst, this factor is neutral in determining whether Chicago Joe's received nominal, technical, or de minimis damages.

### 2.     Amount of damages sought versus recovered

Second, Broadview argues that Chicago Joe's small damages award pales in comparison to what it requested. This is true. The $15,111 it received in damages is only 0.15% of the $10,000,000 sought in the complaint. *Cf. Aponte*, 728 F.3d at 729 (affirming a district court's denial of attorneys' fees when the plaintiff only recovered 0.4% of his requested damages). Although Chicago Joe's argues it would have received a greater damages award if its attorneys had adequately presented evidence, that hypothetical increase in damages does not alter what it actually recovered. This factor favors a finding that the damages award was nominal, technical, or de minimis.

### 3.     Time and resources expended by the parties and court

Third, Broadview argues that the immense length of this litigation, fifteen years, supports a finding that the damages award was nominal, technical, or de minimis. Yet this factor does not simply count the years of litigation—it requires a court to "assess whether court resources or defense costs were *needlessly* exhausted." *Aponte*, 728 F.3d at 729 (emphasis added). Broadview has not argued that Chicago Joe's stalled or disrupted litigation in any way, and the Court sees no evidence of wasted resources. Rather, the length of this case can be explained by its unique circumstances. This case involved multiple rounds of summary judgment, two judge reassignments, a nine-year-old ruling by the first judge, favorable to Chicago Joe's, that the second judge reversed on reconsideration, a contentious evidentiary dispute,

lengthy delays due to the COVID-19 pandemic, and two appeals. Time and resources were spent, but it is hard to argue they were spent needlessly, especially considering that Broadview initiated many of the motion disputes and did not take steps to settle the case. *See Gibbons v. Village of Sauk Village*, No. 15 C 4950, 2018 WL 2388399, at *4 (N.D. Ill. May 25, 2018) (finding time spent to not be needless when the "parties engaged in extensive motion practice" and the defendant "litigated the case right up to the precipice of trial"). If anything, Chicago Joe's saved party and court resources by agreeing to a stipulated judgment and forgoing trial. This factor weighs against finding the damages award to be nominal, technical, or de minimis.

### 4. Totality of considerations

The factors just discussed point in different directions. In this circumstance, it is better to take a step back and consider the question directly: Is Chicago Joe's damages award of $15,111 nominal, technical, or de minimis? The answer is no. First, the award is definitionally not nominal—it is not "merely a symbolic award to recognize a finding of liability." *G&G Closed Cir. Events, LLC v. Castillo*, No. 14 C 2073, 2020 WL 7025141, at *5 (N.D. Ill. Nov. 30, 2020). Instead, the award is compensatory, as it compensates the measurable out-of-pocket costs detailed in the stipulated judgment. *Id.*; *cf. Redding v. Fairman*, 717 F.2d 1105, 1119 (7th Cir. 1983) ("Nominal damages are not compensation for loss or injury . . . . [They] do not measure anything."). Similar to how "nominal damages . . . highlight[] the plaintiff's failure to prove actual, compensable injury," an award directly addressing compensable injuries indicates the damages are not nominal. *Cf. Farrar*, 506 U.S. at 115.

Second, the size of the award suggests the damages are not nominal, technical,

or de minimis. An award of $15,111 is nothing to scoff at; courts in this circuit have found lower amounts to be substantial awards. *See, e.g.*, *Montanez v. Simon*, 755 F.3d 547, 556–57 (7th Cir. 2014) (noting $2,000 is a "meaningful sum" that can justify attorneys' fees); *Catalan v. RBC Mortg. Co.*, No. 05 C 6920, 2009 WL 2986122, at *2 (N.D. Ill. Sept. 16, 2009) (finding an award of $11,100 was not "paltry" or "de minimis"); *Castillo*, 2020 WL 7025141, at *5 (finding an $800 statutory damages award to not be "nominal").

Moreover, Broadview has not cited any case where an award of $15,000 or more was deemed so nominal, technical, or de minimis to justify a denial of attorneys' fees. Nor can the Court find anything close. The highest damages award approved by the Seventh Circuit in a case that abandoned the lodestar approach was $4,500, and even then, the district court awarded roughly $13,000 in attorneys' fees. *See Cole v. Wodziak*, 169 F.3d 486, 488 (7th Cir. 1999). And *Cole* appears to be an outlier—the next highest damages case cited involved a mere $500 award. *See Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997). Although the Seventh Circuit has not placed any damages cap on what is considered "technical" or "de minimis," the lack of precedent finding anything near $15,000 to be too small for the lodestar approach indicates Chicago Joe's "obtained a significant judgment" worthy of attorneys' fees. *See Enoch*, 570 F.3d at 823.

Because Chicago Joe's has received a significant damages award, the Court applies the lodestar approach.

## B. Lodestar approach

As stated above, a "district court generally begins by calculating the lodestar—

the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." *Schlacher v. L. Offs. of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "There is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011).

In cases where the plaintiff was only partially successful, however, the initial lodestar calculation "does not end the inquiry." *Hensley*, 461 U.S. at 434. Although "a plaintiff who achieves 'excellent results' should receive the entire lodestar," it may be "excessive" when a plaintiff only achieves "partial or limited success." *Montanez*, 755 F.3d at 547 (quoting *Hensley*, 461 U.S. at 436).

The "most critical factor" in determining reasonable attorneys' fees "is the degree of success obtained." *Hensley*, 461 U.S. at 436; *see also Richardson v. City of Chicago*, 740 F.3d 1099, 1103 (7th Cir. 2014) ("The appropriate fee under § 1988 is the market rate for the legal services reasonably devoted to the successful portion of the litigation."). But there is "[n]o algorithm available for adjusting a lodestar to reflect partial or limited success." *Montanez*, 755 F.3d at 557 (citation omitted). Instead, a court "may attempt to identify specific hours that should be eliminated, or it may reduce the award to account for the limited success." *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (quoting *Hensley*, 461 U.S. at 436–37).

