**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO JOE'S TEA ROOM, LLC and PERVIS CONWAY,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 07 C 2680** |
| **The VILLAGE OF BROADVIEW,** | ) ) | |
| **Defendant.** | ) ) | |
| **and** | ) ) | |
| **O'ROURKE & MOODY LLP, an Illinois Limited Liability Partnership,** | ) ) ) ) | |
| **Petitioner.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The law firm O'Rourke & Moody LLP (O&M) has filed a petition for an equitable lien against its former client in this case, Chicago Joe's Tea Room, LLC. For the reasons below, the Court finds that O&M has an equitable lien limited to $15,111.

**Background**

This litigation has spanned nearly two decades and proceeded before three different district judges. The Court assumes familiarity with that history—recounted in prior orders—and provides only the facts relevant to the present petition.

In 2006, Chicago Joe's applied for a special use permit to open an adult entertainment business in the Village of Broadview, located in the State of Illinois. Broadview denied the permit based on an ordinance prohibiting alcohol from being

served or consumed at adult businesses. In 2007, Chicago Joe's sued Broadview and various Broadview officials under 42 U.S.C. § 1983, seeking a declaration that the alcohol prohibition violated the First Amendment, an injunction against enforcement of the prohibition, and $10,000,000 in damages.

By 2016, the parties had completed discovery and gone through two rounds of summary judgment. A predecessor judge granted summary judgment declaring the alcohol prohibition unconstitutional, but Judge Lee dismissed the claims for injunctive and declaratory relief as moot because of an amendment to a state statute passed just three months after the Broadview permit denial that would have prohibited Chicago Joe's from opening its business anyway. Judge Lee also granted summary judgment in favor of the Broadview officials regarding Chicago Joe's request for damages, finding that they were entitled to qualified immunity. At that point, the only remaining issue involved what damages Chicago Joe's suffered from the initial permit denial, which depended on whether Chicago Joe's could have opened its business prior to the state statutory amendment and, if so, the amount of profits it lost from being denied that opportunity.

In August 2020, O&M entered into a contingent fee agreement to represent Chicago Joe's (as successor counsel). The agreement included three key provisions that are relevant here. First, it established that O&M would charge Chicago Joe's a reduced monthly rate in exchange for a contingency interest in the "award of damages":

> As payment for legal fees for this representation, the Firm will agree to a hybrid / contingent fee arrangement whereby the Firm agrees to a reduced monthly payment of $6,500.00 for hours billed on the matter in exchange for a success premium / contingency interest. As an inducement for this reduced monthly payment and assuming the risk of nonpayment of actual time billed monthly to the Clients, the Firm shall be paid a premium from the

2

award of damages in the District Court Litigation. If no damages are rewarded, the Firm will NOT seek payment of unpaid attorneys' fees from the Clients.

Payment from the District Court Litigation to the Firm shall be the first $500,000.00 from the award of damages entered by Judge Lee in the District Court Litigation.

Pl.'s Pet. to Adjudicate O&M's Attys' Lien, Ex. 1 (Agreement) at 1. Second, the

agreement indicated that O&M's contingency interest would extend to a settlement:

In the event of a settlement of the District Court Litigation, the Firm shall be paid the $500,000.00 set forth above from the first proceeds collected from any settlement with Defendant(s). In the event that proceeds from settlement are insufficient to pay the full amount due and owing to the Firm as set forth herein above in (i) and (ii), the full amount of the balance due and owing shall be paid in consecutive monthly installments not to exceed, 5% of the monthly gross revenue earned by Chicago Joe's Tea Room, LLC or its successors [sic] entity(s).