### 1. Specific reductions

Broadview contends that Chicago Joe's should not receive attorneys' fees for time spent on failed requests. To support this, Broadview provides a chart identifying lump sums of hours it believes were spent on Chicago Joe's request for injunctive relief

and categories of damages on which it did not prevail.

Although Broadview is correct that Chicago Joe's should not recover fees for issues on which it did not prevail, not all research on failed arguments is wasted. "[W]hen claims are interrelated, . . . time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998).

Broadview has not analyzed how the identified hours relate solely to losing issues as opposed to being interrelated with the case as a whole. Nor can the Court parse time spent on successful versus unsuccessful issues in this case. For example, one of the billing statements notes that time was spent researching "[d]amages issues"; it is unclear whether the attorney was researching Chicago Joe's successful out-of-pocket damages request or unsuccessful lost-profits argument. *See* Pl.'s Fee Pet., Ex. B at 297. Similar ambiguity exists in the billing statements referring to injunctive relief, as they often refer to both research on the injunction and general case strategy. *See, e.g.*, *id.* at 477 (billing for analysis on the Seventh Circuit opinion affirming dismissal of Chicago Joe's injunctive relief request and for discussions "formulat[ing] litigation strategy in response to [the] Seventh Circuit's opinion"). Although some of this lack of clarity is due to "block billing," in which the attorney lumps multiple tasks into one billing description, this practice is not prohibited. *See Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). Absent further clarity or analysis on how each identified fee is solely related to losing issues, as opposed to issues interrelated to Chicago Joe's prevailing claim, the Court is not in a position to make any specific reductions.

### 2.    Across-the-board reduction

Finally, Broadview argues that Chicago Joe's attorneys' fees request should be reduced by 90% based on its limited success.  When, as in this case, a court "cannot easily separate the successful and unsuccessful work," the court must "make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims."  *Montanez*, 755 F.3d at 547 (citation omitted).  Yet the Seventh Circuit has cautioned against "claim counting"—reducing the lodestar by simply "comparing the total number of issues in the case with those actually prevailed upon." *Sottoriva*, 617 F.3d at 976 (quoting *Hensley*, 461 U.S. at 435).  Lopping off a percentage based solely on a comparison between winning and losing issues does not reflect a reasonable attorneys' fee, as certain issues may be more or less important or time consuming.  *Id.* at 976 n.4 (quoting *Hensley*, 461 U.S. at 435 n.11).

Nor must the attorneys' fee award be proportional to the award of damages. *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (citation omitted) (noting the Seventh Circuit has "rejected the notion that the fees must be calculated proportionally to damages").  "Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive," attorneys' fees will "often exceed" damages.  *Id.*  The key question, as always, is reasonableness.  Although "a fee request that dwarfs the damages award might raise a red flag, measuring fees against damages will not explain whether the fees are reasonable in any particular case."  *Id.* at 546.

The difference between damages sought and recovered, however, does justify a reduction in attorneys' fees.  As stated above, the "degree of success obtained" is the

"most critical factor" in determining whether fees are reasonable. *Hensley*, 461 U.S. at 436. The "difference between the judgment recovered and the recovery sought" is one indication of a lack of success. *Conolly v. Nat'l School Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999).

In this case, a significant reduction in Chicago Joe's attorneys' fee award is warranted. First, the requested attorneys' fees of over $1.8 million dwarf the $15,111 damages award. This alone does not indicate the fee should be reduced, but it does "raise a red flag," suggesting the Court should give "increased reflection" into whether the award is reasonable. *See Anderson*, 578 F.3d at 546; *Montanez*, 755 F.3d at 557.

Second, the difference between what Chicago Joe's sought versus recovered indicates a limited degree of success. Not only did Chicago Joe's only receive $15,111 despite requesting $10,000,000, but it also failed to obtain its sought after injunctive and declaratory relief. Although Chicago Joe's emphasizes that it was Illinois's amended statute that rendered its equitable relief moot, not Broadview's actions, the fact that Broadview did not "defeat" Chicago Joe's requests does not make those requests successful. A reduction in the fees requested to reflect this limited success is justified.

Yet Broadview's requested reduction of 90% goes too far. Chicago Joe's succeeded in proving its central claim, that Broadview violated its First Amendment rights, and it obtained an award of compensatory damages. A substantial amount of the time expended was spent not only on initially establishing the First Amendment violation, but also defending that holding through fifteen years of litigation. The Court finds that, balancing the limited success with Chicago Joe's need to continually defend its successful case throughout the elongated litigation, a 50% reduction in attorneys'

fees is justified.  *See Castillo*, 2020 WL 7025141, at *6 (finding a 50% reduction to be justified after balancing a plaintiff's "very modest success with the successful refutation of the defense case"); *see also Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 570 (7th Cir. 2001) (affirming a 50% lodestar reduction when the plaintiff recovered only $7,500 in damages of the $300,000 sought); *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 558–59 (7th Cir. 1999) (affirming a 50% lodestar reduction when the plaintiff only recovered $1,100 in damages of the $25,000 sought and failed to obtain injunctive relief).  With the 50% reduction, the amount of attorneys' fees the Court will award is $928,300.79.

## Conclusion

For the reasons stated above, the Court grants Chicago Joe's petition for attorneys' fees [dkt. no. 1097] in part.  The Court awards Chicago Joe's $928,300.79 in attorneys' fees.

Date:  January 15, 2025

_____
MATTHEW F. KENNELLY
United States District Judge