*Id.* Third, the agreement explained that O&M would receive a pro rata share of the

contingency interest if the firm were terminated prior to judgment:

In the event of a voluntary or involuntary termination of the services of the Firm prior to the completion of the District Court Litigation, Chicago Joe's Tea Room, LLC shall be required to pay the Firm a portion of the aforementioned $500,000. By way of example, if the Firm performs services from retention through the trial on damages, 100% of the first $500,000.00 in damages shall be paid to the Firm. If the representation is terminated prior to judgment, the Firm shall receive a percentage of the first $500,000.00 based on the number of days of representation by the firm divided by the total number of days from the firms [sic] initial representation to the date of Judgment. Payments due Firm for representation terminated prior to Judgment shall be paid under the same terms and time frame as the preceding paragraph.

*Id.*

In December 2021 and August 2022, Judge Lee granted *motions in limine* to

exclude a significant portion of Chicago Joe's damages evidence, and this Court later

denied a motion to reconsider those rulings, barring Chicago Joe's from presenting

much of its evidence concerning lost profits and preventing it from claiming certain out-of-pocket expenses.  In the end, Chicago Joe's—represented by O&M—agreed to a stipulated judgment that awarded $15,111 in compensatory damages, preserved the parties' appellate rights, and deferred resolution of attorneys' fees and costs issues pending the resolution of anticipated appeals.  The Court entered that stipulated judgment on November 9, 2022.  In December 2022, Chicago Joe's filed a notice of appeal.  On appeal, it primarily targeted evidentiary rulings excluding its damages evidence.  But O&M did not brief or argue the appeal; the company terminated the firm's representation via a March 2023 letter stating:

> Now that the U.S. District Court litigation has terminated in a final judgment, your firm's representation of Chicago Joe's . . . is hereby terminated.  Per the terms of your firm's engagement, the final judgement [sic] paid by Defendants is hereby assigned to your firm as full payment of Chicago Joe's . . . obligation.

Pl.'s Pet. to Adjudicate O&M's Attys' Lien, Ex. 2.  The Seventh Circuit affirmed. *See Chi. Joe's Tea Room, LLC v. Village of Broadview*, 94 F.4th 588, 608 (7th Cir. 2024).

With the appeal over, the parties and the Court returned to the issue of attorneys' fees and costs.  Chicago Joe's petitioned for attorneys' fees under 42 U.S.C. § 1988(b), which permits a court to award a "prevailing party . . . a reasonable attorney's fee as part of the costs."  Chicago Joe's sought $1,856,601.57 in attorneys' fees from Broadview.  On January 15, 2025, the Court granted the petition in part, awarding $928,300.79.

In February 2025, O&M notified Chicago Joe's that it was asserting a statutory attorneys' lien under 770 ILCS 5/1 for $500,000 pursuant to the contingent fee

agreement.  In May 2025, Chicago Joe's responded by filing a petition to adjudicate the lien, asserting that O&M had failed to serve notice and perfect its lien prior to the termination of the attorney-client relationship, as required under 770 ILCS 5/1.  O&M then withdrew its statutory lien and filed this petition for an equitable lien, requesting $609,503.09 in quantum meruit or, alternatively, $500,000 as the full amount allegedly owed under the contingent fee agreement.

## Discussion

O&M argues that its contingent fee agreement with Chicago Joe's entitles it to an equitable lien on a portion of the attorneys' fees recovered by Chicago Joe's.  This question is governed by Illinois law.  *See In re Brass Kettle Restaurant, Inc.*, 790 F.2d 574, 575 (7th Cir. 1986).

**A.  Equitable lien**

"[T]he essential elements of an equitable lien are (1) a debt, duty or obligation owing by one person to another, and (2) a *res* to which that obligation fastens."  *Id.* (quoting *W.E. Erickson Constr., Inc. v. Congress-Kenilworth Corp.*, 132 Ill. App. 3d 260, 270, 477 N.E.2d 513, 521 (1985)).  An attorney may assert an equitable lien based on a contingent fee agreement only if there has been "an actual assignment of a portion of a fund," as opposed to "a mere personal promise by the client to pay attorneys fees in an amount equal to a specified portion of the fund."  *McKee-Berger-Mansueto, Inc. v. Bd. of Educ.*, 691 F.2d 828, 836 (7th Cir. 1982).  The cases addressing this distinction "are not uniform and . . . have all turned on the precise language employed in the fee agreement."  *Id.*  In general, contingent fee agreements are equitable assignments, as opposed to personal promises to pay, if "the attorney can look directly to the fund for

5

payment of his or her fees." *Id.*; *see Matthews v. Homecoming Fin. Network, Inc.*, 264 F. App'x 536, 539 (7th Cir. 2008) ("The existence of an assignment can turn on minute differences in contractual language that anchor the attorney's interest in either the party's promise or the proceeds of the litigation.").

The contingent fee agreement in this case constituted an assignment, not a mere personal promise. The agreement consistently, with one exception, describes payment as coming directly from the "award of damages" rather than from Chicago Joe's. For example, the contingency provision states that "[p]ayment from the District Court Litigation to [O&M] shall be the first $500,000 *from the award of damages*," conspicuously omitting reference to Chicago Joe's as the payer. Agreement at 1 (emphasis added). Moreover, the agreement makes clear that the contingency interest was not a personal obligation of Chicago Joe's, by specifying that "[i]f no damages are rewarded, [O&M] will NOT seek payment of unpaid attorneys' fees from [Chicago Joe's]." *Id.* The only spot where the agreement provides for a personal obligation is in the provision addressing pre-judgment termination, where it states that "*Chicago Joe's* . . . shall be required to pay [O&M] a portion of the aforementioned $500,000" based on an agreed-upon formula. *Id.* at 2 (emphasis added). To the extent that provision is phrased as a personal promise to pay, it highlights that the other payment provisions O&M relies on are phrased to permit O&M to look directly to the fund.

Chicago Joe's points out that the agreement does not mention an "assignment" or "lien," nor does it "set O&M's compensation at a 'certain percentage' of the amount recovered as damages." Pl.'s Resp. to O&M's Pet. for Equitable Lien at 7. But neither is required for an equitable lien. *See, e.g.*, *McKee-Berger-Mansueto*, 691 F.2d at 836–

37 (holding that contract language stating, "The terms of that contingent-fee arrangement entitle us to one-third . . . of any and all recoveries . . . ," created an equitable lien); *Lewis v. Braun*, 356 Ill. 467, 478, 191 N.E. 56, 60 (1934) ("There must be an implied appropriation of the fund, *or* of some designated part, proportion, or percentage of it, to act as an equitable assignment." (emphasis added)).

Chicago Joe's also stresses that "courts have consistently cautioned and held that promises to pay fees 'out of the proceeds of a fund' are *not* assignments and constitute[] mere promises to pay." Pl.'s Resp. to O&M's Pet. for Equitable Lien at 7. True enough, but that begs the question by assuming that the agreement in this case is a promise to pay fees out of a fund rather than an assignment of the fund itself. That assumption is wrong because, as just discussed, the agreement is phrased in a way that calls for O&M to look directly to the fund for payment.

**B.    Lien amount**

Having determined that the contingent fee agreement created an equitable lien, the Court turns next to what amount is owed under that lien.

**1.    Agreement**

The parties dispute how to interpret the language giving O&M an interest in "the first $500,000 from the award of damages entered by Judge Lee in the District Court Litigation." Agreement at 1. Chicago Joe's argues that the "award of damages" was $15,111. O&M advances a more expansive interpretation of "damages" to mean any money Chicago Joe's received via the litigation, including the $928,300.79 recovered in attorneys' fees under section 1988.

"In Illinois (as in all states), a court gives contract terms their 'common and

generally accepted meaning,' as informed by the 'context of the contract as a whole.'"
*In re Solis*, 610 F.3d 969, 972 (7th Cir. 2010). The common and generally accepted
meaning of the term damages does not include attorneys' fees. To the contrary, the law
consistently differentiates between the two. *See, e.g.*, *Starstone Ins. SE v. City of
Chicago*, 133 F.4th 764, 767–68 (7th Cir. 2025); *Carolina Cas. Ins. Co. v. Merge
Healthcare Sols. Inc.*, 728 F.3d 615, 617 (7th Cir. 2013). For example, the American
Rule—under which parties bear their own attorneys' fees as costs and expenses of
litigation—distinguishes damages, which are typically recoverable from a losing
defendant, from attorneys' fees, which typically are not. *See, e.g.*, *Fleischmann
Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967); *Ritter v. Ritter*, 381 Ill.
549, 552, 46 N.E.2d 41, 43 (1943). Furthermore, the statute under which Chicago Joe's
recovered its attorneys' fees classifies them as "costs," not damages. 42 U.S.C. §
1988(b).

The pre-judgment termination provision in the agreement further counsels
against reading O&M's contingency interest to extend to attorneys' fees awarded or paid
in the litigation. That provision states that if O&M is terminated "prior to the completion
of the District Court Litigation," Chicago Joe's must pay "a portion of the aforementioned
$500,000," under an agreed-upon formula. Agreement at 2. The rest of that provision
makes clear that the "District Court Litigation" refers to the "trial on damages" and ends
at "judgment," neither of which, as commonly understood, includes a post-judgment
petition for attorneys' fees. *See, e.g.*, *Elusta v. City of Chicago*, 696 F.3d 690, 693–94
(7th Cir. 2012) (noting that the distinction between judgments and fees "is almost
universal in the case law"); *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200

8

(1988). The Court concludes that O&M's interest in "the first $500,000 from the award of damages entered by Judge Lee in the District Court Litigation" does not extend to the Court's post-judgment award of attorneys' fees to Chicago Joe's.

O&M resists this conclusion by pointing to other provisions in the agreement that, it contends, reflect that the parties intended "damages" to refer to "monies." O&M relies on the terms stating that the contingency interest was an "inducement" and a "premium," conferred in exchange for a reduced monthly rate, as well as the sentence explaining that O&M would not seek unpaid attorneys' fees if Chicago Joe's recovered nothing. Notably, O&M does nothing to explain how those provisions support its interpretation of the term damages. A contingency interest in an award of damages can be just as much of an inducement and a premium as a contingency interest in "monies." In addition, the no-recovery provision undermines O&M's reading because it differentiates between damages and attorneys' fees, providing that "[i]f no *damages* are awarded, [O&M] will NOT seek payment of unpaid *attorney's fees* from [Chicago Joe's]." Agreement at 1 (emphasis added). The subtext of O&M's arguments seems to be that the agreement would be unfair if construed to limit O&M's interest to an ultimately meager damages judgment. But reading the agreement the way the parties—both sophisticated—wrote it is not so inequitable or unusual as to render it unreasonable. *See Curia v. Nelson*, 587 F.3d 824, 831 (7th Cir. 2009).

O&M nonetheless insists that there is enough ambiguity to create a factual dispute requiring the Court to consider extrinsic evidence. Even if this were the case, O&M offers no extrinsic evidence that rebuts the natural reading of the agreement's terms. Moreover, Illinois "construes attorney contingent fee agreements strictly in favor

of clients in order to protect them." *In re Solis*, 610 F.3d at 972. In any event, the agreement is unambiguous—the only reasonable reading is that O&M's contingency interest in the "award of damages . . . in the District Court Litigation" refers only to the $15,111 judgment.

### 2.    Quantum meruit

Perhaps recognizing that its interpretation of the agreement is untenable, O&M proposes that the Court decide the amount of the lien according to quantum meruit principles instead of by the agreement's terms. The reason, according to O&M, is that the agreement ceased to exist after the termination. O&M contends that it is instead entitled to a reasonable fee based on consideration of the typical quantum meruit factors such as the time and labor expended, the difficulty of the case, and O&M's relative experience and skill. O&M suggests as a reasonable fee the amount it would be owed under its normal hourly rate, a total of $609,503.09.

O&M's quantum meruit theory fails in this case because its quantum meruit recovery is capped by the terms of the agreement it made. The Illinois rule of measuring discharged attorneys' fees in quantum meruit was established in the Illinois Supreme Court's decision in *Rhoades v. Norfolk & W. Ry. Co.*, 78 Ill. 2d 217, 399 N.E.2d 969 (1979). In *Rhoades*, the court identified that a client's right in Illinois to discharge his attorney at any time, with or without cause, was undermined by the then-existing rule that an attorney discharged without cause was automatically entitled to full payment under the terms of the attorney-client contract. *Id.* at 227–29, 399 N.E.2d at 974. To protect a client's right to freely discharge its attorney, the court abandoned the full-payment rule. *Id.* at 228–30, 399 N.E.2d at 974–75. It held that an attorney is

instead entitled only "to be paid on a quantum meruit basis a reasonable fee for services rendered before discharge." *Id.* at 230, 399 N.E.2d at 975. The court recognized, however, that in cases in which "[a]n attorney who has done much work is fired immediately before a settlement [or other resolution] is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered." *Id.*

As an initial matter, the *Rhoades* quantum meruit rule likely does not apply in this case. *Rhoades* and subsequent cases refining *Rhoades* have addressed situations in which the client cut the attorney-client relationship short. In particular, the *Rhoades* line of cases is aimed at resolving the problem of calculating attorneys' fees when an attorney is discharged prior to a contingency. *See, e.g.*, *In re Estate of Callahan*, 144 Ill.2d 32, 36–40, 578 N.E.2d 985, 986–88 (1991) (holding that an attorney's quantum meruit cause of action accrues immediately after discharge and is not barred merely because a contingency in the agreement has yet to occur). This case is different because the contingency—the award of damages—had already occurred at the time that O&M was discharged. Moreover, the agreement's terms consistently treat the award of damages as the natural end of the attorney-client relationship under the terms of the agreement. As the Illinois Appellate Court has reasoned, it would make little sense to apply *Rhoades* to cases like this one, where the agreement contemplated and defined what would happen in the situation where the parties actually ended up. *Vandenberg v. RQM, LLC*, 2020 IL App (1st) 190544, at ¶¶ 44–45, 177 N.E.3d 718, 728.

In any event, O&M cannot use quantum meruit to recover more than the amount

it is owed under the agreement.  The rationale in *Rhoades*, and the language in the opinion, implicitly assumes that quantum meruit fees will not be greater than the full contract amount.  *See Rhoades*, 78 Ill. 2d at 229, 399 N.E.2d at 974 (agreeing with "[o]ther jurisdictions . . . that an attorney discharged without cause is not entitled to recover contract fees from his former client but is *limited* to reasonable fees for services rendered" (emphasis added)).  The *Rhoades* exception—permitting an attorney who is fired immediately before the contingency to recover the entire contract fee—also implicitly treats the contract fee as the maximum amount recoverable under quantum meruit.  Otherwise, the quantum meruit rule could impose the same pressure on a client not to discharge its attorney.  For example, a client who strikes a good deal with an attorney might later feel unable to discharge its attorney if doing so would cause the client to lose the benefit of its bargain by incurring greater quantum meruit fees.  This case illustrates that problem:  if discharging O&M caused Chicago Joe's to incur three times the amount of fees otherwise due under the contract, Chicago Joe's right to discharge its attorneys would come at an enormous cost.

*Wegner v. Arnold*, 305 Ill. App. 3d 689, 713 N.E.2d 247 (1999), which O&M principally relies upon, further suggests that the agreement caps any quantum meruit recovery.  In *Wegner*, an attorney named Hagstrom was discharged immediately before the opposing party made a settlement offer that the plaintiff then accepted post-discharge, via new counsel.  *Id.* at 690–91, 713 N.E.2d at 248–49.  The court determined that the settlement was entirely due to Hagstrom's efforts and, drawing from *Rhoades*, decided that the case presented "the precise type of situation . . . for which the reasonable value of services rendered would be the entire contact fee."  *Id.* at 694–

95, 713 N.E.2d at 251. The court therefore held that the trial judge had erred in limiting Hagstrom's recovery to an hourly fee for the time he had worked on the case. *Id.* at 694, 713 N.E.2d at 251. It went on to hold that Hagstrom also had an equitable lien with respect to the settlement payment but that "his ability to assert any equitable assignment is limited to the amount he is entitled to recover in quantum meruit," which was not necessarily the full contract fee. *Id.* at 696, 713 N.E.2d at 252. The appellate court remanded the case, ordering the trial court to "determine the amount of attorney fees that [the] successor attorneys are entitled to on a quantum meruit basis" then "award the contract fee to attorney Hagstrom less th[at] amount." *Id.* at 697, 713 N.E.2d at 253.

*Wegner* supports O&M's proposition that an equitable lien may sometimes be measured by quantum meruit. But the court in *Wegner* did so to *limit* the amount otherwise due under a lien theory, not to exceed that amount as O&M requests here. Additionally, the court in *Wegner* implicitly treated the contract as the ceiling on quantum meruit fees when it ordered the trial court to calculate Hagstrom's fees by subtracting the successor attorneys' quantum meruit fee from the contract amount. The underlying rationale in *Wegner* was that a discharged attorney could not circumvent the protection of client rights under *Rhoades* by asserting an equitable lien for the full amount of the attorney's contracted fee. This suggests that O&M cannot use a quantum meruit theory to get more than it is entitled to via its lien.

Finally, the Illinois Appellate Court has recently confronted the question of whether a law firm may recover more under quantum meruit than it would have received under its contingency fee agreement. *Layden v. Chi. Title Land Tr. Co. as Tr. of Chi.*

13

*Title Land Tr. Co. Tr. No. 8002362712*, 2024 IL App (2d) 230007, at ¶¶ 44–45, 249 N.E.3d 1026, 1038–39. The clear answer is no. *Id.*; *see also Howard v. Proviso Twp. High Sch. SD 209 Bd. of Educ.*, No. 21 C 3573, 2023 WL 6847040, at *4 (N.D. Ill. Oct. 17, 2023). The court in *Layden* noted that there appears to be no authority supporting greater quantum meruit recovery, *Layden*, 2024 IL App (2d) 230007 at ¶ 44, and the Court in this case has failed to find any as well. Rather, the principles in *Rhoades* and *Wegner* and subsequent cases implicitly make clear that quantum meruit recovery is capped at the contract rate. And for good reason. As the court in *Layden* observed, a contrary position "would have significant negative policy implications: '[f]inding otherwise would create perverse incentives for attorneys to, for example, withdraw from contingency cases for which they are likely to recover less than they initially hoped, in order to void the relevant fee agreement and seek higher fees on a *quantum meruit* basis.'" *Id.* (quoting *Howard*, 2023 WL 6847040, at *4).

One last thing: Chicago Joe's has apparently already assigned the $15,111 damages award to O&M "as full payment of Chicago Joe's . . . obligation." O&M, however, alleges in its petition that Chicago Joe's has not paid the full amount due under the reduced monthly rate provision. Because the petition and briefing focus solely on O&M's contingent interest, and in light of pending state court litigation that may resolve other fee disputes, the Court declines to decide the total amount of Chicago Joe's obligation to O&M. As a result, the Court does not adopt Chicago Joe's stipulation that its assignment of $15,111 satisfies its obligation to O&M in full.

**Conclusion**

For the reasons stated above, the Court grants O&M's petition for an equitable

14

lien [dkt. 1118] but rules that the lien is limited to $15,111—the amount of its contingency interest under the agreement as interpreted in this order. That amount is to be transferred unconditionally.

Date: October 28, 2025

_____
MATTHEW F. KENNELLY
United States District Judge